1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

                                        )
PETER TRAUERNICHT, et al.     )
                                        )
v.                                      )        Civil Action No.:
                                        )        3:22 CV 532
GENWORTH FINANCIAL INC.,      )
et al.                                  )
                                        )
                                                 November 16, 2022

COMPLETE TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE
BEFORE THE HONORABLE ROBERT E. PAYNE
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

James E. Miller, Esquire
MILLER SHAH LLP
65 Main Street
Chester, CT 06412

John C. Roberts, Esquire
MILLER SHAH LLP
1845 Walnut Street
Suite 806
Philadelphia, PA 19103

Glenn Edward Chappell
TYCKO & ZAVAREEI LLP
N1828 L St NW
Suite 1000
Washington, DC 20036


          Counsel on behalf of the Plaintiffs




                TRACY J. STROH, RPR
              OFFICIAL COURT REPORTER
           UNITED STATES DISTRICT COURT

APPEARANCES (CONTINUED):

Brian E. Pumphrey, Esquire
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219

Karl G. Nelson, Esquire
GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue
Dallas, TX 75201

          Counsel on behalf of the Defendants

(The conference commenced at 11:23 a.m.)

THE COURT:  All right.  A couple of things.

On the record, who's who?

MR. MILLER:  James Miller, Your Honor.  Good morning.

MR. ROBERTS:  John Roberts, Your Honor.

MR. NELSON:  Carl Nelson for Genworth.

MR. PUMPHREY:  Brian Pumphrey for Genworth.

MR. CHAPPELL:  Glenn Chappell for plaintiff.

THE COURT:  In reading the complaint, I noticed that there's a reference to a BlackRock entity.  And I really wasn't paying very much attention to it, but I own stock in something called BlackRock Equity Dividend Fund and BlackRock High Yield Bond Performance Trust, or PTF Institute.

Is that the same thing?  Is it related?  Is there any connection to what -- what is the -- where is the best place to look at the name of the BlackRock in the complaint?

MR. MILLER:  Your Honor, the claims are really related to the BlackRock Target Date Funds.  So they would be --

THE COURT:  Well, is it the same entity but a different fund?

MR. MILLER:  Yes.  Yes, Your Honor.

THE COURT: So how are they owned? So it's target date --

MR. MILLER: Yeah. So they're called the BlackRock LifePath Index Retirement Funds, and they are funds where a person would choose --

THE COURT: Wait a minute. You said something. You just gave me a different name.

MR. MILLER: I apologize, Your Honor. The correct name is the BlackRock LifePath Index Retirement Fund.

THE COURT: LifePath what?

MR. MILLER: Index Retirement Fund. And those are -- as a kind of mutual fund, they are usually called target date funds because investors put their money into the specific fund -- so they'll choose 2045 as their retirement date. So it will be called that name of that fund with the year of the anticipated retirement date.

THE COURT: What I'm asking is what, if any, connection exists between BlackRock Equity Dividend and BlackRock High Yield Bond?

MR. MILLER: Yeah. The only --

THE COURT: Are they related? I don't know anything about the structure. And I certainly -- I wasn't focusing on it because the name was different, and it describes something that I knew I didn't have any interest

in, from looking at the description of it, yet then I was looking to make sure my conflict information was up-to-date in another situation, and it clicked with me, yes, that there could be some connection.  Is there any?

MR. MILLER:  There is a connection, Your Honor, in the sense that BlackRock is a very large financial institution that sponsors a number of different mutual funds and investment products.  So the investment products that you're invested in are not the same investment products that are being challenged, but the parent company is the same.

THE COURT:  Do you consider that there's a conflict of interest, then?  I mean, I don't -- I haven't thought about it because I needed to understand what the connection was.

So as I understand it, there's the BlackRock. And is it a holding company?  What is it?

MR. MILLER:  Yes.  It's a large company organized, among other things, under the 1940 Mutual Fund Act.  So it sponsors --

THE COURT:  The overall umbrella company, what's its name?

MR. MILLER:  BlackRock.

THE COURT:  Right.  And BlackRock has different funds?

MR. MILLER:  Yes.

THE COURT:  And I own two of those funds.

MR. MILLER:  Yes.

