## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| PETER TRAUERNICHT and ZACHARY WRIGHT, individually and as representatives of a class of similarly situated persons, on behalf of the GENWORTH FINANCIAL INC. RETIREMENT AND SAVINGS PLAN,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>GENWORTH FINANCIAL, INC., *et al.,*<br><br>　　　　　Defendant. | Case No: 3:22-cv-00532-REP<br><br><br>**AMENDED CLASS ACTION COMPLAINT** |

## I.　　**INTRODUCTION**

1.　　Plaintiffs, Paul Trauernicht ("Trauernicht") and Zachary Wright ("Wright") (collectively, "Plaintiffs"), individually in their capacity as participants of the Genworth Financial Inc. Retirement and Savings Plan ("Plan"), bring this action ("Action")[1] under 29 U.S.C. § 1132, on behalf of the Plan and a class of similarly-situated participants and beneficiaries of the Plan, against Defendant, Genworth Financial Inc. ("Genworth" or "Defendant"), for breach of its fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., and related breaches of applicable law beginning six years from the date the initial complaint originating this actions was filed and continuing to the date of judgment, or such other date the Court determines is appropriate and just ("Class Period").

---

[1]This Amended Complaint is submitted pursuant to Federal Rule of Civil Procedure 15(a)(2).  On January 19, 2023, the Court directed Plaintiffs to file the Amended Complaint by January 20, 2023.

2.      Defined contribution plans (*e.g.*, 401(k) and 401(a) plans) that are qualified as tax-deferred vehicles have become the primary form of retirement saving in the United States and, as a result, America's *de facto* retirement system.  Unlike traditional defined benefit retirement plans, in which the employer typically promises a calculable benefit and assumes the risk with respect to high fees or underperformance of pension plan assets used to fund defined benefits, the participants in defined contribution plans bear the risk of high fees and investment underperformance.

3.      The importance of defined contribution plans to the United States retirement system has become pronounced as employer-provided defined benefit plans are increasingly rare as an offered and meaningful employee benefit.

4.      As of December 31, 2021, the Plan had 4,257 participants with account balances and assets totaling approximately $910 million, placing it in the top 0.2% of all defined contribution plans by plan size.[2]  Defined contribution plans with substantial assets, like the Plan, have significant bargaining power and the ability to demand low-cost administrative and investment management services within the marketplace for administration of defined contribution plans and the investment of defined contribution assets.  The marketplace for defined contribution retirement plan services is well-established and can be competitive when fiduciaries of defined contribution retirement plans act in an informed and prudent fashion.

5.      Defendant maintains the Plan, and is responsible for selecting, monitoring, and retaining the service providers that provide investment, recordkeeping, and other administrative services.  Defendant is a fiduciary under ERISA, and, as such, owes specific duties to the Plan

---

[2]The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2018 (pub. July 2021).

and its participants and beneficiaries, including obligations to act for the exclusive benefit of participants, ensure that the investment options offered through the Plan are prudent and diverse, and ensure that Plan expenses are fair and reasonable in relation the services obtained.

6.     Defendant has breached its fiduciary duties to the Plan.  As detailed below, Defendant selected, retained, and/or otherwise ratified poorly-performing investments instead of offering more prudent alternative investments that were readily available at the time Defendant selected and retained the funds at issue and throughout the Class Period.  Since Defendant has discretion to select the investments made available to participants, Defendants' breaches are the direct cause of the losses alleged herein.

7.     To remedy these fiduciary breaches and other violations of ERISA, Plaintiffs bring this class action under Sections 404, 409 and 502 of ERISA, 29 U.S.C. §§ 1104, 1109 and 1132, to recover and obtain all losses resulting from each breach of fiduciary duty.  In addition, Plaintiffs seek such other equitable or remedial relief for the Plan and the proposed class ("Class") as the Court may deem appropriate and just under the circumstances.

8.     Plaintiffs specifically seek the following relief on behalf of the Plan and the Class:

a.     A declaratory judgment holding that the acts of Defendant described herein violate ERISA and applicable law;

b.     A permanent injunction against Defendant prohibiting the practices described herein and affirmatively requiring it to act in the best interests of the Plan and its participants;

c.     Equitable, legal or remedial relief for all losses and/or compensatory damages;

d.     Attorneys' fees, costs and other recoverable expenses of litigation; and

      e.     Such other and additional legal or equitable relief that the Court deems appropriate and just under all of the circumstances.

## II.    <u>THE PARTIES</u>

9.    Trauernicht is a former employee of Genworth and former participant in the Plan under 29 U.S.C. § 1002(7).  Trauernicht is a resident of Yorktown, Virginia.  During the Class Period, Trauernicht maintained an investment through the Plan in the BlackRock LifePath Index Retirement Fund, the BlackRock LifePath Index 2040 Fund and the BlackRock LifePath Index 2050 Fund.

10.    Wright is a former employee of Genworth and former participant in the Plan under 29 U.S.C. § 1002(7).  Wright is a resident of Forest, Virginia.  During the Class Period, Wright maintained an investment through the Plan in the BlackRock LifePath Index 2050 Fund.

11.    Genworth is a public Delaware corporation headquartered in Richmond, Virginia. Genworth is an insurance holding company that holds itself out as being committed to helping families achieve the dream of home ownership and address the financial challenges of aging through its leadership positions in mortgage insurance and long-term care insurance.

12.    The Board appointed "authorized representatives" of Genworth, including the Administrative Committee ("Committee"), as plan fiduciaries.  The individual members of the Board were/are fiduciaries of the Plan under ERISA pursuant to 29 U.S.C. §§ 1002(21)(A) because each exercised discretionary authority to appoint and/or monitor the Administrative Committee, which had control over Plan management and/or authority or control over management or disposition of Plan assets.

13.    The Administrative Committee and its individual members are responsible for the general administration of the Plan and each are fiduciaries under ERISA pursuant to 29 U.S.C.

§§ 1002 and 1102.  The Administrative Committee maintains its address at Genworth's corporate headquarters in Richmond, Virginia.  The Administrative Committee and its members are appointed by Genworth or its delegate to administer the Plan on Genworth's behalf.

### III.    JURISDICTION AND VENUE

14.    Plaintiffs seek relief on behalf of the Plan pursuant to ERISA's civil enforcement remedies with respect to fiduciaries and other interested parties and, specifically, under 29 U.S.C. § 1109 and 29 U.S.C. § 1132.

15.    This Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. § 1331 because the Action arises under the laws of the United States.

16.     Venue is proper in this District pursuant to Section 502(e) of ERISA, 29 U.S.C. § 1332(e), and 28 U.S.C. § 1391 because Genworth's principal place of business is in this District and the Plan is administered from this judicial district.  Further, a substantial part of the acts and omissions giving rise to the claims asserted herein occurred in this District.

17.    Plaintiffs have standing to bring the Action because they maintained investments in the Plan in the investment options challenged in the Action during the Class Period.  Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), authorizes any participant, fiduciary or the Secretary of Labor to bring suit as a representative of a plan, with any recovery necessarily flowing to a plan.  As explained herein, the Plan has suffered millions of dollars in losses resulting from Defendant's fiduciary breaches and remains vulnerable to continuing harm, all redressable by the Court.  In addition, although standing under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), is established by these Plan-wide injuries, Plaintiffs and all Plan participants suffered financial harm as a result of the Plan's imprudent investment options and were deprived of the opportunity to invest in prudent options with reasonable fees, among other injuries.

## IV.    FACTUAL ALLEGATIONS

### A.    Background and Plan Structure

18.    The Plan is a participant-directed defined contribution plan, meaning participants direct the investment of their contributions into various investment options offered by the Plan. Each participant's account is credited with their participant contributions, applicable employer matching contributions, any discretionary contributions, and earnings or losses thereon.  The Plan pays expenses from Plan assets, and the majority of administrative expenses are paid by participants as a reduction of investment income.  Each participant's account is charged with the amount of distributions taken and an allocation of administrative expenses.  The investment options made available to Plan participants include various mutual funds, collective trust funds and the Genworth Common Stock Fund.

19.    Mutual funds are publicly traded investment vehicles consisting of a pool of monetary contributions collected from many investors for the purpose of investing in a portfolio of equities, bonds, and other securities.  Mutual funds are operated by professional investment advisers, who, like the mutual funds, are registered with the U.S. Securities and Exchange Commission ("SEC").  Mutual funds are subject to SEC regulation and are required to provide certain investment and financial disclosures and information in the form of a prospectus.

20.    Collective trusts are, in essence, mutual funds without the SEC regulation. Collective trusts fall under the regulatory purview of the Office of the Comptroller of the Currency or individual state banking departments.  Collective trusts were first organized under state law in 1927 and were blamed for the market crash in 1929.  As a result, collective trusts were severely restricted, giving rise to the more transparent and publicly-traded mutual funds described above.  Today, banks create collective trusts only for their trust clients and for

employee benefit plans, like the Plan.  Despite their historic lack of transparency, modern

collective trust sponsors provide sufficient information for investors to make informed decisions

about the merits of investing in collective trusts.  The main advantage of opting for a collective

trust, rather than a mutual fund, is the negotiability of the fees; accordingly, larger retirement

plans should be able to leverage their size for lower fees.

