**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

PETER TRAUERNICHT,
et al.,

     Plaintiffs,

v.                                                    Civil Action No. 3:22cv532

GENWORTH FINANCIAL
INC., et al.,

     Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT'S PARTIAL MOTION
TO DISMISS UNDER RULE 12(b)(1) ("12(b)(1) Motion") (ECF No. 106)
and DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6) ("12(b)(6)
Motion") (ECF No. 104).

Having considered the 12(b)(1) Motion and the supporting,
opposing, and reply briefs (ECF Nos. 107, 117, and 121),
DEFENDANT'S PARTIAL MOTION TO DISMISS UNDER RULE 12(b)(1) (ECF No.
106) will be granted. Having considered the 12(b)(6) Motion, the
supporting, opposing, and reply briefs (ECF Nos. 130, 132, and
133),[1] and the supplemental authority,[2] DEFENDANT'S MOTION TO
DISMISS UNDER RULE 12(b)(6) (ECF No. 104) will be denied.

_____

[1] Those are amended briefs. The original briefs (ECF Nos. 105, 118,
and 120) were replaced and were not considered.

[2] The Defendant filed DEFENDANT'S MOTION FOR LEAVE TO SUBMIT
SUPPLEMENTAL AUTHORITY (ECF No. 134), and the Plaintiffs responded
(ECF No. 136). Both documents included legal arguments that were

#### BACKGROUND

Class Representatives Peter Trauernicht and Zachary Wright ("Class Representatives"), on behalf of themselves and all other similarly situated individuals (referred to collectively as "Plaintiffs"), bring suit against Genworth Financial, Inc. ("Genworth" or "Defendant"). The SECOND AMENDED CLASS ACTION COMPLAINT ("Second Amended Complaint" or "SAC") (ECF No. 103) alleges that Genworth breached its fiduciary duty under the Employee Retirement Income Security Act ("ERISA") by selecting, retaining, and ratifying the selection and retention of poorly-performing investments for participants of the Genworth Financial Inc. Retirement and Savings Plan ("Plan"), thereby causing the Plaintiffs and the Class substantial monetary loss. SAC ¶¶ 1, 6, 57.

## I. Factual Background

The Plan is a "participant-directed defined contribution plan" where participants have the opportunity to direct the investment of their contributions into various investment options offered by the Plan. SAC ¶ 18. The Plan includes options to invest in target date funds ("TDFs"), which are portfolios of underlying funds that gradually shift to become more conservative as the

_____

relevant for the 12(b)(6) Motion and are discussed below. Genworth also filed additional supplemental authority that the Court considered when deciding the 12(b)(6) Motion. ECF Nos. 125, 129, and 137.

assumed target date approaches. SAC ¶ 23. Genworth allegedly selected the BlackRock TDFs for the Plan due to their low fees and ignored "their ability to generate return, either on an actual or risk-adjusted basis." SAC ¶ 30. Additionally, the BlackRock TDFs were designated as the Plan's default, so approximately 51% of the Plan's assets were invested in those TDFs. SAC ¶¶ 32-33.

Plaintiffs allege that Genworth failed to scrutinize the performance of the BlackRock TDFs against any of the appropriate performance measures or the alternative investments to determine whether the expected performance of the BlackRock TDFs could justify continued retention of the TDFs in the Plan even though such measurement and comparative information was readily available. SAC ¶¶ 38, 48. And, according to the SAC, acting contrary to the Plan's Investment Policy Statement ("IPS"), the Administrative Committee (referred to as "the Committee") responsible for managing the Plan allegedly failed to take action, or even discuss the BlackRock TDF's poor performance during Committee meetings, after "at least three and a half years' worth of concerning and severely disappointing datapoints," including at least eight consecutive quarters of inadequate performance in comparison to alternative TDFs. SAC ¶¶ 50-51, 54-55, 58. The SAC goes on to allege that Genworth's failure to evaluate and select alternative TDFs breached the fiduciary duty it owed to Plan

3

participants to act prudently and solely in the interest of the participants. SAC ¶¶ 54, 64-67.

During the Class Period, the BlackRock TDFs significantly underperformed which caused participants to miss out on over $100 million in retirement savings growth that would have been achieved through investments in alternative TDFs. SAC ¶ 56.

The proposed Class is:

All participants and beneficiaries in the Genworth Financial Inc. Retirement and Savings Plan at any time on or after July 29, 2016 and continuing to the date of judgment, or such earlier date that the Court determines is appropriate and just, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

SAC ¶ 69. Plaintiffs bring two claims on behalf of that Class.

COUNT ONE is for Breach of Fiduciary Duty under §§ 404(a)(1)(A), (B), and (D) of ERISA, codified at 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D). SAC ¶¶ 82-91. Genworth allegedly "failed and continues to fail to discharge its duties with respect to the Plan" to act solely in the interests of the Plan's participants and beneficiaries by failing to act for the exclusive purpose of benefiting the participants, failing to act as "a prudent man acting in a like capacity and familiar[ity]" would, and failing to "adhere to its own fiduciary process, as set forth in its governing documents." SAC ¶ 84-85. Additionally, to the extent that Genworth did not directly breach its duties, COUNT ONE alleges that it is liable under 29 U.S.C. § 1105(a) as a co-

4

fiduciary which "knowingly failed to cure a breach of fiduciary duty by the Committee and failed to take reasonable efforts to remedy the breach." SAC ¶ 88. Plaintiffs request restoration of the Plan's losses and any other equitable or remedial relief, including prospective injunctive and declaratory relief, pursuant to ERISA §§ 409 and 502(a)(2), codified at 29 U.S.C. §§ 1109 and 1132. SAC ¶ 91. COUNT TWO alleges that Genworth failed to monitor the performance of the Committee and its members that were overseeing and managing the Plan. SAC ¶¶ 92-101. That failure is alleged to have resulted in a loss to Plan participants of more than $100 million.

## II. Procedural Background

Plaintiffs filed this class action on August 1, 2022. On October 17, 2022, Genworth filed an Answer (ECF No. 19) and a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) (ECF No. 17), which the Court denied without prejudice for failure to properly divide the issues. ECF No. 32. Accordingly, Genworth filed a Motion to Dismiss under Rule 12(b)(6) (ECF No. 38) and Motion to Dismiss under Rule (12(b)(1) (ECF No. 40) on October 27, 2022. Plaintiffs filed their responses on November 10, 2022, ECF Nos. 45 and 46, and Genworth filed its replies on November 16, 2022. ECF Nos. 49 and 50.

