**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| PETER TRAUERNICHT, *et al.*, | Case No: 3:22-CV-00532 |
| Plaintiffs, | |
| v. | |
| GENWORTH FINANCIAL, INC., | Date: October 16, 2023 |
| Defendant. | |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

---

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 3

    A.  The Plan and the Parties............................................................................ 3

    B.  Plaintiffs' Claims ...................................................................................... 4

    C.  The Plan's Losses ..................................................................................... 5

    D.  The Proposed Class ................................................................................... 6

III.  LEGAL STANDARD ............................................................................................. 6

IV.  ARGUMENT ........................................................................................................... 7

    A.  The Proposed Class is Readily Ascertainable........................................... 7

    B.  Plaintiffs' Claims and the Proposed Class are Certifiable Under
        Rule 23(a)................................................................................................. 8

        1.  The Class is sufficiently numerous ............................................... 8

        2.  Common questions of law and fact abound .................................. 8

        3.  Plaintiffs' claims are typical of the Class ................................. 11

        4.  Plaintiffs and Class Counsel will protect the interests of the Class ......... 14

    C.  Plaintiffs' Claims and the Proposed Class are Certifiable Under
        Rule 23(b)(1)......................................................................................... 17

        1.  The Class satisfies the requirements of Rule 23(b)(1)(A) ...................... 18

        2.  The Class satisfies the requirements of Rule 23(b)(1)(B) ...................... 20

    D.  Plaintiffs' Counsel Should be Appointed as Class Counsel ................................ 21

V.  CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allianz Asset Mgmt. of Am., L.P.*,
  2017 WL 2655678 (C.D. Cal. June. 15, 2017) ................................................................. 18, 20

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ....................................................................... 11, 13, 22, 23

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ............................................................................................. 12

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
  222 F.3d 52 (2d Cir. 2000) .................................................................................. 21

*Baltimore v. Laborers' Int'l Union of N. Am.*,
  1995 WL 578084 (4th Cir. Oct. 2, 1995) ........................................................... 13

*Beach v. JPMorgan Chase Bank, N.A.*,
  2019 WL 2428631 (S.D.N.Y. June 11, 2019) .................................................... 19

*Boley v. Universal Health Servs., Inc*,
  36 F.4th 124 (3d Cir. 2022) .......................................................................... 17, 18

*Boley v. Universal Health Servs., Inc.*,
  337 F.R.D. 626 (E.D. Pa. 2021) ......................................................................... 17

*Brady v. Thurston Motor Lines*,
  726 F.2d 136 (4th Cir. 1995) .............................................................................. 13

*Brieger v. Tellabs, Inc.*,
  245 F.R.D. 345 (N.D. Ill. Sept. 19, 2007) ......................................................... 16

*Broussard v. Meineke Discount Muffler Shops., Inc.*,
  155 F.3d 331 (4th Cir. 1998) .............................................................................. 13

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
  143 F.R.D. 628 (D.S.C.1992) ............................................................................. 14

*Chittick v. Freedom Mort. Corp.*,
  2021 WL 5326407 ............................................................................................... 13

*Clark v. Duke Univ.*,
  2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ..................................................... 7

*D.S. by & through Ford v. Wilson,*
    60 F.4th 770 (4th Cir. 2023) ................................................................. 19

*Deiter v. Microsoft Corp.,*
    436 F.3d 461 (4th Cir. 2006) ................................................................. 17

*DiFelice v. U.S. Airways, Inc.,*
    235 F.R.D. 70 (E.D. Va. 2006).......................................................*Passim*

*Douglin v. GreatBanc Trust Co., Inc.,*
    115 F. Supp. 3d 404 (S.D.N.Y. 2015) .................................................. 25

*EQT Prod. Co. v. Adair,*
    764 F.3d 347 (4th Cir. 2014) ................................................................. 12

*Falberg v. Goldman Sachs Group, Inc.,*
    2022 WL 538146 (S.D.N.Y. Feb. 14, 2022) ....................................... 17

*Fraser v. Bureau of Alcohol,*
    2023 WL 5616011 (E.D. Va. Aug. 30, 2023) ............................ 11, 12, 19

*Garthwait v. Eversource Energy Co.,*
    2022 WL 1657469 (D. Conn. May 25, 2022) ................................. 26, 27

*Gunnells v. Healthplan Servs., Inc.,*
    348 F.3d 417 (4th Cir. 2003) ........................................................... 12, 21

*Hughes v. Nw. Univ.,*
    142 S. Ct. 737 (2022)............................................................................ 14

*In re BearingPoint, Inc. Sec. Litig.,*
    232 F.R.D. 534 (E.D. Va. 2006)........................................................... 18

*In re Global Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................ 6

*In re Ikon Office Solutions,*
    191 F.R.D. 457 (E.D. Pa. 2000) ........................................................... 15

*In re Jeld-wen Holding, Inc. Sec. Litig.,*
    2021 WL 1186326 (E.D. Va. Mar. 29, 2021)....................................... 12

*In re Schering Plough Corp. ERISA Litig.,*
    589 F.3d 585 (3d Cir. 2009) ................................................................. 15

*In re Zetia (Ezetimibe) Antitrust Litig.,*
    7 F.4th 227 (4th Cir. 2021) ................................................................... 13

*Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ............................................................... 11

*Kennedy v. United Healthcare of Ohio, Inc.*,
    206 F.R.D. 191 (S.D. Ohio 2002) ...................................... 24

*Knight v. Lavine*,
    2013 WL 427880 (E.D. Va. 2013) ................................ Passim

*Lienhart v. Dryvit Systems, Inc.*,
    255 F.3d 138 (4th Cir. 2001) ..................................... 14, 16

*Longo v. Trojan Horse Ltd.*,
    208 F. Supp. 3d, 700 (E.D.N.C. 2016) .............................. 25

*Moler v. Univ. of Maryland Med. Sys.*,
    2022 WL 2756290 (D. Md. July 13, 2022) ........................ 26

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ............................................... 25, 26