THE COURT:  And this is a different fund?

MR. MILLER:  Yes.

THE COURT:  So I don't own any of BlackRock itself.

MR. MILLER:  Right.

THE COURT:  As far as I know, just the funds.

In your view, anybody have a belief there's a reason for a conflict of interest?  If there is, I'll adjourn the proceedings right now.

MR. MILLER:  Your Honor --

THE COURT:  Or if you want to review it and get back to me, you can let me know.

MR. MILLER:  The only reason I hesitate, Your Honor, is I think we probably need to review it because I don't know if -- if part -- these target date funds, these LifePath Index Funds that are at issue in our complaint, they have component instruments that underlie them.  So it is possible that the components in the LifePath Index Fund are -- I'm sorry, Your Honor.

THE COURT:  Okay.  I need the full, written out, complete name of each one of these.

MS. LOWENTHAL:  Okay.

7

THE COURT:  Not now, but you can just send her an e-mail or something, and then I need to give them to them before we leave.

MS. LOWENTHAL:  Okay.

THE COURT:  I'm going to give you a chance -- it's all too important.  I'm not trying to put you on the spot.  I just thought you might know.  If you knew, you could make a decision.  I generally think it's a wise idea to review before you act unless you have the basic knowledge.  So we'll take care of that.

Now, there are other cases of this ilk involving the BlackRock funds, as I understand it, and two of them are in Alexandria.

Are you, plaintiffs' lawyers, are you all in those cases?

MR. MILLER:  Yes, Your Honor.

THE COURT:  And the names of them are?

MR. MILLER:  There's a case against -- there's a case against -- Booz Allen is the one case.

THE COURT:  Uh-huh.

MR. MILLER:  And --

MR. ROBERTS:  Capital One.

MR. NELSON:  Capital One.

MR. MILLER:  Capital One is the other case.

THE COURT:  All right.  Now, Judge Nachmanoff

has both of those cases, as I understand it.

MR. ROBERTS:  Judge Nachmanoff has one, and then Judge Tolliver has the other one.

THE COURT:  Judge Giles, you mean?

MR. ROBERTS:  Judge Tolliver has the other one. Sorry.  Judge --

THE COURT:  Who?  Patricia Giles?  Is it Tolliver or Tolliver Giles?  I thought it was Tolliver Giles.

Anyway, the other judge.  But I think that the ones being assigned to Judge -- both of them are being assigned to Judge Nachmanoff.

MR. ROBERTS:  I know Booz Allen is, but my understanding -- I could double-check that.  I think that Capital One is before Judge Tolliver.

MR. PUMPHREY:  I checked the docket this morning, and it did say Nachmanoff on both.

MR. ROBERTS:  Okay.

THE COURT:  Yeah, I think they entered -- among themselves, agreed to the transfer.

MR. ROBERTS:  Oh, okay.  I have not seen that. Maybe I have not received the ECF notification.

THE COURT:  But as I understand it, there are a lot of common issues in those cases and this case.  Is that correct or not?

MR. MILLER:  Yes, Your Honor.

THE COURT:  Well, wouldn't it make sense for us to transfer this case up to Judge Nachmanoff -- their cases were filed first up there -- and let you all deal with it all, to avoid the risk of inconsistent rulings on related issues?

Would plaintiffs be agreeable to that?

MR. MILLER:  Yes, Your Honor.

THE COURT:  Would the defendants be agreeable to that?

MR. NELSON:  Your Honor, I'm not disagreeing, but I don't remember whether those cases were actually first filed or not.  I remember the cases were all filed --

THE COURT:  Well, you can tell that right quick if you'll give me the docket numbers.  We can get the dates.

But I'm sure, from talking with Judge Nachmanoff, that one of those cases was first filed. I think it was the one that was initially assigned to him. Was that the Booz Allen case?

MR. ROBERTS:  That was Booz Allen.

MR. MILLER:  Yes, Your Honor.

THE COURT:  Okay.  Where are they mentioned, in the complaint or something?

You're reading something.

MR. NELSON:  I'm looking at our motion to dismiss, which is pending.

THE COURT:  Yeah.

MR. NELSON:  And we did kind of list out the names of the cases.