21.     The Genworth Common Stock Fund invests primarily in common stock of the

Company.  A small portion of the fund is held in cash or other short-term investments to provide

liquidity.  Future investments or transfers in the Genworth Common Stock Fund were suspended

indefinitely on January 8, 2021 due to uncertainty surrounding the proposed acquisition of

Genworth by China Oceanwide Holdings Group Co., Ltd.

22.     During the Class Period, Plan assets were held in a trust by the Plan trustee, Bank

of New York Mellon.  All investments and asset allocations are performed through this trust

instrument.

**B.      Target Date Funds**

23.     A target date fund ("TDF") is an investment vehicle that offers an all-in-one

retirement solution through a portfolio of underlying funds that gradually shifts to become more

conservative as the assumed target retirement year approaches.  TDFs offer investors dynamic,

straightforward asset allocation, while providing both long-term growth and capital preservation.

All TDFs are inherently actively managed, because managers make changes to the allocations to

stocks, bonds, and cash over time.  These allocation shifts are referred to as a fund's glide path.

24.     TDF glide paths are managed either "to" or "through" retirement.  A "to

retirement" glide path generally assumes participants will withdraw their funds once they reach

the presumed retirement age, or soon thereafter.  The asset allocation of a "to retirement" TDF

remains static once the retirement date is reached.  A "through retirement" glide path expects participants will remain invested after reaching retirement and gradually draw down on their funds.  Accordingly, the terminal allocation of a "through" TDF is not reached until a predetermined number of years after the target date.

25.    "To" strategies are managed to protect against the risk of a market decline significantly diminishing assets, while the "through" approach focuses on the risk of outliving savings.  Each strategy treats the other's primary focus as a secondary objective (*i.e.*, most "to" managers "have the objective of limiting portfolio volatility up to retirement as the primary goal, and the income throughout retirement is more of a secondary objective.").[3]  TDFs designed to take investors to retirement typically de-risk faster than their "through" peers, and while this may offer greater potential protection against downside risk, it leaves investors exposed to the potentially destructive, lasting consequences of running out of money in retirement.  As retirees trend toward keeping savings in their retirement plans post-retirement, "through" glide paths have been more widely utilized.[4]  Indeed, of the 28 TDF suites launched in the past decade which remain active, nearly 80% adopt a "through" approach.[5]

26.    The underlying mutual funds that TDF managers choose to populate each asset class can be actively or passively managed.  TDFs comprised of primarily or entirely passive strategies provide broad market exposure at minimal cost and avoid the risk of active management underperformance and style drift.  TDFs filled with actively managed funds tend to

---

[3]Amanda Umpierrez, *Evaluating 'To' vs. 'Through' Glide Paths*, PLANSPONSOR, (Feb. 17, 2021), https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/

[4]*Id.*

[5]MORNINGSTAR, 2022 TARGET-DATE STRATEGY LANDSCAPE (2022).

provide more diversified asset class exposure while offering the potential for excess returns, particularly in less efficient asset classes where active management tends to outperform.

**C.** **Defendants' Breaches of Fiduciary Duties**

27.      As discussed in detail below, Defendant has severely breached its fiduciary duties of prudence and loyalty to the Plan.  Plaintiffs did not acquire actual knowledge regarding Defendant's breaches at issue here until shortly before the initial complaint originating this action was filed.

**1.      The Plan's Investment in the BlackRock LifePath Index Funds**

28.      Among other investments, the Plan lineup has, since at least December 31, 2009,[6] offered the BlackRock LifePath Index Funds ("BlackRock TDFs"), a suite of ten TDFs.[7]   The BlackRock TDFs are significantly worse performing, both in terms of total and risk-adjusted returns, than most of the mutual fund alternatives offered by TDF providers, as well as the broader TDF marketplace, and, throughout the Class Period, could not have supported an expectation by prudent fiduciaries that their retention in the Plan was justifiable.

29.      Defendant was responsible for crafting the Plan lineup and could have chosen from a wide range of prudent alternative target date families offered by competing TDF providers, which are readily available in the marketplace, but elected to retain the BlackRock TDFs instead, an imprudent decision that has deprived Plan participants of significant growth in their retirement assets.

---

[6]The Plan's Form 5500s provide a detailed schedule of the Plan's holdings at the end of each calendar year. The suite of BlackRock TDFs appears as a Plan investment option as far back as the 2009 Form 5500, the earliest publicly available filing.

[7]The Plan offered an eleventh BlackRock TDF, the 2020 vintage, for a substantial part of the Class Period. During the Fourth Quarter of 2019, the 2020 Fund was reorganized into the Retirement Fund, and shareholders of the 2020 Fund received shares of the Retirement Fund.

30.    A simple weighing of the merits and features of all other available TDFs at the beginning of the Class Period would have raised significant concerns for prudent fiduciaries and indicated that the BlackRock TDFs were not a suitable and prudent option for the Plan.  In addition, any objective evaluation of the BlackRock TDFs would have resulted in the selection of a more consistent, better performing, and more appropriate TDF suite.  Instead, as is currently in vogue, Defendant appears to have chased the low fees charged by the BlackRock TDFs without any consideration of their ability to generate return, either on an actual or risk-adjusted basis.  Had Defendant carried out its responsibilities in a single-minded manner with an eye focused solely on the interests of the participants, it would have come to this conclusion and acted upon it.  However, Defendant failed to act in the sole interest of Plan participants and breached their fiduciary duties by imprudently selecting, retaining, and failing to appropriately monitor the clearly inferior BlackRock TDFs.

31.    Since the fiduciaries here employed a fundamentally irrational decision-making process (*i.e.*, inconsistent with their duty of prudence) based upon basic economics and established investment theory, they clearly breached their fiduciary duties under ERISA – which are well-understood to be the "highest known to law."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (citing *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

32.    Exacerbating Defendant's imprudent decisions to add and retain the BlackRock TDFs is the suite's designation as the Plan's Qualified Default Investment Alternative ("QDIA").  Under DOL regulations, retirement plan fiduciaries can designate one of the investment offerings in a plan's lineup as a QDIA to aid participants who lack the knowledge or confidence to make investment elections for their retirement assets.  If participants do not indicate where their assets

should be invested, all contributions are automatically invested in the QDIA. For this reason, it is vital for fiduciaries to understand the relevant plan participant population and ensure the QDIA is a suitable and prudent option. Indeed, Plan fiduciaries are responsible for the prudent selection and continuous monitoring of an appropriate QDIA. The BlackRock TDF with the target year closest to a participant's assumed retirement age (*i.e.*, age 65) has served as the QDIA in the Plan throughout the Class Period.

33. Given that the vast majority of Plan participants are not sophisticated investors, many, by default, concentrate their retirement assets in TDFs. As such, the impact of Defendant's imprudent selection of TDFs is magnified vis-à-vis other asset categories. Indeed, by December 31, 2020, approximately 51% of the Plan's assets were invested in the BlackRock TDFs. Moreover, approximately 95% of Plan participants had some or all of their assets invested in the BlackRock TDFs.

i.    The S&P Target Date Indices

34. As an evaluative tool, prudent fiduciaries will assess a TDF's risk and return characteristics compared to the TDF industry at large. The managers of the BlackRock TDFs, like those of many TDF suites, have designed a custom benchmark against which their performance can be assessed. For each TDF vintage, the BlackRock LifePath Index Custom Benchmark is a weighted mix of several market indices that are representative of the asset classes in which the BlackRock TDFs invest. As this composite benchmark simply mirrors the overall strategy of the series and fails to demonstrate how the investment is performing relative to peers, it is an imperfect evaluative tool. Rather than demonstrate the investment merits of the BlackRock TDFs in relation to the broader TDF market, as, for example, can be achieved (and is commonly performed) by utilizing the S&P 500 Index to benchmark a domestic large cap equity

fund, the BlackRock TDF custom benchmark merely reflects the managers' ability to execute their own particular strategy.

35.     According to Morningstar, the S&P Target Date Indices ("S&P Indices") are the most common benchmark used to approximate the performance of the TDF industry.  The S&P Indices, which include a separately calculated index for each target date, each "measure[] the performance of sub-indices selected and weighted to represent a consensus of the opportunity set available in the U.S. universe of target date funds."[8]  As a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs, the S&P Indices represent an appropriate, meaningful benchmark comparator for the BlackRock TDFs.  As each distinct TDF suite necessarily takes a different approach to the achieving the same objective (*i.e.*, preparing investors for retirement by a particular date), the S&P Indices provide an amalgamation of the different characteristics of TDF strategies: TDFs with actively and passively managed underlying funds, TDFs with different risk profiles, and, to state the obvious, those with different asset allocations, as distinguishable TDF suites have varying mixes of stocks, bonds and cash.  Accordingly, the S&P Target Date Indices are the most widely used TDF benchmark by investment managers and informed retirement plan fiduciaries.

36.     Genworth's internal Plan governance documents agree.  Throughout the Class Period, Genworth maintained an Investment Policy Statement ("IPS"), as amended from time to time, to provide the Committee with guidelines concerning the selection, evaluation and monitoring of Plan investment options.  The consistent application of the guidelines in an IPS is a vital component of an investment selection and monitoring process and, when employed properly, ensures that investment funds are assessed in a replicable manner.  For the entirety of

---

[8]S&P Target Date Index Series Methodology (June 2022).

the pertinent period, Genworth's IPS identified the applicable S&P Target Date Index as the appropriate benchmark against which to measure the performance of the BlackRock TDFs.