On January 19, 2023, Plaintiffs made an oral motion to the Court for leave to file an Amended Complaint, which the Court

5

granted. ECF No. 70. The AMENDED CLASS ACTION COMPLAINT ("First Amended Complaint" or "FAC")(ECF No. 73) was filed on January 20, 2023, and Genworth filed a renewed Motion to Dismiss pursuant to Rule 12(b)(6) (ECF No. 74) and Motion to Dismiss pursuant to Rule 12(b)(1) (ECF No. 80) on February 3, 2023. After the respective responses (ECF Nos. 84 and 85) and replies (ECF Nos. 87 and 88) were filed, the Court ordered supplemental briefing addressing the decisions in the related cases in the Alexandria Division of U.S. District Court for the Eastern District of Virginia.[3] ECF No. 89. Those supplemental briefs were filed on March 8 and 9, 2023, respectively. ECF Nos. 92 and 94.

The Court heard argument on the issues on March 15, 2023. ECF No. 100. The argument revealed that the claims asserted in the FAC could, and should, be structured in a manner that more accurately reflected the true nature of the claims, so the Court ordered that a Second Amended Complaint be filed and denied the two pending motions to dismiss as moot. ECF No. 102 at 101-02, 105.

The SAC was filed on April 17, 2023, and the 12(b)(6) Motion and the 12(b)(1) Motion were filed on May 15, 2023. ECF Nos. 103, 104, and 106. The Motions became ripe for review on June 12, 2023. However, on July 19, 2023, the Court ordered that replacement briefs be filed that did not incorporate previously filed documents

---

[3] Those cases are Tullgren v. Booz Allen Hamilton (No. 1:22-cv-856), and Hall v. Capital One Financial Corp. (1:22-cv-857).

or parts thereof. ECF No. 128. These briefs were filed on July 26,
August 1, and August 7,

2023, respectively. ECF Nos. 130-33. Discovery on the merits of
the claims was stayed pending resolution of the Motions at issue.
ECF No. 72.

## DISCUSSION

## I. 12(b)(1) Motion

Genworth argues that Plaintiffs' claims for prospective
relief should be dismissed with prejudice under Fed. R. Civ. P.
12(b)(1) because the Court lacks subject matter jurisdiction over
these claims for the reason that the Plaintiffs lack standing to
seek prospective injunctive relief, ECF No. 81 at 4, because they
are former participants in the Plan as alleged in the Second
Amended Complaint ¶¶ 9-10. ECF No. 107 at 4. In their "Prayer for
Relief," Plaintiffs seek "declaratory and injunctive relief
pursuant to Section 502 of ERISA, 29 U.S.C. § 1132." SAC at 57.

Although Genworth seeks dismissal under Rule 12(b)(1) "[i]f
Plaintiffs' Second Amended Complaint is not dismissed in its
entirety" pursuant to Rule 12(b)(6), ECF No. 107 at 4, the Court
will first resolve the issue of subject matter jurisdiction before
deciding whether the Plaintiffs have stated legally sufficient
claims because the Court must have subject matter jurisdiction
over a claim before assessing the merits of the claim. See Peters
v. Aetna Inc., 2 F.4th 199, 217 (4th Cir. 2021) ("Only if

7

[Plaintiff] has standing do we address her claims on the merits."). Accordingly, the 12(b)(1) Motion will be addressed first.

### a. Legal Standard

For a motion asserting lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a court will grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant is making a facial challenge to subject matter jurisdiction, which is the case here, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). "[T]he party asserting jurisdiction has the burden of proving subject matter jurisdiction." Balzer & Assoc. Inc. v. Union Bank & Trust, 3:09cv273, 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009).

Article III of the U.S. Constitution limits the judicial power to "Cases" and "Controversies" in which a court can "redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." Summers v. Earth Island Inst., 555 U.S. 488, 492 (2009). Thus, standing is a "necessary component of subject matter jurisdiction" because a court must be able to redress or prevent an injury when it resolves a case or

8

controversy. Fed. Trade Comm'n v. Ross, 74 F.4th 186, 191 (4th Cir. 2023).

There are three elements to satisfy the constitutional requirements for standing: (1) an injury in fact (2) that is fairly "traceable to the challenged action of the defendant" and (3) will likely "be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (quotations omitted). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering [an] 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (citing Friends of Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)). "[A] plaintiff seeking prospective injunctive relief may not rely on prior harm to establish Article III standing." Abbott v. Pastides, 900 F.3d 160, 176 (4th Cir. 2018) (quotations omitted). Rather, a plaintiff seeking prospective relief "must establish an ongoing or future injury in fact." Kenny v. Wilson,

885 F.3d 280, 287 (4th Cir. 2018). To meet the redressability facet of the standing test, a plaintiff need "only show that he personally would benefit in a tangible way from the court's

intervention." Disability Rights S.C. v. McMaster, 24 F.4th 893, 903 (4th Cir. 2022) (quotations omitted).

In ERISA cases, even when a plaintiff sues on behalf of an ERISA plan, each named plaintiff must establish individual standing. Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 608 (6th Cir. 2007). As for the "injury in fact" under ERISA, "Plaintiffs need not demonstrate individualized injury to proceed with their claims for injunctive relief under § 502(a)(3); they may allege only violation of the fiduciary duty owed to them as a participant in and beneficiary of their respective ERISA plans." Peters v. Aetna Inc., 2 F.4th 199, 220-21 (4th Cir. 2021) (quotations omitted).

b. Parties' Arguments

Genworth's 12(b)(1) Motion assumes that the Plaintiffs can meet the first two requirements for standing but argues that the Plaintiffs cannot show that their injuries are redressable by "prospective injunctive and declaratory relief." ECF No. 107 at 6-7 (quoting SAC ¶¶ 8, 91). That is so because Plaintiffs are former participants in the Plan, and thus would not benefit from any prospective relief. ECF No. 107 at 6-7. Further, Genworth contends that the Plaintiffs cannot rely on the Fourth Circuit's decision in Peters v. Aetna Inc., 2 F.4th 199 (4th Cir. 2021), to support their argument because the Fourth Circuit "expressed doubt that plaintiff, who was a former plan participant, could establish

10

constitutional standing" and remanded the case. ECF No. 107 at 7-8.