*Peters v. Aetna Inc.*,
    2 F.4th 199 (4th Cir. 2021) ...................................... 14, 15

*Peters v. Aetna, Inc.*,
    2023 WL 3829407 (W.D.N.C. June 5, 2023) ...................... 24

*Plotnick v. Computer Scis. Corp. Deferred Comp. Plan for Key Executives*,
    182 F. Supp. 3d 573 (E.D. Va. 2016) ............................. 16

*Reetz v. Lowe's Companies, Inc.*,
    2020 WL 6528866 (W.D.N.C. Nov. 5, 2020) ........................ 7

*Sims v. BB&T Corp.*,
    2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) .................... 7, 21

*Soutter v. Equifax Info. Servs., LLC*,
    307 F.R.D. 183 (E.D. Va. 2015) .................................... 14

*Stegemann v. Gannet Co., Inc.*,
    2022 WL 17067496 (E.D. Va. Nov. 17, 2022) ................ Passim

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1966) ............................................... 20, 21

*Tatum v. R.J. Reynolds Tobacco Co.*,
    254 F.R.D. 59 (M.D.N.C. 2008) ................................................................................*Passim*

*Tatum v. RJR Pension Inv. Comm.*,
    761 F.3d 346 (4th Cir. 2014) ....................................................................................... 6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................... 12, 14, 15

## Statutes

29 U.S.C. § 1001 .............................................................................................................. 6
29 U.S.C. § 1002(7) ......................................................................................................... 9
29 U.S.C. § 1104 .............................................................................................................. 9
29 U.S.C. §§ 1002 and 1102 ......................................................................................... 8, 9
29 U.S.C. §§ 1109 and 1132(a)(2) ................................................................................. 14
29 U.S.C. §§ 1109(a), 1132(a)(2) .............................................................................. 11, 19
29 U.S.C. §§ 1132(a)(2), 1109(a) .................................................................................... 6

## Rules

Fed. R. Civ. P. 23(a)(1) ................................................................................................. 13
Fed. R. Civ. P. 23(a)(2) ................................................................................................. 13
Fed. R. Civ. P. 23(a) ................................................................................... 12, 13, 19, 22
Fed. R. Civ. P. 23(a)(3) ................................................................................................. 16
Fed. R. Civ. P. 23(a)(4) ................................................................................................. 21
Fed. R. Civ. P. 23(b) ..................................................................................................... 22
Fed. R. Civ. P. 23(b)(1) ..................................................................................... 22, 23, 25
Fed. R. Civ. P. 23(b)(1)(A) ........................................................................................... 23
Fed. R. Civ. P. 23(b)(1)(B) ........................................................................................... 25
Fed. R. Civ. P. 23(g) ..................................................................................................... 22
Fed. R. Civ. P. 23(g)(1)(A) ............................................................................... 21, 22, 26

## Other Authorities

1 Newberg on Class Actions § 3:12 (5th ed. 2021) ...................................................... 13
7A Wright & Miller, <u>Federal Practice & Procedure</u>, § 1760 (3d ed. 2005) ................................. 12

## I.    __INTRODUCTION__

Plaintiffs, Peter Trauernicht and Zachary Wright (collectively, "Plaintiffs"), individually and on behalf of the Genworth Financial Inc. Retirement and Savings Plan ("Plan") and as representatives of a proposed class of similarly situated plan participants and beneficiaries defined below ("Class"), respectfully submit this Memorandum of Law in support of the accompanying Motion for Class Certification ("Motion") and hereby move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order certifying this action ("Action") as a class action, appointing Plaintiffs as representatives of the Class ("Class Representatives"), and appointing Plaintiffs' counsel as counsel for the Class ("Class Counsel").

In this Action, Plaintiffs claim that Defendant, Genworth Financial, Inc. ("Genworth" or "Defendant"), breached fiduciary duties owed to the Plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, a standard that is "the highest duty known to the law. *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014). Specifically, Plaintiffs contend that Genworth and the fiduciaries it appointed to manage the Plan failed to appropriately monitor the Plan's investments and consequently retained imprudent investments in the Plan.  To redress breaches of fiduciary duty, ERISA authorizes any plan participant to bring an action in a representative capacity on behalf of a plan to enforce ERISA's fiduciary duties and remedial provisions.  *See* 29 U.S.C. §§ 1132(a)(2), 1109(a).

Courts in this Circuit and around the country have recognized that "ERISA litigation involving a claim for breach of fiduciary duty presents a paradigmatic example of a [Rule 23](b)(1) class." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 67 (M.D.N.C. 2008) (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004)) (internal alterations omitted); *Knight v. Lavine*, No. 1:12-CV-611, 2013 WL 427880, at *4 (E.D.

Va. 2013); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006). Plaintiffs' claims fall squarely within this paradigm, as their claims arise from the Plan-level conduct of Defendant and its appointees and Plaintiffs seek remedies for the Plan on behalf of all participants.[1] Indeed, the conduct of the Plan's fiduciaries challenged by Plaintiffs was entirely directed at the Plan ***as a whole*** and did not differ in any material respect as it relates to individual participants and beneficiaries in the Plan. This is consistent with the structure of the Plan, which provides one menu of investment options (and one qualified default investment alternative ("QDIA") to ***all participants and beneficiaries***. There is no credible argument that the prerequisites of Rule 23 are not satisfied, as a result of purported individualized issues or otherwise.

Moreover, Plaintiffs have demonstrated steadfast commitment to serving as class representatives and pursuing redress on behalf of the Plan and the Class and there are neither unique defenses nor conflicts that could prevent Plaintiffs from serving effectively as Class Representatives. Similarly, Plaintiffs' counsel have, since the commencement of this action, leveraged their experience and resources to advance the interests of the proposed class, warranting their appointment as Class Counsel.