THE COURT:  All right.  Okay.

MR. PUMPHREY:  ECF 39, Your Honor.  Footnote 1 on page 1.

THE COURT:  All right.  Let's see.  Which one is which, now?  Booz Allen is *Tullgren v. Booz Allen*?

MR. MILLER:  Yes, Your Honor.

MR. ROBERTS:  Yes.

THE COURT:  And that says it was filed August the 1st, 2022.

And then the other one is somebody against Capital One?

MR. MILLER:  Yes, Your Honor.

THE COURT:  Where is it?

MR. MILLER:  It's *Hall v. Capital One*.

THE COURT:  I'm having trouble finding Capital One in my --

MR. NELSON:  It's the next line down in the footnote, Your Honor.

THE COURT:  Hall.  Okay.  *Hall v. Capital One*.

And that's -- both of them are filed, it says, August 1.

MR. MILLER:  Yes, Your Honor.

THE COURT:  And this one was filed August the 1st.  So I don't know which one actually was first.  I haven't checked the -- I have -- from calling -- I just ran into Judge Nachmanoff at a judge's conference, and he was telling me that he had these cases, and it rang a bell.

So we can go to Alexandria -- can you go to the Alexandria system?

MS. LOWENTHAL:  Yes, I believe so.

THE COURT:  And does it have a time of when it was filed?  I don't know.  Do you have to go to the docket entry or do you have to go to the document?

MS. LOWENTHAL:  Can I have the case numbers, please?

THE COURT:  You're going to the Alexandria first?  The first one is 22 CV 856.  And that would be 1:22.  And next one is 1:22 857.

But if he's got two of them, does it make any real difference since they're filed on the 1st, the same day, everywhere?  Do you care?

Are you willing to transfer them?

If it were in the same division, I would just do it for purposes of efficiency and to avoid inconsistent

rulings. Because it's a different division, it is a different venue rule. And what I ordinarily would do, in a situation like this, is what I'm doing and that's just ask you if you agree, and if you agree, then we transfer. If not, I issue an order requiring you to take positions on whether transfer under 404 is appropriate.

MR. MILLER: Your Honor, from the plaintiffs' perspective, we think a transfer makes sense, since the two other cases have been consolidated with Judge Nachmanoff.

THE COURT: I don't know that they've been consolidated. I think they have been assigned to him.

I would think that before they're consolidated, the parties would be given an opportunity to comment on whether or not they are consolidatable. And certainly I'm not -- I'm not -- if I transfer it, it would be a transfer, not a consolidation because those are different considerations.

MR. MILLER: I apologize, Your Honor. I misspoke. I just meant that they had both been assigned to Judge Nachmanoff.

THE COURT: In the generic sense you were using the word.

MR. NELSON: Your Honor, I would say on behalf of Genworth, Genworth is located here. They're venued

here in Richmond.  So the witnesses and the evidence is all going to be here.

With that in mind, I'm happy to talk with my client about a transfer.  I can't tell you right now that they would oppose it, but, you know, there is some logic to the case being here.

THE COURT:  Oh, I understand that.  That's why venue is appropriate here.

MR. NELSON:  Right.

THE COURT:  And we have rules respecting the transfer of cases because of venue considerations.

Well, then what I'm going to do is require you to advise me, after you -- you're certainly entitled to consult with your client on the matter.

Can you tell anything about which was filed first?

MS. LOWENTHAL:  Yes.

THE COURT:  What?

MS. LOWENTHAL:  The ones in Alexandria were filed first.  This one was filed third.

THE COURT:  Third.

MS. LOWENTHAL:  But they were all filed within an hour.

THE COURT:  Yeah.  Okay.

So the first filed rule by an hour.  My general

philosophy is you look at -- the first filed rule has its uses and it has its limitations.  So I don't think we're playing -- we're not how many angels can stand on the head of a pin here.  We're trying to get something done that makes sense.

How long do you think you're required to talk with your client?  A day?  Two days?  Ten days?  What?

MR. NELSON:  We can do that this afternoon, Your Honor, and depending on the formality of what you would like back, we can even call your chambers, if that's sufficient.

THE COURT:  Well, I don't mind -- I do want something in writing.