37.     Though the IPS calls for the BackRock TDFs' returns to compare favorably to the articulated benchmark, the BlackRock TDFs, as demonstrated below, consistently underperformed the corresponding S&P Indices benchmarks throughout the Class Period.  In other words, the BlackRock TDFs failed the very criteria that the applicable IPS (ratified by the Plan's fiduciaries themselves) set for monitoring the funds.  Had Genworth adhered to the investment selection and monitoring criteria set forth in its own IPS, it would have investigated alternatives for the underperforming BlackRock TDFs.

## ii.    The Comparator TDFs

38.     Measured against appropriate, available alternative TDFs pursuant to the frameworks employed by prudent fiduciaries, the BlackRock TDFs are a vastly inferior retirement solution and could not have been justifiably retained in the Plan.  Throughout the Class Period, there were many TDF offerings that consistently and dramatically outperformed the BlackRock TDFs, providing investors with substantially more capital appreciation. Critically, at the time of Defendant's decisions to select and retain the BlackRock TDFs, those alternatives – unlike the BlackRock TDFs – supported a reasonable expectation of return to justify selection and retention in the Plan.  It is apparent, given the continued presence of the BlackRock TDFs in the Plan's investment menu, that Defendant failed to scrutinize the performance of the BlackRock TDFs against any of the more appropriate alternatives in the TDF marketplace, or consider the suite's standing in the broader TDF market, in order to determine whether the expected performance of the BlackRock TDFs could support their continued retention in the Plan.  Accordingly, the Plan's investment in the BlackRock TDFs has resulted in

participants missing out on millions of dollars in retirement savings growth that could have been achieved through an investment in any of the below alternative TDFs, and indeed many other options.

39.     Prudent fiduciaries evaluate TDF returns against an appropriate index, a broad group of all peer TDFs, and also specific, readily investable alternatives to ensure that participants are benefiting from the current TDF offering.  In addition to consideration of broader benchmarks, it is incumbent on plan fiduciaries and a component of the applicable standard of care throughout the Class Period to assess TDFs against readily available prudent alternatives to ensure that participants are best served by the options available to them.

40.     This is particularly important in the context of the investment selection criteria enumerated in Genworth's IPS.  Indeed, among the initial screens that investments must pass to be considered for addition to the Plan lineup is the requirement that a candidate fund have sufficient assets under management such that the Plan assets would not represent a disproportionately large share of the fund's assets.  The TDF market is particularly top heavy; by the end of 2021 the top six largest TDF series managed approximately three-quarters of all TDF assets.  Accordingly, most of the TDF suites available for investment would fail the IPS' initial asset-level screening criteria.  Indeed, by the end of 2016, the Plan's approximately $300 million in the BlackRock TDFs would represent less than 5% of the assets under management of only 15 available TDF series, or just 28% of options available in the TDF universe.  In light of the structure of the TDF marketplace and Genworth's *own IPS*, it would not be relevant to compare the BlackRock TDFs to TDF series with significantly smaller levels of assets under management (such that the applicable IPS itself would exclude them from consideration).  Likewise, it is no

retort to point to the unsuitability or poor performance of a TDF that fails this criteria in order to support a thesis that the BlackRock TDFs were suitable.

41.    The six largest TDF series dominate the market:

| Target Date Series | Mutual Fund ($B) | CIT ($B) | Total ($B) | Market Share |
|---|---|---|---|---|
| Vanguard Target Retirement | 660 | 530 | 1,190 | 36.4% |
| T. Rowe Price Retirement | 180 | 170 | 350 | 10.7% |
| BlackRock LifePath Index | 61 | 226 | 287 | 8.8% |
| American Funds Target Date Retirement | 239 | 9 | 248 | 7.6% |
| Fidelity Freedom | 221 | - | 221 | 6.8% |
| Fidelity Freedom Index | 106 | 46 | 152 | 4.6% |

42.    Accordingly, four of the five non-BlackRock suites shown above (the "Comparator TDFs") represent an ideal group for comparison, as they represent the most likely alternatives to be selected were the BlackRock TDFs to be replaced.[9]  It bears noting that hundreds of retirement plan fiduciaries select a new TDF suite each year; conducting such a search is simply not possible without measuring TDFs with different styles, strategies, risk profiles and asset allocations (discussed in further detail below) against one another.

43.    Prudent fiduciaries are aware of the major offerings in the asset classes represented in a plan.  This is all the more important as it relates to a plan's QDIA, given the gravitation of plan assets to the QDIA and importance of the QDIA to the overall design of a plan's investment menu.  In fact, Defendant could have sought comparative returns data and

---

[9]The other TDF suite in the largest six by market share during the relevant period was the Fidelity Freedom Funds ("Freedom Funds"), which do not represent an appropriate comparator. The Freedom Funds would have been an imprudent selection for the Plan for the duration of the Class Period due to myriad quantitative and qualitative red flags after undergoing a strategy overhaul in 2014.  As a result of these issues, the Freedom Funds lost considerable assets and market share after their strategy overhaul in 2014.  Yet even the anemic and imprudent Freedom Funds outperformed the BlackRock TDFs during the Class Period.  While the Freedom Funds were not a suitable alternative for the Plan, a fiduciary applying the requisite scrutiny to the BlackRock TDFs would have been aware of their underperformance compared to the Freedom Funds, despite the issues plaguing the Freedom Funds.  This is even further confirmation of the inability of the BlackRock TDFs to provide competitive returns throughout the Class Period.

other metrics for each of the Comparator TDFs in real-time throughout the Class Period from

Alight Solutions, LLC ("Alight"), Hewitt Associates LLC ("Hewitt") or the Plan's other service

providers, or easily obtained it themselves through just a few clicks of a computer mouse. When

evaluated against the Comparator TDFs, both individually and as a group, the actual and risk-

adjusted returns of the BlackRock TDFs, at all stages along the glide path from aggressive to

conservative, paled in comparison to those of the readily available alternatives. Accordingly, the

analytical frameworks employed by prudent fiduciaries could not have supported a determination

that the expected returns of the BlackRock TDFs would justify their retention in the Plan.

44.    Any suggestion that it is inappropriate for fiduciaries to assess an investment suite

holding over half the Plan's assets against specific available alternatives because "to" glide

paths, like that of the BlackRock TDFs, adopt a more conservative approach is misleading.

While the BlackRock TDFs de-risk at a quicker pace than most of the Comparator TDFs, the

resulting equity allocation discrepancy is only reflected in its two most conservative vintages, the

2025 and Retirement TDFs.[10]  Indeed, the BlackRock TDF series has the industry's most

aggressive glide path for investors furthest from retirement and maintains a comparable equity

allocation to its peers until an investor is approaching retirement.[11]

---

[10]It necessarily follows that the percentage of assets in a TDF vintage which are not allocated to equities are in some combination of fixed income instruments and cash (with the latter appearing in TDF portfolios primarily as the retirement date approaches). For example, when the table "Percentage of Portfolio in Equities" notes that the allocation of the BlackRock 2055 TDF is 97% equity, this means that 3% of the portfolio is allocated to a mix of bonds and cash.

[11]Current equity allocations were compiled from Vanguard Advisor's online "Compare Products" tool. Where an equity allocation is blank, the TDF does not offer that respective vintage. The equity allocation in the BlackRock TDFs' Retirement vintage is shown in the 2020 column.

| Percentage of Portfolio in Equities | | | | | | | | | | | | | |
| Target Year | 2065 | 2060 | 2055 | 2050 | 2045 | 2040 | 2035 | 2030 | 2025 | 2020 | 2015 | 2010 | 2005 | Retire |
| American Funds Trgt Date Retire | 85 | 85 | 85 | 85 | 84 | 81 | 71 | 59 | 50 | 45 | 42 | 39 | - | - |
| Fidelity Freedom Index | 90 | 90 | 90 | 90 | 90 | 89 | 77 | 62 | 56 | 49 | 40 | 30 | 21 | 19 |
| T. Rowe Price Retirement | 94 | 94 | 94 | 94 | 92 | 88 | 79 | 69 | 58 | 51 | 47 | 44 | 41 | - |
| Vanguard Target Retirement | 87 | 87 | 87 | 87 | 84 | 76 | 69 | 62 | 54 | 42 | 29 | - | - | 29 |
| BlackRock LifePath Index | 97 | 97 | 97 | 96 | 91 | 82 | 72 | 60 | 48 | 40 | - | - | - | - |
| Comparator TDF Average | 89 | 89 | 89 | 89 | 88 | 84 | 74 | 63 | 55 | 47 | | | | |
| BlackRock +/- Average | **8** | **8** | **8** | **7** | **4** | **-2** | **-2** | **-3** | **-7** | **-7** | | | | |

45. The BlackRock TDFs are considerably more aggressive than the Comparator TDFs from the vintage intended for the youngest investors through those with a target retirement date of 2050. For the 2045 through 2030 vintages, the latter of which is managed for investors currently within ten years of their anticipated retirement date, the difference in equity allocations between the BlackRock TDFs and the Comparator TDFs is negligible. Though the BlackRock TDFs become considerably more conservative in the 2025 vintage and at retirement, each of the Comparator TDFs ultimately reach a terminal equity allocation that is at or below the 40% of the BlackRock TDFs.