In response, Plaintiffs argue that they are bringing this suit "in a representative capacity on behalf of the plan as a whole" and that other courts have found that former participants had standing to seek injunctive relief for the class.[4] ECF No. 117 at 10-11 (quotations omitted). Plaintiffs contend that, although the Fourth Circuit has not decided this exact question, the Court of Appeals has suggested that it is influenced by the reasoning of other courts that have determined that former participants in a plan do have standing to seek prospective relief under ERISA. Id. at 11-12.

### c. Analysis

The ERISA claims here are indeed brought in a representative manner, but the Plaintiffs nonetheless must have Article III standing to proceed on behalf of the Plan participants. Peters v. Aetna Inc., 2 F.4th 199, 221 (4th Cir. 2021). It is clear from the SAC that Plaintiffs have suffered an injury-in-fact that is casually related to Genworth's conduct as the fiduciary of the Plan because a violation of the fiduciary duty can serve as the injury which can justify injunctive relief. Id. at 220-21. The

---

[4] In its reply (ECF No. 121), Genworth argues that the cases referred to by Plaintiffs do not support the contention that Plaintiffs have standing. ECF No. 121 at 8-10.

standing issue then comes down to whether Plaintiffs will benefit from the Court's decision to provide prospective relief if awarded, i.e., an issue of redressability.

The Plaintiffs discuss and cite multiple cases to support their argument that they both have standing sufficient to support the request for prospective injunctive relief. In Hay v. Gucci America, Inc., the court denied the defendants' motion to dismiss in part because, even though the plaintiff was a former participant in the plan at issue, the plaintiff was still a "participant" in the plan as defined by 29 U.S.C. § 1002(7) and thus had standing to bring an ERISA claim for prospective relief. No. 2:17-cv-07148, 2018 WL 4815558, at *4-5 (D.N.J. Oct. 3, 2018). Relying on a decision from the Ninth Circuit, the court in Hay further reasoned that 29 U.S.C. § 1132(a)(2) allows participants to sue for "appropriate relief" to include equitable remedies, so plaintiff had "'statutory standing to assert fiduciary duty claims [for prospective relief] under Section 502(a)(2).'" Id. at *5 (quoting Harris v. Amgen, Inc., 573 F.3d 728, 734-35 & n.4 (9th Cir. 2009)).

Based on Harris, the court came to the same conclusion in Cryer v. Franklin Templeton Resources, Inc. No. C 16-4265 CW, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017). In Harris, the Ninth Circuit held that a plaintiff who had previously withdrawn from the plan had standing under Article III to sue pursuant to § 1132 "to recover losses occasioned by a breach of fiduciary." 573 F.3d

12

at 736. The Ninth Circuit explained that the plaintiff, who had cashed out of the plan but was suing on behalf of the plan, could meet the redressability requirement because the recovery that goes to the plan could still benefit the individual. Id. at 735-36.

In Braden v. Wal-Mart Stores, Inc., the Eighth Circuit found that a plan participant had standing to bring ERISA claims even though the Plaintiff had not been a plan participant for the entirety of the class period. 588 F.3d 585, 593-94 (8th Cir. 2009). That was so because the plaintiff had a personal stake in the litigation and his recovery was dependent on the plan. Id. The Eighth Circuit further explained that there were two distinct questions at issue: first, whether there was constitutional standing which affected the plaintiff's ability to "pursue claims on behalf of the Plan at all;" and second, what relief can be awarded, which hinged on the statute rather than Article III. Id. at 592. Separately, relying on Amara v. CIGNA Corp., 775 F.3d 510 (2d Cir. 2014), the U.S. District Court for the Southern District of New York found that a class comprised of only former plan participants had standing to pursue injunctive relief. Laurent v. PricewaterhouseCoopers LLP, 565 F. Supp. 3d 543, 549-50 (S.D.N.Y. 2021). In Amara, the Second Circuit, although not directly commenting on standing, found that injunctive relief was appropriate even if some class members were former participants in the plan. 775 F.3d at 520, 524 & n.9.

13

Lastly, the Plaintiffs rely on Peters v. Aetna Inc., 2 F.4th 199, 221 (4th Cir. 2021), arguing that the Fourth Circuit "indicated that the reasoning [described above] . . . would compel a similar result in this Circuit." ECF No. 117 at 11. In Peters, the Fourth Circuit, in considering the injury-in-fact requirement for standing, held that the violation of the fiduciary duty owed to plan participants was a sufficient injury to have Article III standing for "declaratory, injunctive, and other equitable relief under ERISA." 2 F.4th at 220-21. However, in a footnote, the Peters court raised the question whether the plaintiff could seek prospective injunctive relief as a former participant in the plan but left the question to the district court as neither party raised the issue on appeal. Id. at 221 n.11.

In response, Genworth points the Court to Beldock v. Microsoft Corp. where the court found that the former plan participant plaintiffs did not have standing to sue for injunctive relief because none of the plaintiffs were "likely to become reemployed by Microsoft and to participate again in the Plan." No. C22-1082JLR, 2023 WL 1798171, at *5 (W.D. Wash. Feb. 7, 2023). The court in Bedlock rejected the reasoning from the cases on which Plaintiffs rely (with the exception of Peters), explaining that the cases concerned statutory, rather than constitutional, standing or did not discuss the issue of standing at all. Id. Additionally, the court in Bedlock was influenced by the holding

in Thole v. U.S. Bank N.A., 140 S. Ct. 1615, 1622 (2020). Bedlock, No. C22-1082JLR, at *5. Similarly, in Garthwait v. Eversource Energy Co., the court determined that the plaintiffs lacked standing to seek prospective injunctive relief when none of the participants were still enrolled in the plan. No. 3:20-cv-902, 2022 WL 1657469, at *5-*6 (D. Conn. May 25, 2022). Citing the Supreme Court's holding in Thole, the Garthwait court was similarly unconvinced by the cases cited by Plaintiffs in the briefing. Id.

In Peters, the Fourth Circuit did not decide whether former plan participants lacked standing to seek prospective relief, but, on remand, the district court found that the plaintiff lacked standing to seek prospective injunctive relief because the risk of future harm was "far too speculative and nebulous." Case No. 1:15-cv-109, 2023 WL 3829407, at *7 (W.D.N.C. June 5, 2023). Thereupon, the district court dismissed the claim for prospective relief. Id.