For these reasons and all those apparent on the record, the Court should certify this Action as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(1).[2]

---

[1] Numerous recent decisions by courts within the Fourth Circuit and throughout the country confirm that the proposed Class may be certified. *See, e.g., Reetz v. Lowe's Companies, Inc.*, No. 5:18-cv-00075-KDB-DCK, 2020 WL 6528866 (W.D.N.C. Nov. 5, 2020); *Clark v. Duke Univ.*, No. 1:16-CV-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018); *Sims v. BB&T Corp.*, Nos. 1:15-CV-732, 1:15-CV-841, 2017 WL 3730552 (M.D.N.C. Aug. 28, 2017); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006).

[2] Plaintiffs note that discovery recently commenced and, as of the filing of this Motion, Defendant has produced only limited documents related to Plan governance and fiduciary decision-making. While these documents are sufficient to establish that the prerequisites of Rule 23 are met, Plaintiffs reserve the right to supplement the Motion with additional evidence adduced in discovery.

## II.    **BACKGROUND**

The facts of this Action are recited in detail in the Second Amended Class Action

Complaint ("Complaint") filed on April 17, 2023 (ECF No. 103).  Accordingly, this

memorandum will only restate facts relevant to the Motion.

### A.  **The Plan and the Parties**

The Plan is a large 401(k) defined contribution retirement plan for eligible employees of

Genworth.  *See* Declaration of John C. Roberts ("Roberts Decl.")  Ex. A., Genworth Summary

Plan Description, at GENWORTH-0002768.  During the Class Period, the Plan had more than

4,000 participants and account balances and assets totaling approximately $910 million, placing

it in the top 0.2% of all defined contribution plans by plan size.  *See* Roberts Decl. Ex. B.,

Genworth Financial, Inc. Retirement and Savings Plan 2021 Annual Return/Report of Employee

Benefit Plan Form 5500 at Part II, item 6g and Schedule H, Part I, item 1l.  Plan management

and administration was applied uniformly to all participants.  *See* Roberts Decl. Ex. C., 2016

Genworth Financial, Inc. Retirement and Savings Plan Investment Policy Statement ("IPS"), at

GENWORTH-0000317-321 (describing Plan investment objectives and roles and responsibilities

of parties involved in Plan management and administration).

Defendant is a fiduciary of the Plan under ERISA pursuant to 29 U.S.C. §§ 1002 and

1102.[3]  *Id*, at GENWORTH-0000317.  Genworth appointed the Committee and its members to

administer the Plan on its behalf.  *Id*.  The Committee was charged with the selection and

---

[3]Plaintiffs originally also named the Board of Directors a/k/a the Board of Trustees of Genworth
Financial, Inc. ("Board") and its members and the Investment Committee of Genworth Financial,
Inc. (the "Committee") as defendants in this case, but the parties stipulated to dismiss these
entities without prejudice and also agreed that, in the event any final judgment is entered in this
case on the basis of the conduct of the Board, the Committee, or their individual members,
Genworth will assume any liability and satisfy damages on behalf of the Plan fiduciaries.  *Id*.

periodic monitoring of investment alternatives under the Plan and retaining service providers on behalf of the Plan, among other significant responsibilities for Plan management and administration. *Id.*, at GENWORTH-0000317-318  As a fiduciary of the Plan, Defendant is obligated to act for the exclusive benefit of participants, offer participants prudent investment choices, and ensure such choices remain appropriate for continued investment. *See* 29 U.S.C. § 1104 (setting forth fiduciary duties).

Plaintiffs are former employees of Genworth and former participants in the Plan under 29 U.S.C. § 1002(7). *See* Declaration of Pater Trauernicht ("Trauernicht Decl."), ¶ 5; Declaration of Zachary Wright ("Wright Decl."), ¶ 5.  During the proposed class period ("Class Period"), Plaintiffs' Plan investments included several different vintages of the BlackRock LifePath Index Funds ("BlackRock TDFs"). *See* Trauernicht Decl., ¶ 5; Wright Decl., ¶ 5.  Defendant's conduct—or, perhaps more accurately, inaction—in monitoring and imprudently retaining the BlackRock TDFs was carried out at the Plan level, without distinction among participants.[4]  In other words, individual Plan participants who invested in the BlackRock TDFs during the Class Period are similarly, if not identically, situated with respect to the conduct underlying the claims at issue in this action.

B. **Plaintiffs' Claims**

---

[4]Target date funds, such as the BlackRock TDFs, are offered as a series of vintages keyed to an individual's presumed retirement date.  Fiduciaries of retirement plans do not select individual funds (*i.e.*, vintages) from different target date fund providers, but rather select an entire suite of vintages from a single provider.  Accordingly, Defendant's decisions to retain the BlackRock TDFs at any point during the relevant period represented a single suite-wide decision, rather than several decisions to retain particular vintages within the suite.  Likewise, the information and deliberative materials on which any retention decisions were based relates to the entire suite of BlackRock TDFs.

Plaintiffs claim Defendant breached its fiduciary duty by failing to appropriately monitor the Plan's investments, resulting in the imprudent retention of the BlackRock TDFs in the Plan throughout the Class Period. Complaint ¶¶ 27–63. Defendant's misconduct underlying this claim was Plan-wide, and Plaintiffs seek to recover losses stemming from this imprudent retention on behalf of the Plan, making Plaintiffs' claim ideally suited for class treatment under Rule 23. Indeed, a class action is superior to all other feasible alternatives for the management and resolution of this matter, as a vast majority, if not all, of the Class members are unaware of Defendant's breaches of fiduciary duty such that they will never bring suit individually. Moreover, given the nature of these Plan-wide ERISA claims, separate actions concerning Defendant's conduct risk inconsistent adjudications and resulting enforcement of incompatible standards. Management of this Action will also be straightforward, as proof and defenses of liability and damages can and will be proffered on a Class-wide basis. Similarly, the legal theories which will drive the resolution of the Action apply to all Plan participants. Thus, Plaintiffs' claims on behalf of the Plan are ideally suited for class treatment.