And what I would do, if you were to agree now, is to say having conferred with counsel at the initial pretrial conference, all sides, everybody having agreed, then there's the transfer.  That way there's a record of it, and the record is that you've agreed, and it's on the transcript.

Given that you want the time to consult with your client, which makes all good sense to me, I will require some kind of showing that you consent to it.

I would also appreciate a telephone call to Ms. Lowenstein so that we know where you stand.

MR. NELSON:  Understood, Your Honor.

THE COURT:  So you can advise by the end of the day?  Is that what you're saying?  Do you know the people you're going to be with?

MR. NELSON:  I -- I think we could.  I mean, if it suits the Court, we could get you something by tomorrow, only because we may not be able to get in immediate touch with the right decision-makers.

THE COURT:  That's fine.  All right.  So tomorrow is the 17th.  By the close of business, by 5 p.m.?

MR. NELSON:  Certainly, Your Honor, yes.

THE COURT:  Okay.

If there's no consent, let's have briefing on the issue of transfer.  And I'll issue an order just saying there appearing to be common issues and connection among these three cases and the judicial efficiency appears to warrant the handling by a single judge and two of them being handled by Judge Nachmanoff, I want you to show cause why it shouldn't be transferred to the Alexandria Division.  And then you both file statements of position, and let's do that by -- next week is Thanksgiving, isn't it?

MR. MILLER:  Yes, Your Honor.

THE COURT:  Well, I don't want to foul up your Thanksgiving.  What's the -- what -- I didn't bring my '23

book.  What date is the --

MR. MILLER:  We could probably --

THE COURT:  Thursday would be Thanksgiving. After Thanksgiving, the 28th?

MS. LOWENTHAL:  The Thursday?

THE COURT:  Yeah.

MS. LOWENTHAL:  December 1st.

MR. MILLER:  December 1st.

THE COURT:  December 1st.

And response -- simultaneous statements of position by December the 1st.  And by December the -- is the 8th -- what day of the week is that?

MS. LOWENTHAL:  The 8th is the next Thursday.

THE COURT:  All right.  December the 8th.  Show cause on -- we'll issue an order to that effect tomorrow if we haven't heard from you.

All right.  There's a protective order which I'll review and look at and see.

Is the briefing finished on the amicus motion, number 26?  The motion for leave to file amicus briefs.

MR. MILLER:  Yes, Your Honor.

THE COURT:  Okay.  Do you want argument -- it looks like both of you have waived oral argument and will leave that to me.

MR. MILLER:  Yes, Your Honor.

THE COURT: I think what I'm going to do is hold that in abeyance. It seems to me that if Judge Nachmanoff is going to have the cases -- have similar motions been filed in the other cases?

MR. MILLER: Yes, Your Honor.

THE COURT: If they have, it seems to me that one judge, if he's going to handle the case, then he ought to handle the whole thing. If I'm going to handle this one, then I'll decide it. I'll hold that for right now.

MR. MILLER: Great. Thank you, Your Honor.

THE COURT: All right. Have you had a pretrial conference up there? They do it somewhat differently than we do, I know.

And do you have a trial date in either one of those cases? Do you have argument dates in either one of those cases? Where do you stand?

MR. MILLER: Not yet, Your Honor. We don't have trial dates or argument dates yet in either case.

THE COURT: Are there motions to dismiss, such as Genworth's, or --

MR. MILLER: Yes, Your Honor. And they're fully briefed in that case.

In this case, I think that defendants still have some time for their reply brief.

THE COURT: Yeah, we only have -- we have

Genworth's motion, number 40, and its brief, 41, and your opposition, 46.  When is your response due?

MR. NELSON:  It's due today, Your Honor.

THE COURT:  Today.  Okay.  Do you want argument on the motion to dismiss?

MR. MILLER:  Yes, Your Honor, if the case --

THE COURT:  If I end up having it?

If it's transferred, I'm going to let Judge Nachmanoff make all the decisions.  It makes no sense to do anything.  But I think maybe to get this heard -- so when -- let's see.  That means the response is due on -- that's the 16th, right?

MR. NELSON:  Today, yes, Your Honor.

THE COURT:  The reply brief.