iii.    Performance Comparisons

46.    The contention that the performance of a "to," ostensibly more conservative, TDF cannot be compared to more aggressive series relies on the presumption that a considerably heavier weight to equities will likely produce greater returns, as compensation for the assumption of greater risk.  The industry-leading equity allocation of the longest-dated vintages of the BlackRock TDFs has refuted this notion consistently and dramatically throughout the Class Period.  The repeatedly inferior returns of the vintages serving young investors are matched by similar performance shortcomings across the BlackRock TDFs' glide path, as reflected in the three- and five-year annualized returns data[12] provided below comparing the performance of the BlackRock TDFs to that of the Comparator TDFs, as well as to the performance of the broader universe of TDFs, as represented by the S&P Indices.[13]

_____

[12]Virtually all competent investment advisors emphasize that fiduciaries should focus on three- and five-year returns to evaluate the performance of an investment over periods most closely approximating a market cycle and persistent poor performance over those periods demands investigation and action by fiduciaries.  Indeed, Genworth's IPS acknowledges that market fluctuations will generally balance out over a three- to five-year period, making those time horizons appropriate for evaluating the effectiveness of a particular fund manager.  Any suggestion that a TDF has a lifespan of 10 or 25 years and, therefore, performance metrics of three to five years should not be considered is nonsensical because (a) at any point in time, many vintages of TDFs have shorter lifespans than 10, and especially 25, years, and (b) most importantly, in light of employment mobility in the United States (with the average employee holding a position for slightly more than four years), competent and informed fiduciaries understand that many participants will not maintain their TDF investments within a defined contribution plan such as the Plan until the actual target date of the given investment.  Thus, three- and five-year performance is paramount in the minds of any competent fiduciary of a retirement plan.  This is confirmed by the language of Genworth's own IPS (even though it was apparently ignored by the Plan's fiduciaries during the Class Period).  Accordingly, the performance of the Retirement vintage should have been least important to Defendant.

[13]The only exception is the BlackRock Retirement TDF, which has regularly generated better trailing returns than the two Comparator TDFs that also offer a Retirement vintage (Fidelity Freedom Index and Vanguard Target Retirement).  But the outperformance of a single vintage does not exonerate the rest of the suite's putrid performance.  Indeed, TDFs are evaluated and selected as a single suite.  Moreover, as the BlackRock TDFs are a "to retirement" investment,

47.    Moreover, analysis of a TDF's risk-adjusted return, in concert with its actual return, can control for any differences in asset allocation among comparators used for evaluation. The Sharpe ratio metric, commonly prescribed as a component of a fiduciary investment monitoring process by retirement plan investment policy statements, accounts for differing levels of risk by measuring the performance of an investment, such as a TDF, compared to the performance of similar investments, after adjusting for risk. More specifically, the Sharpe ratio represents the additional amount of return that an investor receives per unit increase of risk. The Sharpe ratio is computed by comparing a fund manager's outperformance of the risk-free rate to the standard deviation of the manager's performance. Applied to TDFs, this metric enables the comparison of suites with disparate equity and fixed income allocations as well as both "to" and "through" management styles (each resulting in varying levels of risk) by controlling for those differences. In comparing two TDFs, the Sharpe ratio enables plan fiduciaries to determine whether Manager A, which has assumed greater risks than manager B, is appropriately compensating investors in the form of relatively superior returns.[14] In other words, the Sharpe ratios can teach investors and responsible fiduciaries whether the investment they are considering is worth it compared to other readily available investments.

48.    The below performance data, including the three- and five-year annualized and risk-adjusted returns, represents information that was easily accessible to Genworth during the Class Period and would have been reviewed by prudent fiduciaries. Genworth could have sought

---

they are managed with the expectation that investors will withdraw their assets from the Plan upon reaching the Retirement vintage or shortly thereafter.

[14]Consider the following example: Manager A generates a return of 15% and Manager B generates a return of 12%; the risk-free rate is 5%. Manager A's portfolio has a standard deviation of 8% while Manager B's portfolio has a standard deviation of 5%. In this example, Manager A's Sharpe ratio is 1.25; Manager B's is 1.4. Though Manager A generated higher actual returns, their assumption of greater risk rendered their risk-adjusted returns inferior to those of Manager B.

this comparative returns data at any time from Alight (and before Alight, Hewitt) in its capacity as recordkeeper (since Alight/Hewitt regularly provide such data to their customers), as well as from the Plan's other service providers, or, in the alternative, obtained it themselves in real time through just a few clicks of a computer mouse. At any point in the Class Period, such data (in addition to further quantitative factors, such as information ratio and batting average) would have been sufficient to convince a fiduciary following a prudent process to investigate alternatives and ultimately replace the BlackRock TDFs.[15]

- By the metrics available to Defendant at the start of the Class Period, as of the most recent quarter-end, the three- and five-year annualized returns of the 2045 through 2055[16] BlackRock TDFs, each of which possessed a considerably greater equity allocation than the average of the Comparator TDFs, trailed those of the Comparator TDFs (and the corresponding S&P Indices) and had consistently done so for many consecutive quarters. The entire suite, bar the Retirement vintage, ranked in the bottom half among the Comparator TDFs in both actual returns and risk-adjusted returns. Moreover, every single vintage failed to beat the broad TDF market, as represented by the corresponding vintage of the S&P Indices. As a further indication of the BlackRock TDFs' performance issues, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 55th and 61st percentile, respectively, among its peer group (as defined by Morningstar). As of the end of the Second Quarter of 2016, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below shortcomings.

---

[15]The BlackRock TDF suite offers a different fund for target dates every five years. For the majority of the Class Period, Genworth has opted not to offer the full suite (*i.e.*, 2020, 2025, 2030) and instead has offered only those vintages with a target date at the beginning of each decade (*i.e.*, 2020, 2030, 2040). In 2021, Alight belatedly advised Genworth that 98 percent of BlackRock TDF clients offered the full complement of vintages and noted that adding 5-year vintages to the Plan lineup could significantly reduce the range of risk-seeking allocations to be closer to the ideal, age-appropriate asset allocation scheme. Indeed, for the majority of the Class Period, consistent with Genworth's inattention to the best interest of Plan participants, the Committee failed to provide an appropriate asset allocation solution that fit the investment and retirement needs of half the Plan's participant population.

[16]The BlackRock 2060 TDF did not have a three-year track record until the Fourth Quarter of 2017. The BlackRock 2065 TDF did not launch until September 2019.

| 3-Year Return as of 2Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.52 | 5.80 | 6.06 | 6.22 | 6.39 | 6.59 | 6.80 | 7.00 |
| Outperformance vs S&P TDF Index | (1.21) | (1.21) | (1.31) | (1.37) | (1.38) | (1.27) | (1.24) | (1.13) |
| Best Performing Comparator TDF | 7.57 | 8.29 | 8.62 | 8.59 | 8.61 | 8.63 | 8.65 | 8.61 |
| Worst Performing Comparator TDF | 5.54 | 6.26 | 6.42 | 6.71 | 6.75 | 6.82 | 6.89 | 6.98 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | 4 [17] |

| 5-Year Return as of 2Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.39 | 5.69 | 5.96 | 6.17 | 6.34 | 6.52 | 6.70 | 6.97 |
| Outperformance vs S&P TDF Index | (0.70) | (0.71) | (0.76) | (0.80) | (0.81) | (0.77) | (0.74) | (0.62) |
| Best Performing Comparator TDF | 7.64 | 8.45 | 8.75 | 8.69 | 8.73 | 8.73 | 8.74 | 8.74 |
| Worst Performing Comparator TDF | 5.08 | 5.75 | 5.88 | 6.18 | 6.23 | 6.29 | 6.28 | 6.41 |
| BlackRock Rank (out of 5) | 4 | Last | 4 | Last | 4 | 4 | 4 | 4 |

| Sharpe Ratio as of 2Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 3 | 3 | 4 | 4 | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 3 | 3 | 4 | 4 | 4 | Last | 4 | 4 |

- As of the end of the Third Quarter of 2016, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 57th and 67th percentile, respectively, among its peer group.

| 3-Year Return as of 3Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.07 | 5.33 | 5.56 | 5.74 | 5.91 | 6.08 | 6.20 | 6.30 |
| Outperformance vs S&P TDF Index | (0.68) | (0.68) | (0.74) | (0.85) | (0.86) | (0.79) | (0.74) | (0.63) |
| Best Performing Comparator TDF | 6.67 | 7.11 | 7.55 | 7.67 | 7.70 | 7.75 | 7.77 | 7.75 |
| Worst Performing Comparator TDF | 5.26 | 5.81 | 6.12 | 6.35 | 6.36 | 6.39 | 6.42 | 6.45 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