The Supreme Court's decision in Thole v. U.S. Bank N.A. reinforced the idea that plaintiffs asserting an ERISA claim must meet all of the requirements for constitutional standing, including that their claims are redressable. 140 S. Ct. 1615, 1622 (2020). In neither the SAC nor the briefs have the Plaintiffs shown how they would benefit from any prospective relief because they no longer invest in the BlackRock TDFs, so any changes to the process in the future would not affect them, making their claim for prospective injunctive relief non-redressable.

15

For the foregoing reasons, DEFENDANT'S PARTIAL MOTION TO DISMISS UNDER RULE 12(b)(1) (ECF No. 106) will be granted and the claim for prospective injunctive relief will be dismissed with prejudice.

## II. 12(b)(6) Motion

Genworth moves to dismiss COUNTS ONE and TWO of the Second Amended Complaint for failure to state claims upon which relief can be granted. For the reasons stated below, DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6) (ECF No. 104) will be denied.

### a. Legal Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff need not provide "detailed factual allegations," Twombly, 550 U.S. at 555, but must provide enough factual context so the court can draw reasonable inferences that there is "more than a sheer possibility that the defendant acted unlawfully." Iqbal, 556 U.S. at 678. Legal conclusions, a bare recitation of the elements of a claim, and "naked assertions devoid of further factual enhancement" are insufficient. Id. (quoting Twombly, 550 U.S. at 555, 557). Factual allegations—but not legal conclusions—are accepted as true for the purpose of evaluating the Motion. Twombly, 550 U.S. at 555. For

16

ERISA claims specifically, "[b]ecause the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific," but, even then the pleading standards of Twombly and Iqbal apply to ERISA claims. Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425-26 (2014) (cleaned up).

When evaluating a Rule 12(b)(6) motion, the court may only rely on "the complaint in its entirety" and "documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). A document is incorporated into the complaint when "it is integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A court may also take judicial notice of matters of public record and "adjudicative facts" pursuant to Federal Rule of Evidence 201(b) when considering a Rule 12(b)(6) motion. Goldfarb v. Mayor & City Council of Balt., 791 F.3d 500, 508 (4th Cir. 2015). The Fourth Circuit held that "SEC filings, press releases, stock price tables, and other material on which the plaintiff's allegations necessarily rely" can be considered when ruling on a Rule 12(b)(6) motion. Greenhouse v. MCG Cap. Corp., 392 F.3d 650, 657 (4th Cir. 2004). However, judicial notice should not "be used as an expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of

17

litigants to present evidence on disputed matters." Waugh Chapel
S., LLC v. United Food & Com. Workers Union Loc., 728 F.3d 354,
360 (4th Cir. 2013) (quotations omitted). If the court does take
judicial notice of a document, the facts within that document must
be construed in the light most favorable to the plaintiff. Zak v.
Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607 (4th Cir.
2015). If a court chooses to go beyond these documents, the Rule
12(b)(6) motion converts into one for summary judgement, which is
governed by Rule 56. Fed. R. Civ. P. 12(d).

### b. Parties' Arguments

#### 1. Genworth's Arguments

Genworth begins by arguing that, in COUNT ONE, Plaintiffs
have failed to state a claim for breach of its fiduciary duty of
prudence for two primary reasons. First, Genworth asserts that
Plaintiffs have not plausibly alleged that Genworth failed to
monitor the Plan's investments because the SAC and certain
documents mentioned in it show that Genworth did indeed monitor
the investments. ECF No. 130 at 18-19. In particular, Genworth
claims that it monitored the investments because:  (1) it sought
and received outside financial and legal expertise to inform the
monitoring process; (2) the Committee regularly met and even
exceeded the IPS requirement of meeting annually; and (3) it
received regular updates on the investments' performance as

18

evidenced by the presentations made to the Committee. Id. at 19-23.

As for the assertion that the Committee did not review or discuss the BlackRock TDFs because it is not reflected in the meeting minutes, Genworth contends that it was not required (nor was it plausible) to review those investments during every single meeting and that the minutes do not necessarily detail every discussion that occurred during each meeting. Id. at 21-23. Further, Genworth asserts that the minutes reveal the discussion of other non-BlackRock investments that it placed on a watch list or removed, which shows it was engaged in a monitoring process. Id. at 23-25. Lastly, on this point, Genworth argues that any suggestion that it did not monitor the BlackRock TDFs because it did not consider the performance of the Comparator TDFs identified in the SAC is unmeritorious because the Comparator TDFs are not meaningful benchmarks. Id. at 25-26.

Second, Genworth argues that, even if the Court were to conclude that the SAC plausibly alleges a failure to monitor, the Plaintiffs' claim for breach of duty fails nonetheless because they have not pled that the failure to monitor caused the losses. ECF No. 130 at 26. This is so, Genworth contends, because the Plaintiffs "offer no well-pled allegations that a prudent fiduciary, in Genworth's position, would have removed the BlackRock TDFs from the Plan" and offer no examples of a similarly

19

situated fiduciary who did so. Id. at 27-28. Further, Genworth asserts that the IPS does not require it to drop poorly performing investments. Id. at 28. Rather, "the decision to remove or replace [the investments] is left to the discretion and expertise of the Committee." Id.

Additionally, Genworth argues that the Plaintiffs have failed to allege "significant underperformance" or how they calculated their losses, so there is no method for the Court to find loss causation. Id. at 29-30. And, lastly, Genworth argues that the Plaintiffs have made no allegations that there were external warning signs to alert a prudent fiduciary that the BlackRock TDFs should be removed from the Plan or that a prudent fiduciary would just remove investments from the Plan because they were performing poorly in a limited period of time, meaning that they have failed to show Genworth's actions caused the loss. Id. at 30-33.

As for COUNT TWO, Genworth argues that the claim should be dismissed for two reasons. ECF No. 130 at 33-34. First, Genworth maintains that this claim is derivative of COUNT ONE, so this claim must fail because COUNT ONE fails for the reasons stated above. Id. at 34. Second, Genworth contends that the Plaintiffs have failed to plead any facts that show: (1) how Genworth monitored the Committee; and (2) how that process was deficient. Id. Thus, there can be no claim against Genworth for failure to monitor the Committee. Id.