### C. **The Plan's Losses**

Plaintiffs claim that the imprudent retention of the BlackRock TDFs caused losses to the Plan as a result of substantially reduced capital appreciation. Complaint ¶ 57. The losses resulting from the breaches of fiduciary duty claimed may be measured on a Plan-wide basis, consistent with methods of measuring Plan-wide losses routinely accepted in similar ERISA actions. Specifically, the Plan's losses can be determined by measuring the difference between the terminal balances in the BlackRock TDFs and the terminal balances that the Plan would have experienced if the BlackRock TDFs had been replaced by a suitable alternative investment. *See DiFelice v. US Airways, Inc.*, 235 F.R.D. 70, 75 (E.D. Va. 2006). Although calculations of the

Plan's losses will be presented by expert witnesses, all of the data necessary to perform these calculations exists in the Plan's records—namely, the periodic reports provided by the Plan's investment consultant and data concerning the Plan's asset balances, contributions and withdrawals, and the performance of the Plan's investments. *See* Roberts Decl. Ex. D., Fourth Quarter 2015 Investment Review, GENWORTH-0000033.

### D.  The Proposed Class

ERISA authorizes plan participants to bring an action on behalf of a plan to enforce the statute's fiduciary obligations and remedial provisions and to recover all losses to a plan caused by a breach of fiduciary duty. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2).  Plaintiffs bring this action "in a representative capacity on behalf of the [P]lan as a whole" to recover losses to the Plan caused by Defendant's breaches and to obtain equitable relief. *Mass. Mut. Life. Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985).  Plaintiffs seek certification of the following proposed Class:

> All participants and beneficiaries in the Genworth Financial Inc. Retirement and Savings Plan at any time on or after July 29, 2016 and continuing to the date of judgment, or such earlier date that the Court determines is appropriate and just, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

Complaint ¶ 69.  Members of the Class can be readily identified from participant account records in the custody of Defendant or the Plan's recordkeepers.

## III.  LEGAL STANDARD

The class certification analysis under Rule 23 has two primary components: (1) the Court must find that the claims and proposed class meet the four requirements of Rule 23(a); and (2) the Court must find that the action meets the requirements of at least one subsection of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); Fed. R. Civ. P. 23.  In addition, the "implicit threshold requirement" (or "ascertainability requirement") recognized by

the Fourth Circuit requires the proposed class to be "readily identifiable." *Fraser v. Bureau of Alcohol*, No. 3:22CV410, 2023 WL 5616011, at *6 (E.D. Va. Aug. 30, 2023) (Payne, J) (citing *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)).

While the court must conduct a "rigorous analysis" to determine whether the elements of Rule 23 have been satisfied, *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350–51 (2011), "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id.* District courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and ... promote judicial efficiency.'" *In re Jeld-wen Holding, Inc. Sec. Litig.*, No. 3:20-CV-112-JAG, 2021 WL 1186326, at *2 (E.D. Va. Mar. 29, 2021) (quoting *Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 424 (4th Cir. 2003)).

## IV.    <u>ARGUMENT</u>

### A.    <u>The Proposed Class is Readily Ascertainable</u>

"As long as it is administratively feasible for the court to determine whether a particular individual is a member of the class, the ascertainability requirement is met." *Fraser,* 2023 WL 5616011, at *7 (quoting 7A Wright & Miller, <u>Federal Practice & Procedure</u>, § 1760 (3d ed. 2005)) (internal quotation marks omitted). The proposed Class is clearly defined based on participation (or beneficiary status) in the Plan. *See supra* II.D; Compl., at ¶ 69. Since the entire membership of the Class during the Class Period, including Plaintiffs, can be determined from the Plan's own records, there can be no serious argument that this threshold requirement is not met.

**B.  Plaintiffs' Claims and the Proposed Class are Certifiable Under Rule 23(a)**

The requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  *See Amchem*, 521 U.S. at 613.  Plaintiffs and the proposed Class satisfy each of the Rule 23(a) prerequisites.

  1. The Class is sufficiently numerous

The numerosity requirement of Rule 23 requires that a putative class must be "so numerous that joinder of all members would be impracticable."  Fed. R. Civ. P. 23(a)(1). Practicability of joinder depends on various factors, such as "the size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion."  *Baltimore v. Laborers' Int'l Union of N. Am.*, 1995 WL 578084, at *1 (4th Cir. Oct. 2, 1995).  Although no specific number is needed to maintain a class action, the Fourth Circuit has found a presumption of impracticability of joinder where a proposed class has 40 or more members—let alone thousands, as is the case here.  *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (quoting 1 Newberg on Class Actions § 3:12 (5th ed. 2021)) (internal citation omitted); *see Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1995) (finding that a class of 74 persons and even "much smaller" classes meet the numerosity requirement).  As evidenced by the Plan's Form 5500 filings, the Plan had more than 4,000 participants and beneficiaries during the Class Period.  Roberts Decl., Ex. B, at 3.  Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirement.

  2. Common questions of law and fact abound

The commonality requirement of Rule 23 requires that "questions of law or fact are common to the class."[5]  Fed. R. Civ. P. 23(a)(2).  Commonality involves "the capacity of a class[-]wide proceeding to generate common answers apt to drive resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotations omitted).  To satisfy the commonality requirement, "there need be only a single issue common to the class."  *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 199 (E.D. Va. 2015) (Payne, J.) (citing *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C.1992), aff'd 6 F.3d 177 (4th Cir. 1993)).  Courts in this Circuit find the commonality perquisite satisfied where "common questions are dispositive and overshadow other issues."  *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006) (citing *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)); *see also Knight*, 2013 WL 427880, at *4 ("Plaintiff alleges the same conduct constituted the same breach of fiduciary duty by the same individuals. Whether or not a breach did indeed occur is a question ripe for class[-]wide resolution").