Have you all talked about how long it's going to take if -- assuming the motion to dismiss is denied, how long it's going to take to do discovery, and have you had your Rule 26 conference yet?

MR. MILLER:  We have, Your Honor.

THE COURT:  What did you come up with in terms of how much discovery is needed?

MR. MILLER:  Both sides have already served discovery, and we were going to propose about nine months of discovery, including expert discovery.

THE COURT:  So what does that mean?

MR. MILLER:  I'm sorry, Your Honor.

THE COURT:  What's nine months?

MR. MILLER:  Oh, in terms of an actual date?

THE COURT:  Yeah.

MR. MILLER:  Okay.  I'm sorry, Your Honor.  We were going to propose that discovery be completed by August 30th, 2023.

THE COURT:  All right.  What are you taking that takes so long to discover?  What are you going to be doing?

MR. MILLER:  Well, in the case, what we would anticipate is that first, there would be sort of what we call the core decisional documents, which would be the documents that were considered by the Investment Committee and the Administrative Committee.

THE COURT:  They have already turned those over?

MR. MILLER:  Not yet, Your Honor.

THE COURT:  When are they coming over?  They're all of a piece.  They ought to all be right together and easily discernable.  There would certainly be a record of what these people considered and when they considered it, I would think.

MR. NELSON:  Your Honor, Genworth has been gathering those.  We've already gathered quite a few of them, and we'll be producing them if not with the initial

disclosures, soon after the initial disclosures.

THE COURT:  When are the disclosures to be produced?

MR. MILLER:  November 30th.  And so we would anticipate by early December we would have most of those things.

THE COURT:  Everything.

MR. MILLER:  And then the only other thing that happens in cases like this is we are going to need to do some electronic discovery because a lot of times e-mails are the documents that provide some context to some of the discovery.

THE COURT:  A lot of times.

MR. MILLER:  Yes.  Yes, Your Honor.

THE COURT:  In what antiquated world do you go in and get -- I would love to have cases where memos were the operational documents, but, of course, they're not.  I understand that.

But I understand you need to do that.  And they're e-mails of -- what sort are you looking for, and what scope are you looking for?

MR. MILLER:  We would be looking for the e-mails of all, or at least some subset, of the committee members who were making these decision-makers.

Usually in cases like this, there are sort of

one to four people who are like the conduits of the information.  So we're not looking to put a burden on the defendants, but we'd want to get a pretty good electronic production.

THE COURT:  The back-and-forth about the decisional process itself, as opposed to just the documents?

MR. MILLER:  Exactly, Your Honor.

THE COURT:  So what size of yield do you expect to get, based on -- you've had other cases of this sort?

MR. MILLER:  Yes, Your Honor.

THE COURT:  How much do you get in the way -- and how long does it take to get the electronic production?

MR. MILLER:  Usually, depending on the defendants' system, it will take a couple of months to get --

THE COURT:  It does?

MR. MILLER:  -- full production.

THE COURT:  Because of the need to review for privilege and so forth.

MR. MILLER:  Yes, Your Honor.  And also, you know, sometimes there may not be -- the cases go back six years.  So it depends on whether or not they have to restore the electronic data.  They're not -- they're not

typically huge cases.

I've actually been preparing for trial in another case. So I can tell you that in that case -- it's a similar case -- there are a total of 60,000 pages of documents, including e-mails. So not an enormous production, but, you know, since I'm -- I've got my 15 boxes of documents I'm going through so I know exactly how many pages it is.

THE COURT: Well, it's -- I was speaking with a younger lawyer not very long ago about their discovery, and you could take all of the discovery you had in a briefcase -- and I'm not talking about a litigation case, I'm talking about your regular briefcase -- and take that up to court with you and you'd have it ready there, you know. 60,000 pages was a huge case.

All right. So -- but that -- that -- then you get that. And so you'll have all your paper done.

Do you need me?

MS. HOOPER: No. I was just bringing you some information.

THE COURT: Oh, thank you.

MS. HOOPER: Sure.

THE COURT: Thank you.

MS. HOOPER: All right.

THE COURT: Okay. For your records, what I have

is BlackRock Equity Dividend Fund, and the symbol is MDDVX.  And I also have BlackRock High Yield Bond Fund, BHYAX.  So you'll be able to check that out.