---

[17]For avoidance of confusion, the figures in the "Outperformance vs S&P TDF Index" row represent the BlackRock TDF's out- or underperformance of the corresponding vintage of the S&P Indices. A red number indicates the annualized amount by which the BlackRock TDF underperformed its S&P counterpart

| 5-Year Return as of 3Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.72 | 8.54 | 9.24 | 9.87 | 10.44 | 10.95 | 11.44 | 11.86 |
| Outperformance vs S&P TDF Index | (1.33) | (1.29) | (1.33) | (1.26) | (1.11) | (0.92) | (0.70) | (0.47) |
| Best Performing Comparator TDF | 10.65 | 12.01 | 12.76 | 12.91 | 13.07 | 13.11 | 13.13 | 13.13 |
| Worst Performing Comparator TDF | 7.65 | 8.81 | 9.25 | 10.13 | 10.22 | 10.36 | 10.53 | 10.73 |
| BlackRock Rank (out of 5) | 4 | Last | Last | Last | 4 | 4 | 4 | 4 |

| Sharpe Ratio as of 3Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 3 | 3 | 4 | 4 | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |

- As of the end of the Fourth Quarter of 2016, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 50th and 70th percentile, respectively, among its peer group.

| 3-Year Return as of 4Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.68 | 3.88 | 4.05 | 4.19 | 4.30 | 4.38 | 4.41 | 4.41 |
| Outperformance vs S&P TDF Index | (0.50) | (0.44) | (0.44) | (0.47) | (0.46) | (0.45) | (0.50) | (0.51) |
| Best Performing Comparator TDF | 4.61 | 4.67 | 5.03 | 5.15 | 5.19 | 5.28 | 5.28 | 5.26 |
| Worst Performing Comparator TDF | 3.96 | 4.23 | 4.52 | 4.56 | 4.61 | 4.62 | 4.65 | 4.64 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 4Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.45 | 7.19 | 7.84 | 8.45 | 8.94 | 9.42 | 9.82 | 10.16 |
| Outperformance vs S&P TDF Index | (1.22) | (1.19) | (1.20) | (1.15) | (1.06) | (0.89) | (0.78) | (0.66) |
| Best Performing Comparator TDF | 8.96 | 10.40 | 11.14 | 11.31 | 11.46 | 11.51 | 11.52 | 11.50 |
| Worst Performing Comparator TDF | 6.55 | 7.59 | 8.12 | 8.94 | 9.02 | 9.16 | 9.26 | 9.45 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

| Sharpe Ratio as of 4Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 3 | 3 | 3 | 4 | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | 4 | 4 | 4 | 4 | Last | 4 | 4 |

- As of the end of the First Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 66th and 71st percentile, respectively, among its peer group.

-22-

| 3-Year Return as of 1Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.09 | 4.48 | 4.83 | 5.14 | 5.40 | 5.56 | 5.62 | 5.62 |
| Outperformance vs S&P TDF Index | (0.80) | (0.68) | (0.63) | (0.61) | (0.54) | (0.53) | (0.63) | (0.71) |
| Best Performing Comparator TDF | 5.37 | 5.72 | 6.38 | 6.73 | 6.84 | 6.99 | 7.01 | 7.00 |
| Worst Performing Comparator TDF | 4.78 | 5.14 | 5.72 | 5.95 | 6.14 | 6.17 | 6.20 | 6.17 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 1Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.76 | 6.42 | 7.01 | 7.56 | 8.01 | 8.40 | 8.68 | 8.92 |
| Outperformance vs S&P TDF Index | (1.06) | (1.00) | (0.98) | (0.94) | (0.85) | (0.75) | (0.77) | (0.79) |
| Best Performing Comparator TDF | 8.21 | 9.36 | 10.13 | 10.43 | 10.59 | 10.67 | 10.69 | 10.66 |
| Worst Performing Comparator TDF | 6.04 | 6.91 | 7.56 | 8.27 | 8.33 | 8.42 | 8.46 | 8.61 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

| Sharpe Ratio as of 1Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | 4 | 4 | 4 | Last | Last | Last | Last |

49.    At this point, consistent with their regular monitoring duties, Genworth should have reviewed at least four consecutive quarters of deplorable actual and risk-adjusted three- and five-year returns by the BlackRock TDFs when measured against appropriate peer funds, the most widely utilized TDF benchmark, and the broader TDF industry.  These strong indicators of the imprudence of the continued retention of the BlackRock TDFs should have been sufficient to convince Defendant to investigate a replacement.[18]  Either trend of underperformance alone, whether on an actual or risk-adjusted basis, should have raised alarm bells for prudent fiduciaries.  That both red flags were present here, but were ignored, demonstrates that Defendant was either asleep at the wheel or willfully ignored widely utilized investment

---

[18]Four quarters of trailing three- or five-year returns is distinct from four quarters of returns. Plaintiffs note, for example, four consecutive quarters of trailing five-year underperformance to show that, were the Committee meeting on a regular, quarterly basis, it would have reviewed five-year underperformance at four straight separate meetings.  Any trailing three- or five-year underperformance as of a single quarter end is worth a fiduciary's attention; trends such as those detailed in this Complaint are cause for considerable concern.

evaluation metrics in their continued review of the suitability of the BlackRock TDFs for the

Plan.  Defendant allowed the suite to linger even as its performance issues persisted:

- As of the end of the Second Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 69th and 71st percentile, respectively, among its peer group.

| 3-Year Return as of 2Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.67 | 4.08 | 4.45 | 4.79 | 5.07 | 5.23 | 5.25 | 5.19 |
| Outperformance vs S&P TDF Index | (0.91) | (0.78) | (0.71) | (0.68) | (0.59) | (0.58) | (0.71) | (0.84) |
| Best Performing Comparator TDF | 5.10 | 5.57 | 6.08 | 6.57 | 6.69 | 6.85 | 6.87 | 6.86 |
| Worst Performing Comparator TDF | 4.41 | 4.73 | 5.35 | 5.66 | 5.83 | 5.82 | 5.85 | 5.80 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.51 | 7.34 | 8.08 | 8.76 | 9.36 | 9.87 | 10.24 | 10.54 |
| Outperformance vs S&P TDF Index | (1.40) | (1.33) | (1.33) | (1.27) | (1.12) | (0.96) | (0.92) | (0.87) |
| Best Performing Comparator TDF | 9.27 | 10.47 | 11.42 | 11.85 | 12.07 | 12.16 | 12.16 | 12.16 |
| Worst Performing Comparator TDF | 6.96 | 8.01 | 8.77 | 9.73 | 9.82 | 9.93 | 10.01 | 10.19 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

| Sharpe Ratio as of 2Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | 4 | 4 | Last | Last | Last | Last | Last |

- As of the end of the Third Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 64th and 71st percentile, respectively, among its peer group.

| 3-Year Return as of 3Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.14 | 5.77 | 6.34 | 6.85 | 7.30 | 7.57 | 7.67 | 7.68 |
| Outperformance vs S&P TDF Index | (0.90) | (0.79) | (0.74) | (0.72) | (0.60) | (0.57) | (0.68) | (0.78) |
| Best Performing Comparator TDF | 6.83 | 7.46 | 8.03 | 8.61 | 8.85 | 9.01 | 9.05 | 9.05 |
| Worst Performing Comparator TDF | 5.92 | 6.38 | 7.19 | 7.61 | 7.97 | 8.02 | 8.06 | 8.02 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.18 | 7.02 | 7.78 | 8.47 | 9.05 | 9.55 | 9.87 | 10.11 |
| Outperformance vs S&P TDF Index | (1.46) | (1.40) | (1.39) | (1.35) | (1.23) | (1.08) | (1.09) | (1.07) |
| Best Performing Comparator TDF | 8.81 | 10.10 | 11.12 | 11.65 | 11.90 | 12.00 | 12.04 | 12.02 |
| Worst Performing Comparator TDF | 6.71 | 7.67 | 8.54 | 9.47 | 9.56 | 9.65 | 9.70 | 9.85 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

| Sharpe Ratio as of 3Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | 4 | 4 | Last | Last | Last | Last | Last |

- As of the end of the Fourth Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 55th and 69th percentile, respectively, among its peer group.

| 3-Year Return as of 4Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.66 | 6.48 | 7.21 | 7.89 | 8.48 | 8.85 | 8.97 | 8.96 | 8.96 |
| Outperformance vs S&P TDF Index | (0.82) | (0.72) | (0.66) | (0.62) | (0.47) | (0.39) | (0.52) | (0.66) | (0.74) |
| Best Performing Comparator TDF | 7.41 | 8.11 | 8.75 | 9.56 | 9.89 | 10.09 | 10.16 | 10.15 | 9.68 |
| Worst Performing Comparator TDF | 6.55 | 7.07 | 7.85 | 8.39 | 8.91 | 9.14 | 9.16 | 9.11 | 9.10 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | 4 |

| 5-Year Return as of 4Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.58 | 7.51 | 8.32 | 9.09 | 9.75 | 10.28 | 10.61 | 10.82 |
| Outperformance vs S&P TDF Index | (1.34) | (1.25) | (1.25) | (1.20) | (1.04) | (0.87) | (0.87) | (0.88) |
| Best Performing Comparator TDF | 9.09 | 10.36 | 11.50 | 12.13 | 12.45 | 12.57 | 12.62 | 12.60 |
| Worst Performing Comparator TDF | 7.30 | 8.29 | 9.30 | 10.36 | 10.46 | 10.54 | 10.60 | 10.74 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

| Sharpe Ratio as of 4Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 3 | 4 | 4 | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | Last | 4 | Last | Last | Last | Last | Last | N/A |