20

### 2. Plaintiffs' Response

In response, Plaintiffs generally contend that Genworth's arguments are factual disputes that are not appropriate for resolution at this stage of the proceedings. ECF No. 132 at 21. That is, indeed, the Plaintiffs' response to Genworth's assertions that there was a monitoring process; that it is permissible to infer that the process was effective; that Genworth consulted financial and legal advisors; and that the asserted lack of meeting notes discussing the BlackRock TDFs is not important. Id. at 22-25.

As for the Comparator TDFs, Plaintiffs argue that they are consistent with the Plan's own IPS and that no two TDFs are exactly the same, so there will inevitably be some differences and that that is a necessary reality when attempting to compare funds. Id. at 26-28. Further on this point, Plaintiffs explain that they chose the Comparator TDFs because they represent "the most likely funds that a prudent fiduciary would have considered in weighing the performance of the BlackRock TDFs," so it is a sound basis for comparison. Id. at 28.

In response to the loss-causation argument, Plaintiffs contend that it is reasonable to infer from the SAC that the lack of sufficient monitoring caused the Plaintiffs' loss and, quoting the Seventh Circuit, "[w]here alternative inferences are in equipoise . . . the plaintiff is to prevail on a motion to dismiss."

ECF No. 132 at 29-30 (quoting Hughes v. Nw. Univ., 63 F.4th 615, 629 (7th Cir. 2023)). Plaintiffs also argue that they have sufficiently pled "significant loss" to support their claim because the SAC "set[s] forth the facts and circumstances . . . which would have alerted a prudent fiduciary to act upon the serious performance issues with the BlackRock TDFs." Id. at 31-32. Plaintiffs explain that their asserted loss "represents missed capital appreciation as a result of Defendant's failure to prudently replace the BlackRock TDFs during the class period" and that the SAC contains extensive detail explaining the mathematical calculation behind the asserted losses. Id. at 33.

Lastly, as for whether they were required to show that other prudent fiduciaries dropped the BlackRock TDFs, Plaintiffs turn to the IPS and claim that it did not require the Committee to take note of what other retirement plans were doing and that, at this point in the proceedings, it need only plausibly allege a breach of duty of prudence. Id. at 34-36. Additionally, Plaintiffs discount the Morningstar ratings that Genworth relies on, arguing that it is not representative of the market's views of the funds. Id. at 34.

As for COUNT TWO, Plaintiffs first argue that the claim is not derivative of COUNT ONE based on the analysis in Gordon v. CIGNA Corp., 890 F.3d 463 (4th 2018). ECF No. 132 at 37. Second, Plaintiffs contend that the SAC "sets forth the roles and

22

relationships of the parties acting on behalf of Genworth, the duties of each party, and underlying breaching conduct," which allows the Court to infer that Genworth knew or should have known about the malfeasance. Id.

c. Analysis

Before assessing the merits of Genworth's 12(b)(6) Motion, it is necessary to determine whether the Court can consider certain documents that Genworth relies on to support that Motion.

1.      Documents Attached to Genworth's 12(b)(6) Motion

Genworth attached four additional documents[5] to its 12(b)(6) Motion which it says the Court may consider because they are either publicly available information or integral to the SAC. ECF No. 130 at 11 n.1, 12 n.2, 13 n.3, and 14 n.4. Plaintiffs have not challenged the inclusion of these documents, but the Court must nonetheless decide whether they can be considered without converting the Motion to one for summary judgment.

Exhibit A (ECF No. 130-1) (SEALED) is the Plan's IPS that governs how investments will be selected and assists the Plan's Committee in making decisions. ECF No. 130-1 at 3. The SAC specifically identifies the IPS and discusses its selection and

---

[5] Genworth also attached a Declaration from Victor Skakandy, a Senior Retirement Plans Manager at Genworth, that authenticates Exhibits A-C. ECF No. 131-1. Because Genworth does not rely on this document in its arguments, it has not been considered and is not discussed in this Memorandum Opinion.

monitoring criteria. SAC ¶¶ 36-37, 40, 46 n.11. Accordingly, Exhibit A appears integral to the SAC and can be properly considered with the 12(b)(6) Motion with all inferences going in favor of the Plaintiffs.

Exhibit B (ECF No. 130-2) (SEALED) is the minutes from the Committee meeting on September 13, 2017 regarding the Plan. The minutes provide a detailed summary of the individuals present, what topics were discussed, and the "takeaways" from various topics. The SAC alleges that the September 2017 minutes do not mention "the performance of the BlackRock TDFs." SAC ¶ 53. Notwithstanding that the SAC specifically mentions other minutes, Genworth provides only the minutes from the September 13, 2017 meeting. Because the SAC mentions meetings in consecutive quarters, but Genworth only provided selected minutes that it thinks support its 12(b)(6) Motion but does not provide the others referred to in the SAC, the September 13, 2017 minutes will not be considered because they are not integral to the SAC.

Exhibit C (ECF No. 130-3) (SEALED) is an investment review presentation from the second quarter of 2017 produced by Alight Solutions (referred to as "the Review"). The Review is mentioned in the minutes from the September 13, 2017 Committee Meeting (ECF No. 130-2 at 2), but it is not mentioned in the SAC. Genworth argues that it can be considered at this stage of the case because "the Review is incorporated into the minutes [that] Plaintiffs

24

rely on." ECF No. 130 at 13 n.3. That connection is too attenuated to consider the document integral to the SAC, so it will not be considered when deciding the 12(b)(6) Motion.

Exhibit D (ECF No. 131-5) is the Morningstar 2022 Target-Date Strategy Landscape Report (referred to as "the 2022 Morningstar Report") concerning the performance of the BlackRock TDFs as well as other TDFs. The SAC does explicitly cite the 2022 Morningstar Report. SAC ¶ 25 & n.4. Likewise, the SAC refers to Morningstar to explain the S&P Target Date Indices and to identify the BlackRock TDFs' "peer group." SAC ¶¶ 35, 52. While the Memorandum in Support of the 12(b)(6) Motion to Dismiss uses the 2022 Morningstar report to support the same types of propositions, ECF No. 130 at 14 & n.4, it also uses the Report for other factual assertions, such as how much revenue the BlackRock TDFs gained in a year and the rating of the BlackRock TDFs. Id. at 14-15, 30-31. Because Genworth is using the Report beyond its limited use in the SAC, the Report is not integral to the SAC and will not be considered when deciding the 12(b)(6) Motion.