Actions involving breaches of fiduciary duty under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), involve legal and factual questions that are inherently common to all participants and beneficiaries of a plan.  *See Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).  The very nature of Plaintiffs' claims supports a finding of commonality.  This case presents numerous common questions, including: "whether the defendants were fiduciaries;

---

[5]The commonality, typicality, and adequacy requirements "tend to merge, with commonality and typicality serving as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiffs' [sic] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Chittick v. Freedom Mort. Corp.*, 2021 WL 5326407, at *4 (quoting *Broussard v. Meineke Discount Muffler Shops., Inc.*, 155 F.3d 331, 337 (4th Cir. 1998)).  While this memorandum discusses the requirements separately, the arguments supporting each element are related and frequently support the others.

whether defendants breached their duties to the Plan by failing to conduct an appropriate investigation into the continued investment in [the BlackRock TDFs]; whether they failed to adequately to [sic] monitor the plan's investment committee; [and] whether they failed to hire independent fiduciaries; and whether their breaches caused plan losses." *Peters v. Aetna Inc*., 2 F.4th 199, 243 (4th Cir. 2021), *cert. denied sub nom. OptumHealth Care Sols. v. Peters*, 142 S. Ct. 1227, 212 L. Ed. 2d 234 (2022) (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009)).

These types of common questions are sufficient to meet the commonality requirement, as they will "generate common answers apt to drive the resolution" of Genworth's liability. *See id.* (citing *Wal-Mart*, 564 U.S. at 350). Since the critical issues in this Action involve the acts and omissions of Defendant in selecting and monitoring the BlackRock TDFs, "they are common to all Plan participants who might bring an action on behalf of the Plan." *DiFelice*, 235 F.R.D. at 78. The evidence required to answer the contentions in this Action as to both liability and damages is plan-level and, consequently, common to all of the Plan's participants. *See supra* II.A (reviewing plan documents). If the evidence shows that Defendant breached its fiduciary duties, this determination "will resolve an issue that is central to the validity of each one of the claims in one stroke." *See Peters*, 2 F.4th at 242 (quoting *Wal-Mart*, 564 U.S. at 350). Such a determination does not depend on the particular circumstances of any individual participant because, in ERISA fiduciary breach actions brought on behalf of the Plan as a whole, "the focus is the conduct of the Defendants – not the conduct of the Plan participants." *Tatum*, 254 F.R.D. at 66 (citing *In re Ikon Office Solutions*, 191 F.R.D. 457, 465 (E.D. Pa. 2000) (explaining that "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs")). The questions of law and fact in this Action are, by their nature, common to

each member of the proposed Class.  Indeed, there should be little dispute as to the commonality

of questions of law and fact, as the central allegations concern Defendant's administration of the

Plan.  As such, because Defendant's duties and conduct ran to the Plan—not any individual

participant—the commonality prerequisite is satisfied.  *See DiFelice*, 235 F.R.D. at 78.

### 3.  Plaintiffs' claims are typical of the Class

Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims

of the class.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement may be met where a class

representative is "part of the class and possess[es] the *same interest* and suffer[s] the same injury

as the class members."  *See DiFelice*, 235 F.R.D. at 78–79 (quoting *Lienhart*, 255 F.3d at 146)

(emphasis added).  Many courts have found typicality if the claims of the representatives and the

class members "stem from a single event or a *unitary course of conduct*."  *Plotnick v. Computer

Scis. Corp. Deferred Comp. Plan for Key Executives*, 182 F. Supp. 3d 573, 582 (E.D. Va. 2016),

*aff'd*, 875 F.3d 160 (4th Cir. 2017) (emphasis added) (citations omitted).

Because ERISA § 502(a)(2) claims are inherently representative claims, any participant's

claim is "necessarily typical" of the claims of the rest of the class because they are based on the

effect a defendant's acts or omissions on the value of *the Plan*.  *DiFelice*, 235 F.R.D. at 79

(collecting cases).  Indeed, Plaintiffs bring this Action on behalf of the Plan, such that "[a]ny

recovery of lost benefits will go the Plan and will be held, allocated, and ultimately distributed in

accordance with the requirements of the Plan and ERISA."  *Tatum*, 254 F.R.D. at 66.  Courts

routinely find a participant's fiduciary breach claim to be typical of the claims of all participants

in a plan.  *See Stegemann v. Gannet Co., Inc.*, No. 118CV325AJTJFA, 2022 WL 17067496, at

*10 (E.D. Va. Nov. 17, 2022) ("The Court finds that the typicality requirement is satisfied here

as Plaintiff brings this action in a § 502(a) representative capacity."); *see Knight*, 2013 WL

427880, at *3 ("The representative nature of a § 502(a)(2) suit makes it almost tautological that the named plaintiff's claim is typical of the rest of the class."); *DiFelice*, 235 F.R.D. at 79 (same); *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 350 (N.D. Ill. Sept. 19, 2007) (finding that plaintiffs' "claims are typical of those of the putative class, principally because they seek relief on behalf of the Plan under section 502(a)(2) of ERISA for alleged fiduciary violations as to the Plan"); *Kanawi v. Bechtel Corp.*, 254 F.R.D.102, 110 (N.D. Cal. 2008) (same). Indeed, the standard is merely that a "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of [his] own individual claim." *Stegemann*, 2022 WL 17067496, at *10 (quoting *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466–67 (4th Cir. 2006)).

While Defendant may argue that purported statutory defenses or statute of limitations determinations defeat typicality, courts routinely find typicality satisfied in the face of such arguments. The evidence required to establish such defenses hinges on the Plan, rather than on individual Plan participants, and individualized statute of limitations inquiries cannot defeat the many common legal and factual issues underlying the participants' claims based on Plan-wide conduct. *See Tatum*, 254 F.R.D. at 66 (rejecting defendants' argument that statutory affirmative defense would require individualized determinations); *Boley v. Universal Health Servs., Inc.*, 337 F.R.D. 626, 634–36 (E.D. Pa. 2021), aff'd, 36 F.4th 124 (3d Cir. 2022) ("*Boley II*") (same with respect to both statutory defenses and statute of limitations determinations); *Falberg v. Goldman Sachs Group, Inc.*, 2022 WL 538146, at *9 (S.D.N.Y. Feb. 14, 2022).