MR. NELSON:  Your Honor, since that's also sort of an open issue, should we plan to respond, respectively, to that by end of day tomorrow as well?

THE COURT:  Yeah.  Yeah.  I was going to set a schedule, and if it suits you all, by the end of the day tomorrow you'll let me know where you stand on the conflict question.

MR. MILLER:  Absolutely, Your Honor.  Thank you.

THE COURT:  And believe me, I don't have any vested interest in it.  I'm getting some pressure to get rid of the case.

Actually, I will say that I did speak yesterday with Judge Nachmanoff, and he's willing to take the case. He's read some of your papers and motions and things that have been filed, and the -- I think he's also read the -- he said he read the amicus issue, too.  So he says he's willing to take it on.

And that the logic of it -- because of the commonality of certain kinds of questions, it may very well make sense to avoid the risk inconsistent rulings with which you are both then going to have to contend.  If I go one way and he goes another on some point, then

you're going to have to deal with it one way or the other.

I will tell you that I think my -- I know my philosophy and his is if another judge in this district makes a decision, I try to do everything I can to follow it. I have, on occasion, parted ways, but it's been very rare in 30 years.

All right. So the statement of position on conflicts will be 5 p.m. on the 17th as well.

All right. And then your experts. What kind of experts do you have? Just investment advisor people who look at it and say you should have been looking at this and when you did, you'd see this and you wouldn't have done this?

MR. MILLER: Yeah. Usually two experts in a case like this. One would be sort of a damages expert that also may have sort of an investment advisory piece to sort of examine, you know, what should have been considered at what time, when damages would have been triggered. Because, you know, you can't expect the Committee to act -- if they see some bad performance data, you can't expect them to act within 24 hours. So that would be the one piece.

And then the other kind of expert that we would typically use in a case like this would be more of a fiduciary process expert. So somebody who's, you know,

like a former State Street fiduciary expert who talks about how large companies should be running their retirement plans, in terms of both meetings and what kind of information they should be considering, and that kind of thing.

I may have just given my expert away by naming State Street, but --

THE COURT:  Well, my guess is that probably a little research along that line had already been done.  I don't think there's anything that's unknown in the world today or actually, maybe it's unknowable.

All right.  Well, then your trial date would be when?

So what you have to do is you'd have to set out a schedule for all expert disclosures and depositions to occur within the discovery period and do that ahead of time in a consent order so that there isn't any disagreement with it.  And usually a consent order of that sort I ask be provided within 45 days of the date of this conference.

MR. MILLER:  Okay.

THE COURT:  That way you get on the dance card of your experts.  And you'll also put these depositions in your schedules, and they do, too.  And, of course, then you need to plan discovery.  And you are talking about

discovery occurring during the vacation period, June, July -- May, June, July and ending in August.  So you have to actually get that done now because today, the way things are, most people, if they're going away anywhere, they prepay and they get it done and they get it done months ahead of time.

So the process of planning for the way you're going to conduct depositions I think -- what I've seen is it has been drastically changed by the pandemic.  The need to focus on it early on exists in a way that it did not exist beforehand because of the way people plan their lives or their staycations, or whatever they are.

All right.  And then that would be a trial when?  Have you talked about a trial?  How long do you think a trial would take?

MR. MILLER:  Well, I think that -- the plaintiffs think it could be somewhere around ten days, and I think the defendants think around --

THE COURT:  Ten days?

MR. MILLER:  Yeah.  And I think the defense think around seven days.  So I hate to be too agreeable, but I think we could try the case in seven days.

THE COURT:  I would think you could try it in five.

MR. NELSON:  Your Honor, when we said a week, we

meant five trial days.

MR. MILLER:  Oh, okay.  I'm sorry.

MR. NELSON:  Just a bit of miscommunication perhaps, but --

MR. MILLER:  Okay.

THE COURT:  Well, did you talk about a trial date?

MR. MILLER:  We have not, Your Honor.  But I think from the plaintiffs' perspective, probably September or October.  I recognize defendants may want to have some time built in for summary judgment motions.

THE COURT:  Well, you're going to have finished discovery by the 1st of August.