- As of the end of the First Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P

Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 65th and 71st percentile, respectively, among its peer group.

| 3-Year Return as of 1Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.63 | 5.37 | 6.03 | 6.65 | 7.17 | 7.49 | 7.60 | 7.59 | 7.59 |
| Outperformance vs S&P TDF Index | (0.70) | (0.64) | (0.59) | (0.56) | (0.44) | (0.39) | (0.51) | (0.65) | (0.73) |
| Best Performing Comparator TDF | 6.50 | 7.12 | 7.86 | 8.86 | 9.20 | 9.41 | 9.53 | 9.51 | 9.49 |
| Worst Performing Comparator TDF | 5.62 | 6.06 | 6.83 | 7.35 | 7.86 | 8.10 | 8.11 | 8.05 | 8.06 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 1Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.51 | 6.30 | 6.99 | 7.63 | 8.18 | 8.62 | 8.84 | 8.98 |
| Outperformance vs S&P TDF Index | (1.12) | (1.04) | (1.03) | (1.01) | (0.89) | (0.76) | (0.83) | (0.88) |
| Best Performing Comparator TDF | 7.92 | 8.83 | 9.94 | 10.63 | 10.93 | 11.07 | 11.12 | 11.12 |
| Worst Performing Comparator TDF | 6.31 | 7.12 | 8.07 | 8.97 | 9.04 | 9.09 | 9.14 | 9.21 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 1Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | N/A |

50.    At this point, consistent with their regular monitoring duties, Genworth should have reviewed at least eight consecutive quarters demonstrating the BlackRock TDFs' persistent inability to beat the actual or risk-adjusted three- and five-year returns generated by the Comparator TDFs, the S&P Indices, and the broader TDF industry.  That is, from the start of the Class Period, the BlackRock TDFs had failed to generate returns to beat the Comparator TDFs or the S&P Indices for *eight consecutive* three-year periods and *eight consecutive* five-year periods, while simultaneously failing to outperform the same comparators adjusting for the levels of risk assumed and demonstrating an inability to produce risk-adjusted returns among the top half of all TDFs.  Defendants' confounding refusal to replace the suite by this juncture represented a severe breach of fiduciary duty.  These issues endured:

- As of the end of the Second Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-

adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 57th and 61st percentile, respectively, among its peer group.

| 3-Year Return as of 2Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.10 | 5.89 | 6.60 | 7.26 | 7.83 | 8.19 | 8.32 | 8.30 | 8.31 |
| Outperformance vs S&P TDF Index | (0.80) | (0.70) | (0.63) | (0.57) | (0.43) | (0.32) | (0.43) | (0.56) | (0.66) |
| Best Performing Comparator TDF | 6.64 | 7.27 | 8.16 | 9.19 | 9.56 | 9.76 | 9.88 | 9.90 | 9.89 |
| Worst Performing Comparator TDF | 6.04 | 6.49 | 7.19 | 7.66 | 8.14 | 8.40 | 8.40 | 8.37 | 8.37 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.99 | 6.77 | 7.47 | 8.10 | 8.66 | 9.07 | 9.28 | 9.40 |
| Outperformance vs S&P TDF Index | (0.93) | (0.83) | (0.79) | (0.78) | (0.64) | (0.53) | (0.61) | (0.66) |
| Best Performing Comparator TDF | 8.06 | 8.89 | 9.86 | 10.61 | 10.91 | 11.06 | 11.15 | 11.12 |
| Worst Performing Comparator TDF | 6.79 | 7.58 | 8.54 | 9.31 | 9.49 | 9.53 | 9.58 | 9.64 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 2Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last | N/A |

- As of the end of the Third Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 54th and 66th percentile, respectively, among its peer group.

| 3-Year Return as of 3Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.27 | 8.60 | 9.80 | 10.95 | 11.94 | 12.55 | 12.74 | 12.72 | 12.70 |
| Outperformance vs S&P TDF Index | (1.09) | (0.85) | (0.67) | (0.49) | (0.16) | 0.01 | (0.19) | (0.40) | (0.64) |
| Best Performing Comparator TDF | 9.61 | 10.59 | 11.56 | 13.05 | 13.45 | 13.76 | 13.91 | 13.91 | 13.87 |
| Worst Performing Comparator TDF | 8.40 | 9.70 | 10.66 | 11.61 | 12.54 | 12.91 | 12.90 | 12.89 | 12.89 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.58 | 6.34 | 7.02 | 7.64 | 8.20 | 8.59 | 8.75 | 8.81 |
| Outperformance vs S&P TDF Index | (0.91) | (0.79) | (0.76) | (0.75) | (0.59) | (0.46) | (0.55) | (0.61) |
| Best Performing Comparator TDF | 7.32 | 8.01 | 8.98 | 9.79 | 10.08 | 10.26 | 10.35 | 10.32 |
| Worst Performing Comparator TDF | 6.55 | 7.24 | 8.13 | 8.69 | 9.17 | 9.26 | 9.28 | 9.30 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 3Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | N/A |

- As of the end of the Fourth Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices.

| 3-Year Return as of 4Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.71 | 5.23 | 5.70 | 6.14 | 6.51 | 6.69 | 6.72 | 6.70 | 6.69 |
| Outperformance vs S&P TDF Index | (0.33) | (0.24) | (0.08) | 0.06 | 0.18 | 0.18 | 0.04 | (0.12) | (0.26) |
| Best Performing Comparator TDF | 5.72 | 6.12 | 6.92 | 7.43 | 7.62 | 7.77 | 7.83 | 7.81 | 7.81 |
| Worst Performing Comparator TDF | 5.32 | 5.73 | 6.07 | 6.41 | 6.75 | 6.78 | 6.77 | 6.77 | 6.75 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 4Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.70 | 4.00 | 4.27 | 4.51 | 4.70 | 4.80 | 4.82 | 4.81 |
| Outperformance vs S&P TDF Index | (0.40) | (0.32) | (0.24) | (0.18) | (0.12) | (0.11) | (0.19) | (0.26) |
| Best Performing Comparator TDF | 4.69 | 5.00 | 5.63 | 5.95 | 6.05 | 6.17 | 6.19 | 6.17 |
| Worst Performing Comparator TDF | 4.24 | 4.50 | 4.82 | 4.99 | 5.10 | 5.13 | 5.12 | 5.10 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 4Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 3 | Last | Last | Last | Last | Last | Last | Last | N/A |

- As of the end of the First Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices.  In addition, the suite's five-year Plan-asset weighted Sharpe ratio ranked in the 54th percentile among its peer group.

-28-

| 3-Year Return as of 1Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.36 | 7.38 | 8.28 | 9.14 | 9.89 | 10.34 | 10.48 | 10.47 | 10.45 |
| Outperformance vs S&P TDF Index | (0.61) | (0.37) | (0.16) | 0.04 | 0.33 | 0.48 | 0.36 | 0.18 | (0.03) |
| Best Performing Comparator TDF | 8.24 | 9.05 | 9.79 | 10.88 | 11.28 | 11.50 | 11.62 | 11.62 | 11.58 |
| Worst Performing Comparator TDF | 7.12 | 8.18 | 8.87 | 9.52 | 10.20 | 10.43 | 10.43 | 10.43 | 10.42 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 | 4 |

| 5-Year Return as of 1Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.70 | 5.26 | 5.75 | 6.19 | 6.57 | 6.80 | 6.89 | 6.88 |
| Outperformance vs S&P TDF Index | (0.57) | (0.40) | (0.31) | (0.22) | (0.09) | (0.00) | (0.07) | (0.14) |
| Best Performing Comparator TDF | 5.93 | 6.41 | 7.12 | 7.77 | 7.98 | 8.12 | 8.19 | 8.18 |
| Worst Performing Comparator TDF | 5.54 | 5.92 | 6.39 | 6.69 | 6.96 | 7.08 | 7.08 | 7.05 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 1Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | N/A |

- As of the end of the Second Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's five-year Plan-asset weighted Sharpe ratio ranked in the 56th percentile among its peer group.

| 3-Year Return as of 2Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.65 | 7.69 | 8.61 | 9.48 | 10.24 | 10.68 | 10.82 | 10.81 | 10.80 |
| Outperformance vs S&P TDF Index | (0.63) | (0.40) | (0.22) | (0.02) | 0.23 | 0.36 | 0.21 | 0.01 | (0.21) |
| Best Performing Comparator TDF | 8.75 | 9.67 | 10.51 | 11.37 | 11.69 | 11.83 | 11.95 | 11.92 | 11.90 |
| Worst Performing Comparator TDF | 7.27 | 8.39 | 9.39 | 10.09 | 10.79 | 11.05 | 11.03 | 11.04 | 11.03 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.63 | 5.14 | 5.58 | 5.99 | 6.33 | 6.52 | 6.57 | 6.53 |
| Outperformance vs S&P TDF Index | (0.52) | (0.39) | (0.31) | (0.25) | (0.14) | (0.08) | (0.16) | (0.26) |
| Best Performing Comparator TDF | 5.79 | 6.26 | 6.90 | 7.54 | 7.74 | 7.90 | 7.97 | 7.94 |
| Worst Performing Comparator TDF | 5.48 | 5.82 | 6.22 | 6.48 | 6.72 | 6.86 | 6.85 | 6.82 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 2Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last | N/A |