## 2. The Legal Sufficiency of Breach of Duty of Prudence (COUNT ONE)

Under ERISA, a fiduciary is required "to act 'with the care, skill, prudence, and diligence under the circumstances then

25

prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" <u>Tatum v. RJR Pension Inv. Comm.</u>, 761 F.3d 346, 356 (4th Cir. 2014) (quoting 29 U.S.C. § 1104(a)(1)(B)). The fiduciary must also act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" the statute. § 1104(a)(1)(D). Whether this duty was breached comes down to "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." <u>Tatum</u>, 761 F.3d at 356 (quotations omitted); <u>see also DiFelice v. U.S. Airways, Inc.</u>, 497 F.3d 410, 420 (4th Cir. 2007) (describing the inquiry as "whether the fiduciary engaged in a reasoned decision[-]making process, consistent with that of a prudent man acting in [a] like capacity" (quotations omitted)). Once a loss is established, the next inquiry is "whether the fiduciary's imprudent conduct caused the loss," or in other words, whether "a hypothetical prudent fiduciary would have made the same decision anyway." <u>Tatum</u>, 761 F.3d at 357 (quotations omitted).

Genworth makes two broad arguments for why COUNT ONE should be dismissed: (1) there was a sufficient monitoring process in place and (2) the SAC fails to adequately plead loss causation. Each is addressed in turn:

##     A.    Failure to Monitor

As for the first argument, the SAC alleges that the Committee failed to monitor the BlackRock TDFs and, more generally, the Plan in the following ways: (1) the Committee failed to scrutinize the BlackRock TDFs' performance against appropriate alternatives (SAC ¶¶ 38, 58); (2) the Committee never discussed the BlackRock TDFs' performance during its meetings (SAC ¶¶ 49, 62); and (3) the Committee did not meet at the end of each quarter to discuss the Plan's performance (SAC ¶ 52). The SAC also alleges that this failure to monitor was in direct contravention of the IPS. See, e.g., SAC ¶¶ 50, 54.

Genworth's view that the SAC is insufficient is based entirely on arguments and documents that, according to Genworth, show that it did, in fact, adequately monitor the BlackRock TDFs in the following ways: (1) it sought outside financial and legal expertise (ECF No. 130 at 19-20); (2) the Committee met regularly on intervals consistent with the IPS (id. at 20-21); (3) the Committee monitored and received regular updates on the investments (id. at 21-25); and (4) the Comparator TDFs are not "meaningful benchmarks," so the Committee did not need to engage in performance comparisons as a part of its monitoring process (id. at 25-26). The Plaintiffs contend that each of these arguments are factual disputes that cannot be resolved at the motion to dismiss phase. ECF No. 132 at 21-25. And, on that argument, the Plaintiffs are

27

right. Each of those points can be considered as the case progresses, but they do not bear on the legal sufficiency of the SAC. Nonetheless, we will examine each in turn.

First, as Genworth recognizes in its brief, seeking outside advisors is "not dispositive" of an adequate monitoring process, but it is evidence bearing on the adequacy of the process. And, although that evidence may weigh in Genworth's favor, it alone does not establish that there was not a deficiency in the monitoring process.

Additionally, Genworth supports its claim that it received outside advice from the September 13 meeting minutes but, as found above, that document is not properly considered at this stage of the proceedings. Rather, the SAC only mentions in passing that the Committee received advice from Alight, and there is no mention of legal advice, so those facts are not appropriately considered at this stage. SAC ¶ 48 n.14. Accordingly, this argument does not permit a finding that COUNT ONE is legally insufficient.

Second, Genworth contends that, in fact, the Committee did meet regularly. ECF No. 130 at 20-21. However, the SAC alleges that the Committee failed to meet after each quarter, which prevented it from adequately monitoring the BlackRock TDFs. SAC ¶¶ 49-53. The IPS only provides that the Committee meet "not less than annually," but it also requires that the Committee "review, on a timely basis, . . . each fund's investment results." ECF No.

130-1 at 4 (SEALED). Taking all of this information together, it is still reasonable to infer that, even if the Committee was meeting as provided by the IPS, that was not sufficient to adequately monitor the BlackRock TDFs' performance. Accordingly, this argument does not permit granting Genworth's motion to dismiss COUNT ONE.

Third, Genworth asks the Court to infer from the September 13, 2017 meeting minutes and the Investment Review that the Committee, in fact, did regularly monitor and review the performance of the BlackRock TDFs. ECF No. 130 at 21-23. First, as stated above, those documents are not integral to the SAC and are not to be considered at this stage of the litigation. However, even if the documents were to be considered, Genworth is asking the Court to draw an inference in its favor, which is inappropriate on a motion to dismiss. Edwards v. CSX Trans., Inc., 983 F.3d 112, 117 (4th Cir. 2020) ("[D]rawing all reasonable inferences in Plaintiffs' favor" on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)). Rather, it is reasonable to infer that, because the minutes do not reflect that the Committee reviewed the performance of the BlackRock TDFs, the Committee failed to do so, which is a plausible allegation that Genworth breached its duty to monitor.

Moreover, all three of the foregoing arguments are assertions of fact that are intended to show that contrary allegations in the SAC are wrong. That, of course, is not a permissible method for

deciding a motion under Rule 12(b)(6), so all of those arguments fail for the single reason that they have no place in the exercise in which the parties and the Court now are engaged.

Fourth, Genworth adopts the reasoning from Tullgren v. Booz Allen Hamilton, No. 1:22-cv-856, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023), and Hall v. Capital One Financial Corp., No. 1:22-cv-857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023) (two cases decided in the Alexandria division of this Court), to argue that the Plaintiffs have not plausibly alleged that the Comparator TDFs are meaningful benchmarks with the attendant consequence that Plaintiffs cannot argue that the monitoring process was deficient based on the Committee's failure to measure the performance of the BlackRock TDFs against the Comparator TDFs. ECF No. 130 at 25-26. A more direct comparison of the SAC in this case and the allegations in Tullgren/Hall is presented in more detail below, but it is beyond serious doubt that the SAC in this case sufficiently alleges why the Comparator TDFs were selected and why BlackRock TDFs' performance can be judged against these other TDFs. SAC ¶¶ 40-42. Thus, because the SAC does plausibly allege that the Comparator TDFs are meaningful benchmarks, the Plaintiffs' argument that there was a deficient monitoring process because the Committee failed to draw these comparisons is a plausible one in this case.