Similarly, the representative nature of Plaintiff's ERISA claim renders intra-class conflicts unlikely. *See Boley II*, 36 F.4th at 136. The circumstances of this Action, in which Plaintiffs allege fiduciary breaches arising out of Defendant's management and administration of

the Plan, are no exception.  Like the other Class members, Plaintiffs participated in the Plan and suffered injuries as a result of Defendant's mismanagement of the Plan.  By the very nature of claims and underlying misconduct alleged herein, Plaintiffs' claims arise "from the same events and course of conduct as the other Class members and the theory of liability is the same."  *See Stegemann*, 2022 WL 17067496, at *10 (citing *In re BearingPoint, Inc. Sec. Litig*., 232 F.R.D. 534, 538 (E.D. Va. 2006)).  These principles hold especially firm in the context of claims challenging the retention of target date funds as a result of a deficient investment monitoring process, as fiduciaries' retention of a suite of target date funds is a single decision made at the suite level rather than on a vintage-by-vintage basis.  Plaintiffs' claim that Defendant imprudently retained the BlackRock TDFs is typical of a claim that could be asserted by any participant or beneficiary whose Plan assets were invested in the BlackRock TDFs, irrespective of the particular vintage in which they were invested.  *See Boley II*, 36 F.4th at 134 ("Although the Named Plaintiffs have only invested in three of the suite's thirteen target date funds, Universal's decision to add and retain the Fidelity Freedom suite is the cause of injury for each participant across all thirteen funds.").

Finally, Defendant may contend that individual participants and beneficiaries are differently situated or have conflicting interests based on their risk tolerance, investment in different vintages of the BlackRock TDFs, or the timing of their investment in the BlackRock TDFs, among other immaterial potential differences between the various participants in a participant-directed 401(k) plan.  To the extent these distinctions are even evidenced by the record (they are not), they would not render Plaintiffs' claims atypical of the Class.  This is because the Plan's fiduciaries monitored and retained the BlackRock TDFs (and designated the funds as QDIA) for the Plan as a whole.  *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,

2017 WL 2655678, at *5 (C.D. Cal. June. 15, 2017) ("That the Plan participants may have separate individual accounts, invest in different funds, and obtain different returns on their investments (positive or negative), does not change the nature of their claims or the legal arguments they would make to prove Defendants' liability."); *see also Boley II*, 36 F.4th at 134 (finding these purported participant-oriented "differences relate to degree of injury and level of recovery" and do not defeat typicality). Any argument to the contrary would be little more than a red herring designed to distract from the relevant analysis and garner an erroneous decision inconsistent with ERISA and the structure of the defined contribution plan at issue.

### 4.    Plaintiffs and Class Counsel will protect the interests of the Class

The adequacy requirement of Rule 23 requires that Plaintiffs show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Fraser*, 2023 WL 5616011, at *9 (quoting *Carolina Youth Action Proj.; D.S. by & through Ford v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023)).

### a.    Plaintiffs have no conflicts with other Class members and will vigorously prosecute this Action on behalf of the Class

Plaintiffs' interests are entirely aligned with all other members of the proposed Class by virtue of the very nature of the claims that Plaintiffs bring. Plaintiffs, acting in a representative capacity, seek to enforce the duties that Defendant owes to the Plan, and to recover damages and equitable relief due. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2); *Fraser*, 2023 WL 5616011, at *9. Indeed, the "general rule that there is 'a relatively low likelihood of intra-class conflicts'" in fiduciary breach actions "because the recovery is to the Plan, not to individual Plaintiffs," is readily applicable here. *See Beach v. JPMorgan Chase Bank, N.A.*, No. 17-cv-563-JMF, 2019 WL 2428631, at *8 (S.D.N.Y. June 11, 2019) (citation omitted). Since Plaintiffs are pursuing

14

claims on behalf of the Plan, there are no conflicts between Plaintiffs' individual interests and the interests of the Class. Indeed, Plaintiffs and Class members share the same objectives, the same factual and legal positions, and the same interest in establishing Defendant's liability. *See Knight*, 2013 WL 427880, at *4. Instead of any conflicts of interest, Plaintiffs' interests and those of the Class are unified.

A class representative needs only a basic understanding of the claims and a willingness to participate in the case, requirements that Plaintiffs easily surpass. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 367 (1966). Plaintiffs have demonstrated their commitment to pursuing this Action on behalf of the Class and their understanding of the nature of their claims and duties as proposed Class Representatives. *See* Trauernicht Decl., ¶¶ 6-11; Wright Decl., ¶¶ 6-11. Furthermore, Plaintiffs have affirmed that they have and will continue to represent the interests of the other Class members as they would their own. *Id*.

Plaintiffs have and will continue to vigorously prosecute this Action on behalf of all members of the proposed Class. To date, Plaintiffs have met and exceeded their duty to the proposed Class by, *inter alia*: (a) providing information to counsel prior to and throughout the litigation of the Action; (b) reviewing pleadings and other filings; (c) providing documents and assisting counsel in discovery matters; and (d) maintaining communication with counsel, including regular conference calls and email exchanges, to monitor the progress of the Action. *See* Trauernicht Decl., ¶ 9; Wright Decl., ¶ 9. Moreover, Plaintiffs are committed to seeing this Action through to its conclusion and undertaking any responsibilities required of them as class representatives, including continuing to assist counsel in discovery matters, participating in any mediation or other proceedings, and testifying at deposition and trial. *See* Trauernicht Decl., ¶ 11; Wright Decl., ¶ 11. Evidence of this type has supported class representative appointments in

similar ERISA actions.  *See Urakhchin*, 2017 WL 2655678, at *6 (appointing plaintiffs as class

representative where they "stated that they are unaware of any conflicts of interest with other

class members and have described the extent of their participation in the action to date.").