MR. MILLER:  We were proposing August 30th, but we could get it done by August 1st.

THE COURT:  What are you really going to do in August?  Everybody in the world is going to be gone, and you're going to come in here and you're going to say, "Oh, I need an extension of time until September."  And that's going to -- let's get it done by August 1.

MR. MILLER:  Okay.  Thank you, Your Honor.

MR. NELSON:  And, Your Honor, on the summary judgment point, I think we actually view this as a case where if it's not resolved on the motions to dismiss, that a summary judgment motion could be appropriate early,

before the end of, you know, discovery.

And so one of the things we've discussed with plaintiffs' counsel is trying to focus on sort of merits discovery first, push off damages discovery, you know, and other issues until a bit later so that we could perhaps get a motion for summary judgment before Your Honor sooner.

THE COURT:  Well, you might, but I don't know how quickly it would get decided.  So do you -- I have not had a case that's exactly like this, but cases similar to this.  Suitability is what it boils down to.  Essentially, it's a securities fraud/suitability case, isn't it?  Isn't that what it's all about, is this a suitable investment?  And then layered on top of it is did you live up to what you were supposed to do to keep track of what was going on?

MR. MILLER:  Yes, Your Honor.

THE COURT:  And therefore, know that at X point in time, it was suitable or not suitable.

MR. MILLER:  Yes.

THE COURT:  That's what it boils down to.  And I find that it's pretty hard to grant summary judgment in cases like that and that it never can occur until expert discovery is over because the inevitable response is, "We got people that say this is the reasonable way to do it,"

and the other side says, "Well, we have people who say that it isn't."

So I don't see it as a summary judgment case that can be decided until all your expert stuff is done. So that's why I think you need to get that done.

So let's -- I would say, then, that we have a trial -- and you'll get a faster trial date, I think, up in Alexandria. I would say the 30th of October. And I'll put it down for a week, but -- I usually -- this is a jury trial? No, it's not. It's a bench trial. That's right.

Okay. So we'll start at 9:30.

What does Trauernicht mean?

MR. MILLER: What does the last name mean?

THE COURT: Yeah.

MR. MILLER: I don't know what --

THE COURT: Well, "nicht" is night, isn't it?

MR. MILLER: I think probably. I apologize, Your Honor. I don't actually know what the last name means, but I'll find out for you.

THE COURT: I won't rat you out to your client.

MR. MILLER: Okay. I don't know what to "trauer" would mean, but I'll try to find out.

THE COURT: Now, I generally have been asking counsel to -- let's see. That's 10/30 through 11/3, bench trial.

I haven't -- I think we ought to plan for a final pretrial conference one week ahead of time.  So that would be Monday, the 23rd -- is that all right? -- of October.

MR. MILLER:  Yes, Your Honor.

MR. NELSON:  Yes, Your Honor.  That's fine.

THE COURT:  And just be advised that the pretrial order measures everything against the final pretrial conference date, not -- at 10 a.m. -- not the trial date.

Do you know if this case has been assigned to a magistrate judge in Alexandria for settlement purposes yet?

MR. ROBERTS:  I don't believe it has.

MR. MILLER:  It hasn't yet, Your Honor, no.

THE COURT:  Do you all contemplate wanting a magistrate judge or do you want to go the private mediation route to discuss settlement?

MR. NELSON:  So in this case, Your Honor, we did discuss private mediation.  Just to be clear, we're not counsel in the Alexandria cases.

THE COURT:  I know.

MR. NELSON:  Okay.

THE COURT:  No.  But what I was thinking is if we knew that and there was a commonality of thought and

knowledge and reservoir of information.

Did anybody figure out what 45 days from today is?  That's the date of the consent order --

MR. MILLER:  It should be --

THE COURT:  -- on the experts.

MR. MILLER:  It would be December 18th.  But that would be a Saturday or a Sunday.

THE COURT:  What's the next Monday?

MR. MILLER:  I think it should be December 19th, but I'm -- I'm doing that in my head, Your Honor.

THE COURT:  18th is a Monday.

MR. MILLER:  Oh, 18th is a Monday.  So it would be the 18th.