- As of the end of the Third Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices.

| 3-Year Return as of 3Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.25 | 7.05 | 7.74 | 8.40 | 8.96 | 9.28 | 9.37 | 9.37 | 9.35 |
| Outperformance vs S&P TDF Index | (0.47) | (0.31) | (0.19) | (0.06) | 0.13 | 0.21 | 0.08 | (0.06) | (0.26) |
| Best Performing Comparator TDF | 7.59 | 8.28 | 9.22 | 10.04 | 10.04 | 10.12 | 10.21 | 10.19 | 10.16 |
| Worst Performing Comparator TDF | 6.66 | 7.52 | 8.29 | 8.78 | 9.28 | 9.41 | 9.42 | 9.41 | 9.41 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.22 | 5.73 | 6.16 | 6.56 | 6.90 | 7.09 | 7.15 | 7.15 |
| Outperformance vs S&P TDF Index | (0.47) | (0.37) | (0.31) | (0.26) | (0.17) | (0.12) | (0.19) | (0.26) |
| Best Performing Comparator TDF | 6.27 | 6.74 | 7.16 | 7.75 | 7.95 | 8.09 | 8.14 | 8.13 |
| Worst Performing Comparator TDF | 5.80 | 6.33 | 6.67 | 6.92 | 7.15 | 7.23 | 7.24 | 7.21 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 3Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 3 | 4 | Last | Last | Last | Last | Last | Last | N/A |

51.    By this point, consistent with their regular monitoring duties, beginning with the start of the Class Period, Genworth should have reviewed at least *three and a half years'* worth of concerning datapoints laying bare the inability of the BlackRock TDFs to generate returns that beat *any* of the comparators discussed in this complaint. Defendant's continued refusal to act in response to these blatant warning signs represented a bewildering miscarriage of its fiduciary duties.

52.    Although the BlackRock TDFs' risk-adjusted returns exhibited some modest improvements in subsequent quarters, those modest improvements were immaterial in nature and did not negate or diminish the profound breaches of fiduciary duty committed by Defendant in

retaining the suite in the face of overwhelming and consistent evidence that it could not provide superior returns (and was costing Plan participants tens of millions of dollars in potential appreciation), on an absolute or risk-adjusted basis, than the Comparator TDFs, the S&P Indices, or the broader TDF market.  Moreover, the BlackRock TDFs continued to dramatically, repeatedly underperform the average return of the Comparator TDFs for virtually the entire relevant period, as demonstrated in the charts below comparing the three- and five-year annualized returns of several representative vintages of the BlackRock TDFs to those of the same iterations of the Comparator TDFs, namely the 2025, 2040, and 2055 TDFs, which are the second-shortest dated (2025) and second-longest dated (2055) BlackRock TDFs, as well as the fund that represents the midpoint of the nine vintages for which there were at least three-year trailing returns (2040).  These three vintages represent conservative, moderate and aggressive stages along the BlackRock TDF glidepath and are representative of the shortcomings of the entire suite.





53.     These returns, and all returns cited in this Complaint, are annualized, meaning the differences in the returns between the BlackRock TDFs and Comparator TDFs are equivalent to the specified difference in *each* of the three or five years in the period *compounded*.  This is not the same as saying the funds underperformed by the specified amount over the entire time period.  These are persistent and substantial shortcomings that could not have supported a determination by prudent fiduciaries that the BlackRock TDFs could be justifiably retained in the Plan.  Indeed, from the start of the Class Period through the filing of the complaint initiating this action, the BlackRock TDFs *cumulatively* underperformed each of the comparator TDFs (on a Plan-asset weighted basis) by the below amounts which, applied to the considerable amount of Plan assets in the suite, resulted in the loss of over $100 million in missed capital appreciation for the retirement savings of Plan participants:

| BlackRock Cumulative Underperformance vs American Funds | 9.01% |
| BlackRock Cumulative Underperformance vs Freedom Index Funds | 5.20% |
| BlackRock Cumulative Underperformance vs T. Rowe Price | 8.10% |
| BlackRock Cumulative Underperformance vs Vanguard | 1.93% |

54.     Again, the above information was readily obtainable and computable by Defendant in real time throughout the relevant period.  Defendant, however, neglected to undertake any analysis of the BlackRock TDFs against appropriate peers using the above or other important performance metrics.  If Defendant had taken its fiduciary duties seriously during the Class Period, it would have replaced the BlackRock TDFs with a suitable alternative TDF.  Its failure to do so caused Plan participants to miss out on substantial investment returns for their retirement savings.

55.     The consistently deplorable performance of the BlackRock TDFs was also visible at the suite level throughout the pertinent period.  The below charts demonstrate the rolling out- or underperformance of the BlackRock TDFs versus each of the Comparator TDFs, weighting the returns of each distinct vintage equally to produce an aggregate suite-level return, another form of TDF analysis regularly undertaken by all investment advisors and competent fiduciaries.



BlackRock Rolling Returns vs American Funds





BlackRock Rolling Returns vs Fidelity Freedom Index





**BlackRock Rolling Returns vs T. Rowe Price**





BlackRock Rolling Returns vs Vanguard





56.    The returns of each vintage of a TDF suite, however, are not experienced by a Plan in equal measure, as Plan assets are distributed in different quantities across the glide path depending on a multitude of Plan specific factors.  Accordingly, prudent fiduciaries will perform the same analysis as set forth above to compare aggregate suite-level returns that are asset-weighted.[19]

---

[19]Returns are weighted according to the asset levels invested in each vintage of the BlackRock TDFs at the start of the Class Period.  For example, if the Plan had $100 million in total assets in the BlackRock TDFs, $10 million of which was invested in the 2030 vintage, the returns of the 2030 vintage would be given a 10% weight in the performance composite.

BlackRock Rolling Returns vs American Funds





BlackRock Rolling Returns vs Fidelity Freedom Index





BlackRock Rolling Returns vs T. Rowe Price





BlackRock Rolling Returns vs Vanguard





57.     Defendant had immediate access to historical and then-current returns data for the BlackRock TDFs, and could have sought comparative data from Alight, Hewitt and/or the Plan's other service providers, or obtained it itself in real time through just a few clicks of a computer mouse.

58.     The troubling pattern identified above, which persisted for the entire Class Period, was ignored by Defendant, who neglected to appropriately scrutinize the BlackRock TDFs against any of the many superior TDFs available in the market, or the broader TDF market, as a whole.  In fact, notwithstanding the warning signs detailed above, the minutes of meetings of the Administrative Committee reflect that the Committee regularly went multiple quarters without so much as independently discussing the performance woes and other issues with the BlackRock TDFs.

59.     Had Defendant taken their fiduciary duties seriously during the Class Period and acted consistent with the guidance of its Investment Policy Statement and the minimum fiduciary standards of care, it would have, upon observing the underperformance of the BlackRock TDFs relative to their applicable S&P Indices, the TDF universe, and specific readily investable peers, replaced the BlackRock TDFs with a suitable alternative TDF suite.  Defendant's failure to do so caused Plan participants to miss out on substantial investment returns for their retirement savings.

### V.     ERISA'S FIDUCIARY STANDARDS

60.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendant as a fiduciary of the Plan.  Section 404(a) of ERISA, 29 U.S.C. § 1104(a), states, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
>
> (A)     for the exclusive purpose of
>
> > (i)     providing benefits to participants and their beneficiaries; and
> >
> > (ii)     defraying     reasonable     expenses     of administering the plan;

[and]

(B)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

61.    Under 29 U.S.C. § 1103(c)(l), with certain exceptions not relevant here, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in a plan and their beneficiaries and defraying reasonable expenses of administering the plan.

62.    Under ERISA, parties that exercise any authority or control over plan assets, including the selection of plan investments and service providers, are fiduciaries and must act prudently and solely in the interest of participants in a plan.

63.    ERISA's fiduciary duties are "the highest known to the law" and must be performed "with an eye single" to the interests of participants. *Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n. 8 (2d Cir. 1982).

64.    ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. Section 405(a) of ERISA, 29 U.S.C. § 1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty. ERISA states, in relevant part, as follows:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

(2)    if, by his failure to comply with section 404(a)(l) in the

> administration of his specific responsibilities which give
> risk to his status as a fiduciary, he has enabled such other
> fiduciary to commit a breach; or
>
> (3)    if he has knowledge of a breach by such other fiduciary,
> unless he makes reasonable efforts under the circumstances
> to remedy the breach.

65.    Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2) authorizes a plan participant

to bring a civil action to enforce a breaching fiduciary's liability to the plan under Section 409,

29 U.S.C. § 1109. Section 409(a) of ERISA provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches
> any of the responsibilities, obligations, or duties imposed upon
> fiduciaries by this subchapter shall be personally liable to make
> good to such plan any losses to the plan resulting from each such
> breach, and to restore to such plan any profits of such fiduciary
> which have been made through use of assets of the plan by the
> fiduciary, and shall be subject to such other equitable or remedial
> relief as the court may deem appropriate, including removal of such
> fiduciary.