Accordingly, because the SAC contains specific factual allegations that plausibly describe why the Committee failed to

adequately monitor the BlackRock TDFs and does not rely solely on underperformance to assert this claim, Genworth's argument on the point based on Tullgren and Hall fails.

### B. Loss Causation

To recover for a claim for breach of fiduciary duty under ERISA, the plaintiff must allege a loss "to the plan resulting from each such breach." Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 361 (4th Cir. 2014) (quoting 29 U.S.C. § 1109(a)) (emphasis in original). A loss results from a fiduciary breach when "but for the breach, the Plan's assets would have been greater." DiFelice v. U.S. Airways, Inc., 235 F.R.D. 70, 83 (E.D. Va. 2006). As applied to ERISA, once a beneficiary proves breach of trust and a related loss, the burden of proof shifts to the fiduciary on loss causation. Tatum, 761 F.3d at 362-63.

As to loss causation, the SAC alleges that "a fiduciary following a prudent process" and who would have reviewed the performance data presented in the SAC would have "investigate[d] alternatives and ultimately replace[d] the BlackRock TDFs." SAC ¶ 48. The SAC further alleges that, as was dictated by the IPS, the continued underperformance of the BlackRock TDFs would have alerted a prudent fiduciary to review the retention of the funds. SAC ¶¶ 52, 54. However, because the Committee breached its monitoring duties and had a faulty process, it failed to review

31

the performance of the BlackRock TDFs and replace them, which caused over \$100 million in losses. SAC ¶¶ 57-58, 63.

Genworth presents four arguments for why these allegations do not plausibly allege the loss causation element. First, Genworth argues that the IPS does not require the Committee to drop the BlackRock TDFs when underperformance is observed. ECF No. 130 at 28. It is true that the IPS dictates that certain events "that the Committee will examine closely when reviewing its investment managers . . . could lead to the removal or replacement of an existing fund." ECF No. 130-1 at 7 (emphasis added). This does not defeat Plaintiffs' claim, however, because the SAC alleges that the Committee's failure to monitor and compare the investments caused the loss since a prudent fiduciary following the process proscribed by the IPS would have decided to drop the funds because they were performing poorly, not because the IPS required it to. Accordingly, this argument does not defeat the SAC's allegations of loss causation.

Second, Genworth contends that the SAC does not adequately allege "significant underperformance." ECF No. 130 at 29-30. While "significant" can often be used as a legal term, the SAC uses "significant" as a factual modifier, alleging that "[t]he BlackRock TDFs are significantly worse performing . . . than most of the mutual fund alternatives offered by TDF providers, as well as the broader TDF marketplace." SAC ¶ 28. Iqbal and Twombly

32

necessitate that the factual allegations be regarded as true. Plaintiffs allege losses over $100 million, which is not an insignificant amount of money. Accordingly, this argument lacks merit. And, it certainly does not support dismissal of COUNT ONE.

Third, Genworth argues that "Plaintiffs do not allege any external 'warning signs' that a prudent fiduciary would have seen to indicate the BlackRock TDFs should be removed from the Plan." ECF No. 130 at 30-32. That, simply put, is a misstatement because the SAC specifically states that the "trend[s] of underperformance . . . should have raised alarm bells for prudent fiduciaries." SAC ¶ 53. Relatedly, Genworth argues that the Plaintiffs failed to show any other fiduciary or a market-wide trend of dropping the BlackRock TDFs, ECF No. 130 at 30-31, but that argument fails for two reasons: (i) it relies on outside documents that are not integral to the SAC; and (ii) it is based on a higher pleading standard than is required at this stage of litigation.

Fourth, Genworth contends that, under ERISA, a prudent fiduciary is not required to "dump an investment option just because it was not the best performing fund at the time." ECF No. 130 at 32. However, that is not what the SAC alleges. The SAC states that the BlackRock TDFs failed to generate favorable returns for eight consecutive three-year and five-year periods. SAC ¶ 54. That is an allegation of sustained underperformance rather than

33

one single time frame of poor performance. Thus, this argument
lacks merit.

Accordingly, because the SAC alleges facts that show that the
breach caused the loss because a prudent fiduciary properly
monitoring the performance of the BlackRock TDFs would have
replaced the funds, this ground for dismissing COUNT ONE is
rejected.

### C.    Tullgren and Hall

In the related case Tullgren v. Booz Allen Hamilton (No. 1:22-
cv-856),[6] the court found that the amended complaint there failed
to state a claim for breach of fiduciary duty because it was
"completely devoid of facts about the particular decision-making
process undertaken by" the defendants. ECF No. 49 at 8 in 1:22-
cv-856.[7] Rather, the claim "relie[d] solely on the performance of
the BlackRock TDFs," and the court declined to infer a fiduciary
breach without additional factual matter. Id. at 9. Here, while
the SAC provides ample detail on the underperformance of the
BlackRock TDFs and how the underperformance would have signaled
the need for a change to a prudent fiduciary, the SAC also bases

_____

[6] This Memorandum Opinion discusses Tullgren in this section, but
the court applied the same reasoning to dismiss the amended
complaint in Hall v. Capital One Financial Corp. (1:22-cv-857), so
the case names could be used interchangeably.

[7] Genworth makes a similar argument in support of its 12(b)(6)
Motion. ECF No. 130 at 25-26.

COUNT ONE on Genworth's failure to monitor and alleges that Genworth failed to follow its internal documents (mainly the IPS) when it initially chose to retain the BlackRock TDFs even though they failed when measured against the criteria listed in the IPS. See e.g., SAC ¶ 37. The SAC in this case is thus not the same as in Tullgren.

In Tullgren, the court also dismissed the breach of fiduciary claim for the "additional and independent reason that Plaintiff has not pled meaningful benchmarks against which this Court can assess his allegations." ECF No. 49 at 12 in 1:22-cv-856. Tullgren reasoned that the amended complaint in that case lacked "factual allegations demonstrating that the Comparator TDFs [were] meaningful comparators to the BlackRock TDFs," including whether the Comparator TDFs used "through" or "to" glidepaths, whether they were actively or passively managed, and the allocation of the funds. Id. at 13.