Additionally, Plaintiffs understand the nature of their claims and their duties as class

representatives.  *See* Trauernicht Decl., ¶¶  4, 10; Wright Decl., ¶¶  4, 10.  This is a fairly low

standard, as "[t]he lack of knowledge contention is particularly meritless."  *Gunnells v.*

*Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003).  "In a complex lawsuit, such as one in

which the defendant's liability can be established only after a great deal of investigation and

discovery by counsel against a background of legal knowledge, the representative need not have

extensive knowledge of the facts of the case in order to be an adequate representative." *Id.*

(citations omitted); *see also Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 61

(2d Cir. 2000) ("The Supreme Court in [*Surowitz*] expressly disapproved of attacks on the

adequacy of a class representative based on the representative's ignorance.").

This guidance is particularly relevant in the ERISA context, where "the complex nature

of ERISA fiduciary breach claims requires investors to rely on their attorneys and hired experts,

and such reliance does not make the plaintiffs inadequate representatives."  *Sims v. BB & T*

*Corp.*, 2017 WL 3730552, at *5 (M.D.N.C. Aug. 28, 2017) (citing *Surowitz*, 383 U.S. at 372–

73).  Not only have Plaintiffs adequately demonstrated their understanding of the claims at issue,

*see* Trauernicht Decl., ¶ 4; Wright Decl., ¶ 4, but proposed Class Counsel, as described *infra*,

have extensive experience and knowledge of complex ERISA class action litigation.  *See* Roberts

Decl., ¶¶ 20-23.

       b.   Plaintiffs' counsel have no conflicts with the Class, are qualified and
            <u>experienced, and will vigorously prosecute the Action on behalf of the Class</u>

Related to the adequacy inquiry under Rule 23(a)(4) in appointing counsel for the proposed Class, the Court must consider the factors enumerated in Rule 23(g)(1)(A):

> (i) the work counsel has done in identifying or investigating potential claims in this action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs have engaged qualified and capable counsel, who have and will continue to vigorously prosecute this Action on behalf of the proposed Class. Plaintiffs are represented by Miller Shah LLP ("Miller Shah") and Tycko & Zavareei LLP ("Tycko & Zavareei"), firms with significant experience litigating complex class actions, including ERISA actions, and the ability and resources to vigorously prosecute this Action. *See* Roberts Decl., ¶¶ 2

0-23. To date, Miller Shah and Tycko & Zavareei have pursued and protected the interests of the Class, as evidenced by their advancement of this Action, including the filing of detailed, comprehensive pleadings, briefing on several motions, and substantial discovery efforts. Miller Shah and Tycko & Zavareei satisfy Rule 23(g) and should be appointed as Class Counsel.

### C.  **Plaintiffs' Claims and the Proposed Class are Certifiable Under Rule 23(b)(1)**

In addition to satisfying the requirement of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b). *See Amchem*, 521 U.S. at 613–14. "Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1)." *DiFelice*, 235 F.R.D. at 80 (citing Advisory Committee Notes, Rule 23(b)(1), Fed.R.Civ.P.). Rule 23(b)(1) provides:

> A class action may be maintained if Rule 23(a) is satisfied and . . . prosecuting separate actions by or against individual class members would create risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed R. Civ. P. 23(b)(1).

Actions under ERISA § § 409 and 502(a)(2) for breach of fiduciary duty present a "paradigmatic example" of a Rule 23(b)(1) class. *DiFelice*, 235 F.R.D. at 80. For the reasons discussed below, certification is appropriate under either subpart of Rule 23(b)(1).

    1.  <u>The Class satisfies the requirements of Rule 23(b)(1)(A)</u>

Rule 23(b)(1)(A) applies to "cases where the party is obligated by law to treat the members of the class alike[.]" *Amchem*, 521 U.S. at 614 (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(A) ("One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct."). This Court has recognized that "ERISA fiduciary breach claims are appropriate for Rule 23(b)(1) certification." *Stegemann*, 2022 WL 17067496, at *11 (collecting cases). "For instance, in *Knight*, the Court, Judge O'Grady presiding, reasons that this type of ERISA action satisfied 23(b)(1)(A) where multiple adjudications could result in incompatible standards of conduct for the Defendants." *Id.* (quoting *Knight*, 2013 WL 427880, at *4).

It would be appropriate to certify the proposed Class under Rule 23(b)(1)(A). Class members have all suffered the same injury—Defendant's breach of fiduciary duty in its

18

management and administration of the Plan—and are entitled to the same forms of relief, and separate actions risk inconsistent adjudications and incompatible standards. Indeed, allowing more than 4,000 individual Class members to pursue this Action on behalf of the Plan could result in varying adjudications over whether Defendant: (a) breached its fiduciary duties and committed other violations of ERISA as alleged; (b) whether Defendant is liable for these actions; and (c) how to measure damages to the Plan and other relief. *See Peters v. Aetna, Inc.*, No. 1:15-CV-00109-MR, 2023 WL 3829407, at *13 (W.D.N.C. June 5, 2023), *reconsideration denied*, No. 1:15-CV-00109-MR, 2023 WL 5058820 (W.D.N.C. Aug. 8, 2023) ("ERISA provides common definitions for the type of conduct that renders one a fiduciary or a party in interest and the type of conduct that violates fiduciary duties or constitutes prohibited transactions."); *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 198 (S.D. Ohio 2002) ("Plaintiffs seek prospective equitable relief on the basis that defendant's earlier practices violated ERISA. Separate lawsuits could result in inconsistent judgments on the merits of such claims. Simply stated, one court could determine that defendant's practice violated ERISA, while another court could conclude that it did not.").

As discussed above, the Plan's governing documents provide for the uniform treatment of participants under the Plan. *See supra* II.A. This includes the selection and retention of investments available to all participants. *See id.* Thus, adjudication of Plaintiffs' claims and those of other members of the Class in separate proceedings would result in a substantial risk of incompatible standards of conduct for Defendant, with a prospective impact on the Plan's management and administration. *See Knight*, 2013 WL 427880, at *4 (concluding that the potential separate litigation of ERISA claims by two plaintiffs would result in incompatible standards of conduct that "places the proposed class within the purview of Rule(b)(1)(A)").