MR. PUMPHREY:  I thought it was the 28th.  Forty-five days from today.

MR. MILLER:  Okay.  The 28th of December?

MR. NELSON:  Yeah.  Because today's the 16.  So 45 days would be -- it couldn't be the 18th.

MR. MILLER:  Right.  Right.  Sorry.

THE COURT:  Let's make it the 29th.

MR. MILLER:  29th.

THE COURT:  All right.  And then when do you want to advise me of when you're going to -- how you're going to proceed?

Do you both agree you're going to do private

mediation?

MR. MILLER:  Yes, Your Honor.

THE COURT:  Okay.  Then I need to be advised when you're going to conduct the private mediation.  What is a good date to set for your notice of mediation schedule?

MR. MILLER:  I think December 29th might be a good time to advise the Court as to when we would mediate.

MR. NELSON:  Yes.  If that's appropriate, Your Honor, we can include that in the consent order on the 29th.

THE COURT:  That's fine.

Are there any other -- let's see.  Did I put down the final pretrial?  And that was the 23rd at 10:00, did I say?  Yes.

All right.  Is there anything else you all need to get into?

MR. MILLER:  No.  Thank you for your time, Your Honor.

MR. NELSON:  Your Honor, should we conditionally set -- I think Mr. Miller suggested a hearing on the pending motion to dismiss.

Assuming that the case stays with you, should we block a time for a hearing on that?

THE COURT:  If you want to go ahead and do that,

we can.

MR. NELSON:  Sure.

THE COURT:  And your last paper is due today --

MR. NELSON:  Today, Your Honor.

THE COURT:  -- is that right?

MR. NELSON:  Yes.

THE COURT:  How about January 23rd at 10 a.m.?

MR. NELSON:  I think that works for defense.

MR. MILLER:  That works for plaintiffs, Your Honor.

THE COURT:  All right.  I think we've got everything done now.

I hope you all have nice holidays.

MR. NELSON:  Thank you, Your Honor.

MR. MILLER:  Thank you, Your Honor.

THE COURT:  And I'm going to look at the protective order.  Did you fix this language?  I think I started it and I don't think I finished it.

I like to check and make sure you don't make this thing so that the Court files have to be purged.

MR. PUMPHREY:  Your Honor, I think we did include something that said --

THE COURT:  Completion of litigation.

MR. PUMPHREY:  Yeah, I think it's paragraph 26.

THE COURT:  Yeah, I see it.

MR. PUMPHREY:  It should be at the end.

THE COURT:  Yeah, it's okay.

All right.  I will have this entered.

All right.  Does that take care of everything?

MR. MILLER:  Yes.  Thank you, Your Honor.

MR. NELSON:  Thank you.

MR. ROBERTS:  Thank you, Your Honor.

THE COURT:  I hope you all have a nice Thanksgiving.  And let me know.  I'm sure that -- I think common sense says it's a good idea for the same judge to be handling all these things.  I'm sure Judge Nachmanoff will try to do something to give you a schedule similar to this.  Maybe sooner you could get it.  I don't know.

MR. MILLER:  Okay.

THE COURT:  But you all have worked together. You've talked together.

And again, agreement to transfer is not agreement to consolidation, and consolidation will have to be addressed by Judge Nachmanoff, if it's transferred, because this case presents unusual circumstances respecting consolidation that may, in fact, militate against it.  I don't know.  And he will decide the amicus brief issue, too, if it's done.

All right.  Thank you all very much.

MR. MILLER:  Thank you, Your Honor.  Happy

35

Thanksgiving.

THE COURT:  Enjoy the holidays.

MR. PUMPHREY:  I think I will see you tomorrow.

THE COURT:  I think I spend my life with you, or a part of it.

(The conference concluded at 12:10 p.m.)

REPORTER'S CERTIFICATE

I, Tracy J. Stroh, OCR, RPR, Notary Public in and for the Commonwealth of Virginia at large, and whose commission expires September 30, 2023, Notary Registration Number 7108255, do hereby certify that the pages contained herein accurately reflect the stenographic notes taken by me, to the best of my ability, in the above-styled action.

Given under my hand this 29th day of November 2022.


_____/s/_____
Tracy J. Stroh, RPR