## VI.    <u>CLASS ALLEGATIONS</u>

66.    This action is brought as a class action by Plaintiffs on behalf of themselves and

the following proposed Class:

> All participants and beneficiaries in the Genworth Financial Inc. Retirement
> and Savings Plan at any time on or after July 29, 2016 and continuing to the
> date of judgment, or such earlier date that the Court determines is
> appropriate and just, including any beneficiary of a deceased person who
> was a participant in the Plan at any time during the Class Period.

Excluded from the Class are Defendant and the Judge to whom this case is assigned or any other

judicial officer having responsibility for this case who is a beneficiary.

67.    This action may be maintained as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure.

68.    **Numerosity**.  Plaintiffs are informed and believe that there are at least thousands of Class members throughout the United States.  As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

69.    **Commonality**.  There are numerous questions of fact and/or law that are common to Plaintiffs and all the members of the Class, including, but not limited to the following:

(a)    Whether Defendant failed and continue to fail to discharge its duties with respect to the Plan solely in the interest of the Plan's participants for the exclusive purpose of providing benefits to participants and their beneficiaries;

(b)    Whether Defendant breached its  fiduciary duties under ERISA by failing to defray the reasonable expenses of administering the Plan; and

(c)    Whether and what form of relief should be afforded to Plaintiffs and the Class.

70.    **Typicality**.  Plaintiffs, who are members of the Class, have claims that are typical of all the members of the Class.  Plaintiffs' claims and all the Class members' claims arise out of the same uniform course of conduct by Defendant and arise under the same legal theories that are applicable as to all other members of the Class.  In addition, Plaintiffs seek relief for the Plan under the same remedial theories that are applicable as to all other members of the Class.

71.    **Adequacy of Representation**.  Plaintiffs will fairly and adequately represent the interests of the members of the Class.  Plaintiffs have no conflicts of interest with other members of the Class or interests that are any different from the other members of the Class. Plaintiffs have retained competent counsel experienced in class action and other complex litigation, including class actions under ERISA.

72.    **Potential Risks and Effects of Separate Actions**.  The prosecution of separate

actions by or against individual Class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

73.    **Predominance**.  Common questions of law and fact predominate over questions affecting only individual Class members, and the Court, as well as the parties, will spend the vast majority of their time working to resolve these common issues.  Indeed, virtually the only individual issues of significance will be the exact amount of damages recovered by each Class member, the calculation of which will ultimately be a ministerial function and which does not bar Class certification.

74.    **Superiority**.  A class action is superior to all other feasible alternatives for the resolution of this matter.  The vast majority of, if not all, Class members are unaware of Defendant's breaches of fiduciary duty and prohibited transactions such that they will never bring suit individually.  Furthermore, even if they were aware of the claims they have against Defendant, the claims of virtually all Class members would be too small to economically justify individual litigation.  Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

75.    **Manageability**.  This case is well-suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced,

and proof of liability and damages can be presented on a Class-wide basis, while the allocation

and distribution of damages to Class members would be essentially a ministerial function.

76.     Defendant has acted on grounds generally applicable to the Class by uniformly

subjecting them to the breaches of fiduciary duty described above.  Accordingly, injunctive

relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or

restitution), along with corresponding declaratory relief, are appropriate with respect to the

Class as a whole.

77.     Plaintiffs' counsel will fairly and adequately represent the interests of the Class

and are best able to represent the interests of the Class under Rule 23(g) of the Federal Rules of

Civil Procedure.  Moreover, treating this case as a class action is superior to proceeding on an

individual basis and there will be no difficulty in managing this case as a class action.

78.     Therefore, this action should be certified as a class action under Rules 23(a) and

23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure.

## **COUNT I**
### **(For Breach of Fiduciary Duty)**

79.     Plaintiffs incorporate by reference the allegations in the previous paragraphs of

this Complaint as if fully set forth herein.

80.     Defendant's conduct, as set forth above, violates their fiduciary duties under

Sections 404(a)(1)(A), (B) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B) and (D), in that

Defendant failed and continue to fail to discharge their duties with respect to the Plan solely in

the interest of the Plan's participants and beneficiaries and (a) for the exclusive purpose of (i)

providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses

of administering the Plan with (b) the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

matters would use in the conduct of an enterprise of a like character and with like aims, and (c) by failing to act in accordance with the documents and instruments governing the Plan. In addition, as set forth above, Defendant violated its respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the performance of their duties.

81.      To the extent that Defendant did not directly commit any of the foregoing breaches of fiduciary duty, at the very minimum, Defendant is liable under 29 U.S.C. § 1105(a) because it was a co-fiduciary and knowingly participated in, or concealed, a breach by another fiduciary, enabled another fiduciary to commit breaches of fiduciary duty in the administration of his, her, their, or its specific responsibilities giving rise to his, her, their, or its fiduciary status, or knowingly failed to cure a breach of fiduciary duty by another fiduciary and failed to take reasonable efforts to remedy the breach.

82.      As a direct result of Defendant's breaches of duties, the Plan has suffered losses and damages.

83.      Pursuant to Sections 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132, Defendant is liable to restore to the Plan the losses that have been suffered as a direct result of Defendant's breaches of fiduciary duty and is liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs, and other recoverable expenses of litigation.

## <u>COUNT II</u>
### (Failure to Monitor Fiduciaries and Co-Fiduciary Breaches)

84.      Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

85.      Genworth is responsible for appointing, overseeing, and removing members of the Administrative Committee, who, in turn, are responsible for appointing, overseeing, and

removing members of the Committee.

86.    In light of its appointment and supervisory authority, Genworth had a fiduciary responsibility to monitor the performance of the Committee and its members.  In addition, Genworth and the Administrative Committee had a fiduciary responsibility to monitor the performance of the members of the Committee.

87.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

88.    To the extent that fiduciary monitoring responsibilities of Genworth or the Committee was delegated, each Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

89.    Genworth and the Committee breached their fiduciary monitoring duties by, among other things:

(a)   Failing to monitor and evaluate the performance of their appointees or have a system in place for doing so, standing idly by as the Plan suffered enormous losses as a result of the appointees' imprudent actions and  omissions with respect to the Plan;

(b)   Failing to monitor their appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein, in clear violation of ERISA; and

(c)   Failing to remove appointees whose performances were inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan, all to the detriment of the Plan and its participants'

retirement savings.

90.     As a consequence of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses.  Had Genworth and the Committee discharged their fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been minimized or avoided.  Therefore, as a direct result of the breaches of fiduciary duties alleged herein, the Plan and its participants have lost millions of dollars of retirement savings.

91.     Genworth is liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count, to restore to the Plan any profits made through use of Plan assets, and are subject to other equitable or remedial relief as appropriate.

92.     Defendant also knowingly participated in the breaches of the other fiduciaries, knowing that such acts constituted breaches; enabled the other fiduciaries to commit breaches by failing to lawfully discharge their own fiduciary duties; and knew of the breaches by the other fiduciaries and failed to make any reasonable effort under the circumstances to remedy the breaches.  Defendant, thus, is liable for the losses caused by the breaches of their co-fiduciaries under 29 U.S.C. § 1105(a).

## COUNT III
**(In the Alternative, Liability for Knowing Breach of Trust)**

93.     Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

94.     In the alternative, to the extent that any of the Defendants are not deemed a fiduciary or co-fiduciary under ERISA, each such Defendant should be enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a knowing breach of trust.

95.     To the extent any of the Defendants are not deemed to be fiduciaries and/or are not deemed to be acting as fiduciaries for any and all applicable purposes, any such Defendants are liable for the conduct at issue here, since all Defendants possessed the requisite knowledge and information to avoid the fiduciary breaches at issue here and knowingly participated in breaches of fiduciary duty by permitting the Plan to offer a menu of imprudent investment options, all of which was unjustifiable in light of the size and characteristics of the Plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the Class and the Plan, demand judgment against Defendants for the following relief:

(a)     Declaratory and injunctive relief pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, as detailed above;

(b)     Equitable, legal or remedial relief to return all losses to the Plan and/or for restitution and/or damages as set forth above, plus all other equitable or remedial relief as the Court may deem appropriate pursuant to Sections 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132;

(c)     Pre-judgment and post-judgment interest at the maximum permissible rates, whether at law or in equity;

(d)     Attorneys' fees, costs and other recoverable expenses of litigation; and

(e)     Such further and additional relief to which the Plan may be justly entitled and the Court deems appropriate and just under all of the circumstances.

## NOTICE PURSUANT TO ERISA § 502(h)

To ensure compliance with the requirements of Section 502(h) of ERISA, 29 U.S.C. § 1132(h), the undersigned hereby affirms that, on this date, a true and correct copy of this

Complaint was served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, return receipt requested.

DATED: January 20, 2023                    Respectfully submitted,

/s/ *Glenn E. Chappell*
Glenn E. Chappell (Bar No. 92153)
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: gchappell@tzlegal.com

James E. Miller
Laurie Rubinow
Miller Shah LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
        lrubinow@millershah.com

James C. Shah
Alec J. Berin
John C. Roberts
Miller Shah LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
        ajberin@millershah.com
        jcroberts@millershah.com

Kolin C. Tang
Miller Shah LLP
19712 MacArthur Blvd.
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

*Attorneys for Plaintiffs, the Plan
and the Proposed Class*