Genworth makes a similar argument in support of its 12(b)(6) Motion in this case, arguing that the Comparator TDFs do not have similar investment strategies, asset allocations, or risk profiles as the BlackRock TDFs. ECF No. 130 at 25-26. Genworth makes this argument relying primarily on Matousek v. MidAmerican Energy Co. where the Eighth Circuit explained that, to be a sound

or meaningful benchmark, peer-group funds should "hold similar securities, have similar investment strategies, and reflect a similar risk profile." 51 F.4th 274, 281 (8th Cir. 2022).

The SAC explains that the four Comparator TDFs were selected because "they represent the most likely alternatives to be selected were the BlackRock TDFs to be replaced" based on Genworth's own criteria described in the IPS. SAC ¶¶ 40-42. The IPS requires that "a candidate fund have sufficient assets under management such that the Plan assets would not represent a disproportionately large share of the fund's assets," which is why the Comparator TDFs only include the TDF series that were viable alternatives. SAC ¶ 40; ECF No. 130-1 at 6 (SEALED). It is true that the SAC does not provide a detailed explanation on the differences between the BlackRock TDFs and the Comparator TDFs, including the allocation of the funds, how each is managed, and the risk in each. However, the SAC does state that certain "BlackRock TDFs are considerably more aggressive than the Comparator TDFs." SAC ¶ 45. Any greater level of detail is unnecessary at the motion to dismiss stage where Iqbal and Twombly require only enough factual context so the court can draw reasonable inferences that there is "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiffs need not provide "detailed factual allegations" to plausibly assert a claim under Rule 12(b)(6), and, because Plaintiffs do explain why the

36

Comparator TDFs were selected, the SAC here does offer meaningful comparisons in this case. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Tullgren also criticizes the use of the S&P Index and the Sharpe ratios as performance metrics because the two are not actual funds. ECF No. 49 at 13-14 in 1:22-cv-856. Genworth likewise raises the same issue concerning the S&P Index, arguing that the use of the S&P Indices does not show significant underperformance but rather shows that Genworth was adhering to a sound evaluative process. ECF No. 130 at 29, 33.[8]

This argument ignores the fact that Genworth's own IPS provides the S&P Target Date Index as a benchmark to measure the performance of the BlackRock TDFs. There is, therefore, nothing implausible or defective about the SAC when it relies on the same data for one of its comparisons. SAC ¶ 46; ECF No. 130-1 at 12 (SEALED). Although Genworth does not challenge their use, the SAC describes the Sharpe ratio as a "commonly prescribed . . . component of a fiduciary investment monitoring process" that "accounts for differing levels of risk by measuring the performance of an investment" to similar investments. SAC ¶ 47. The SAC then relies on the Sharpe ratio to show underperformance during the class period. Accordingly, it appears as though the Sharpe ratios

---

[8] Genworth does not challenge the use of the Sharpe ratios in this latest iteration of briefing.

were used as a method to standardize the risk levels between the Comparator TDFs and the BlackRock TDFs for a more meaningful comparison. This is a dispute that is appropriate to be addressed later in the proceedings, potentially with the aid of expert testimony. In any event, the SAC's allegations respecting the Sharpe ratios are to be taken as true, and they are plausible.

Recently, Genworth moved to supply supplemental authority (ECF No. 134) to which Plaintiffs have responded (ECF No. 136). This was in addition to two previous motions for leave to file supplemental authority that the Court had already granted. The simple fact is that the SAC in this case is materially different than the pleadings as discussed in the newly offered authorities. And, in all of those cases, leave to file an amended complaint was granted. See ECF Nos. 125-1, 129-1, 137-1, and 137-2. Thus, the new decisions do not change the result here: COUNT ONE is well-pled under Twombly and Iqbal.

3. Failure to Monitor the Committee (COUNT TWO)

COUNT TWO asserts a claim for failure to monitor the Committee and its members. SAC ¶¶ 92-101. Under 29 U.S.C. § 1105(a), "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan" if he enables the other fiduciary to commit a breach. 29 U.S.C. § 1105(a)(2). Thus, COUNT TWO does, as Genworth contends, appear to be dependent on a finding that the Committee breached

its fiduciary duties from COUNT ONE, so the two claims do rise and fall together in this manner.[9]

Genworth also claims that Plaintiffs failed to plead specific facts concerning the monitoring process that would allow the claim to proceed. ECF No. 130 at 34. Plaintiffs say that the SAC "sets forth the roles and relationships of the parties acting on behalf of Genworth, the duties of each party, and underlying breaching conduct." ECF No. 132 at 37.

29 C.F.R. § 2509 .75-8, FR-17 provides that:

At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan. No single procedure will be appropriate in all cases; the procedure adopted may vary in accordance with the nature of the plan and other facts and circumstances relevant to the choice of the procedure.

The SAC describes that the Board of Genworth was responsible for appointing the Committee to serve as fiduciaries of the Plan. SAC ¶¶ 11-13. The SAC then goes on to state that Genworth failed to monitor the Committee by failing to have an appropriate monitoring system in place, failing to oversee the processes, and failing to remove inadequate appointees. SAC ¶ 97. Although more detailed information is lacking, those allegations are far more than legal

---

[9] Genworth makes this same argument in support of its 12(b)(6) Motion. ECF No. 130 at 33-34.

conclusions (as Genworth would have it). They are allegations of fact. See In re Sears, Roebuck & co. ERISA Litig., No. 02 C 8324, 2004 WL 407007, at *8 (N.D. Ill. March 3, 2004) (finding that whether the defendants properly monitored the investment committee was a question of fact and allowed the claim for failure to monitor to proceed). And, if proved, they would permit a reasonable jury to find for Plaintiffs on COUNT TWO. In sum, COUNT TWO measures up to the requirements of Twombly and Iqbal. Therefore, COUNT TWO will go forward.

CONCLUSION

For the foregoing reasons, DEFENDANT'S PARTIAL MOTION TO DISMISS UNDER RULE 12(b)(1) (ECF No. 106) will be granted and DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6) (ECF No. 104) will be denied.

It is so ORDERED.

/s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September _12_, 2023