Likewise, because "[a]ny recovery of lost benefits will go the Plan" and will be distributed "in accordance with the requirements of the Plan and ERISA," inconsistent adjudications will clearly bear on Defendant's conduct as it relates to all participants. *Tatum*, 254 F.R.D. at 66. It is difficult to envision circumstances more apt for class certification.

> 2. The Class satisfies the requirements of Rule 23(b)(1)(B)

"Rule 23(b)(1)(B) covers class action suits in which 'individual adjudications as a practical matter [] would be dispositive of the interests of the other members not parties to individual actions." *Stegemann*, 2022 WL 17067496, at *11 (quoting Fed. R. Civ. P. 23(b)(1)). "[A]n action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders of beneficiaries, and which requires an accounting or like measures to restore the subject of the trust," is a typical Rule 23(b)(1)(B) action. Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(B); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (quoting Advisory Committee Note); *Stegemann*, 2022 WL 17067496, at *11 (quoting *Longo v. Trojan Horse Ltd.*, 208 F. Supp. 3d, 700, 711–712 (E.D.N.C. 2016)). Indeed, "the structure of ERISA favors the principles enumerated under Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants." *Stegemann*, 2022 WL 17067496, at 11* n. 11 (quoting *Douglin v. GreatBanc Trust Co., Inc.*, 115 F. Supp. 3d 404, 412 (S.D.N.Y. 2015). Certification of the proposed Class under Rule 23(b)(1)(B) is appropriate here, where Plaintiffs bring their claims on behalf of the Plan and seek recovery to the Plan, because the resolution of the Action [will] "as a practical matter, be dispositive of the interests of the

other participants claims on behalf of the Plan." *Stegemann*, 2022 WL 17067496, at *11 (quoting *Tatum*, 254 F.R.D. at 67).

Here, "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects the interests of absent class members . . . [as] the suit involves the 'presence of property which call[s] for . . . management.'" *Ortiz*, 527 U.S. at 834 (internal quotation and alteration omitted); *see also Tatum*, 254 F.R.D. at 67 ("due to ERISA's distinctive representative capacity and remedial provisions, class treatment under Rule 23(b)(1)(B) is appropriate") (citations and quotations omitted)). Defendant's conduct was directed at the Plan as a whole, rather than individual participants; accordingly, "whether the Defendant[ ] breached [its] fiduciary duties reaches all potential claims by class members." *Stegeman*, 2022 WL 17067496, at *12 (citations omitted).

In summary, Plaintiffs' allegations concern fiduciary duties owed to the Plan as a whole, breaches of which affected all Class members uniformly. Accordingly, certification of the Class is warranted under either Rule 23(b)(1)(A) or 23(b)(1)(B).

**D.** <u>**Plaintiffs' Counsel Should be Appointed as Class Counsel**</u>

As previewed above, in appointing counsel for the proposed Class, the Court must consider the factors enumerated in Rule 23(g)(1)(A):

> (i) the work counsel has done in identifying or investigating potential claims in this action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Miller Shah and Tycko & Zavareei, Plaintiffs' chosen counsel, are exceedingly qualified under these factors, and this Court should appoint Miller Shah and Tycko & Zavareei as Class

Counsel in this Action.[6]  To date, Miller Shah and Tycko & Zavareei have used their experience and resources to vigorously pursue this litigation and protect the interests of all members of the Class.  *First*, the firms have done significant work identifying and investigating the claims in this Action and began their investigation of Plaintiffs' claims several months before filing suit.  *See* Roberts Decl., ¶ 12.  This work included analyzing data pertaining to the BlackRock TDFs and the Plan.  In addition, the firms, with the assistance of Plaintiffs, have drafted and filed detailed pleadings, briefed several motions, and engaged in the discovery process to date.  *Second*, Miller Shah and Tycko & Zavareei have significant experience handling ERISA matters and have knowledge of the applicable law.  *See* Roberts Decl., ¶¶ 20-23 ; *Garthwait*, 2022 WL 1657469, at *14.  *Third*, Miller Shah and Tycko & Zavareei have and will commit the necessary resources to pursue the best outcome for the proposed Class.  *See* Roberts Decl., ¶ 23.  Accordingly, the Court should appoint Miller Shah and Tycko & Zavareei as Class Counsel.

## V.    CONCLUSION

For the foregoing reasons and all those apparent on the record, the Court should certify this Action as a class action under Rules 23(a) and 23(b)(1), appoint Plaintiffs as Class Representatives, and appoint Miller Shah and Tycko & Zavareei as Class Counsel.

DATED: October 16, 2023                          Respectfully Submitted,


                                                 /s/ *Glenn E. Chappell*
                                                 Glenn E. Chappell (Bar No. 92153)
                                                 Lauren Kuhlik (Bar No. 92349)

---

[6]*See Garthwait v. Eversource Energy Co.*, 2022 WL 1657469, at *16 (D. Conn. May 25, 2022) (appointing Miller Shah as class counsel in a similar ERISA fiduciary breach class action and noting the firm's experience in bringing breach of fiduciary duty claims, diligent litigation, and commitment to providing the necessary resources to represent the class); *Moler v. Univ. of Maryland Med. Sys.*, 2022 WL 2756290 (D. Md. July 13, 2022) (Tycko and Zavareei representing proposed class of defined contribution participants and beneficiaries in proposed class action under ERISA in the Fourth Circuit).

TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: gchappell@tzlegal.com
        lkuhlik@tzlegal.com

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
        lrubinow@millershah.com

James C. Shah
Alec J. Berin
John C. Roberts
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
        ajberin@millershah.com
        jcroberts@millershah.com

*Attorneys for Plaintiffs, the Plan*
*and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 16, 2023, Plaintiffs' Memorandum of Law in support of their Motion for Class Certification was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.

/s/ *Glenn E. Chappell*
Glenn E. Chappell