**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| PETER TRAUERNICHT, *et al.*, | Case No: 3:22-CV-00532 |
| Plaintiffs, | |
| v. | |
| GENWORTH FINANCIAL, INC., | Date: December 18, 2023 |
| Defendant. | |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

III. ARGUMENT ....................................................................................................... 3

   A. The Proposed Class Has Article III Standing ................................................ 3

   B. Class Certification is Proper Because Each of the Rule 23(a) Prerequisites are Satisfied... 7

      1. Commonality ............................................................................................ 7

      2. Typicality ............................................................................................... 11

      3. Adequacy ............................................................................................... 13

   C. The Class may be Certified Under Rule 23(b)(1) ........................................ 16

      1. Certification under Rule 23(b)(1)(A) ..................................................... 17

      2. Certification under Rule 23(b)(1)(B) ..................................................... 18

IV. CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abbott v. Lockheed Martin Corp.*,
  725 F.3d 803 (7th Cir. 2013) ........................................................................... 10

*Alig v. Rocket Mortg., LLC*,
  52 F.4th 167 (4th Cir. 2022) ............................................................................. 7

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 .................................................................................................... 17

*Bear v. Oglebay*,
  142 F.R.D. 129 (N.D.W. Va. 1992) .................................................................. 17

*Bendaoud v. Hodgson*,
  578 F. Supp. 2d 257 (D. Mass. 2008) ............................................................. 19

*Boley v. Brown*,
  10 F.3d 218 (4th Cir. 1993) .............................................................................. 12

*Boley v. Principi*,
  144 F.R.D. 305 (E.D.N.C. 1992) ...................................................................... 12

*Boley v. Universal Health Servs., Inc.*,
  36 F.4th 124 (3d Cir. 2022) ...................................................................... 6, 11, 13

*Bond v. Marriott Int'l, Inc.*,
  296 F.R.D. 403 (D. Md. 2014) .......................................................................... 9

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ............................................................................ 6

*Branch v. Gov't Emps. Ins. Co.*,
  323 F.R.D. 539 (E.D. Va. 2018) .............................................................. 8, 11, 12, 13

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ............................................................................ 11

*Brown v. Nucor Corp.*,
  576 F.3d 149 (4th Cir. 2009) ............................................................................ 11

*Brown v. Transurban USA, Inc.*,
  318 F.R.D. 560 (E.D. Va. 2016) ....................................................................... 8

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*,
  322 F. Supp. 3d 676 (D. Md. 2018) ................................................................. 14

*Coan v. Kaufman*,
  457 F.3d 250 (2d Cir. 2006) ............................................................................. 19

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ............................................................................................ 5

*Davis v. Cap. One, N.A.*,
  2023 WL 6964051 (E.D. Va. Oct. 20, 2023) .................................................... 7

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) ............................................................................ 12

*Di Donato v. Insys Therapeutics, Inc.*,
  333 F.R.D. 427 (D. Ariz. 2019) ................................................................. 5
*DiFelice v. U.S. Airways, Inc.*,
  235 F.R.D. 70 (E.D. Va. 2006) ................................................. 9, 11, 13, 16
*Douglin v. GreatBanc Trust Co., Inc.*,
  115 F. Supp. 3d 404 (S.D.N.Y. 2015) ..................................................... 18
*Green v. City of Raleigh*,
  523 F.3d 293 (4th Cir. 2008) ..................................................................... 5
*Green v. Occidental Petro. Corp.*,
  541 F.2d 1335 ......................................................................................... 17
*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ................................................................... 14
*Huu Nguyen v. Nissan N. Am., Inc.*,
  932 F.3d 811 (9th Cir. 2019) ..................................................................... 5
*In re Ikon Office Solutions, Inc.*,
  191 F.R.D. 457 (E.D. Pa. 2000) ........................................................... 9, 13
*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y.2010) .............................................................. 19
*In re Omnicom Group Inc. ERISA Litig.*,
  2022 WL 18674830 ................................................................................... 4
*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) .................................................................... 12
*In re Schering-Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) .................................................................... 10
*In re Sycor ERISA Litig.*,
  227 F.R.D. 338 (C.D. Cal. 2005) ......................................................... 17, 18
*Inv. Comm.*,
  761 F.3d 346 (4th Cir. 2014) ................................................................. 5, 6
*Kanawi [v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008) ............................................................. 19
*Kennedy v. United Healthcare of Ohio, Inc.*,
  206 F.R.D. 191 (S.D. Ohio 2002) ............................................................ 17
*Knight v. Lavine*,
  2013 WL 427880 (E.D. Va. Feb. 4, 2013) ....................................... Passim
*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008) ........................................................................... 19, 20
*Lienhart v. Dryvit Sys., Inc.*,
  255 F.3d 138 (4th Cir. 2001) ................................................................... 11
*McLaurin v. Prestage Foods, Inc.*,
  271 F.R.D. 465 (E.D.N.C. 2010) .............................................................. 17
*Morris v. Wachovia Sec., Inc.*,
  223 F.R.D. 284 (E.D. Va. 2004) ............................................................... 15
*Munro v. Univ of S. California*,
  2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) ............................. 1, 10, 16, 19

iii

*Ostrof v. State Farm Mut. Auto. Ins. Co.*,
　200 F.R.D. 521 ........................................................................................................ 17

*Peters v. Aetna Inc.*,
　2 F.4th 199 (4th Cir. 2021) ............................................................................... 5, 6, 10

*Plotnick v. Computer Scis. Corp. Deferred Comp. Plan. for Key Execs.*,
　182 F. Supp. 3d 573 (E.D. Va. 2016) ..................................................................... 13

*Reed v. MedStar Health, Inc.*,
　2023 WL 5154507 (D. Md. Aug. 10, 2023) ............................................................. 4

*Ross-Randolph v. Allstate Ins. Co.*,
　2001 WL 36042162 (D. Md. May 11, 2001) ........................................................... 17

*Shiring v. Tier Technologies, Inc.*,
　244 F.R.D. 307 (E.D. Va. 2007) ............................................................................ 14

*Sims v. BB & T Corp.*,
　2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) ....................................................... 14

*Spanov. Boeing Corp.*,
　633 F.3d ............................................................................................................. 10, 13

*Stegemann v. Gannett Co., Inc.*,
　2022 WL 17067496 (E.D. Va. Nov. 17, 2022) ............................................. 17, 18, 19

*Surowitz v. Hilton Hotels Corp.*,
　383 U.S. 363 (1966) .............................................................................................. 14

*Tatum v. R.J. Reynolds Tobacco Co.*,
　254 F.R.D. 59 (M.D.N.C. 2008) ............................................................................ 18

*TransUnion LLC v. Ramirez*,
　141 S. Ct. 2190 (2021) ............................................................................................ 6

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011) ............................................................................................. 7, 8

*Wilmington Shipping Co. [v. New Engl. Life Ins. Co.*,
　496 F.3d 326 (4th Cir. 2007) ................................................................................... 6

*Wiseman [v. First Citizens Bank & Trust Co.*,
　212 F.R.D. 482 (W.D.B.C. 2003) .......................................................................... 13

*Zimmerman v. Bell*,
　800 F.2d 386 (4th Cir. 1986) ................................................................................ 17

*Zinser v. Accufix Rsch., Inc.*,
　253 F.3d 1180 (9th Cir. 2001) .............................................................................. 17

**Statutes**

29 U.S.C. § 1132(a)(2) ................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23(b)(1) ..................................................................................... 18, 19, 20

I.    **INTRODUCTION**

Plaintiffs respectfully submit this Reply in support of their Motion for Class Certification (ECF No. 143, the "Motion").[1]  In the Motion, Plaintiffs established all the necessary grounds for class certification.  Defendant avoids facing the Motion head-on and attempts to manufacture an "intra-class conflict," dodging around Plaintiffs' showings that the Rule 23 requirements are satisfied to pursue its own contrived issues.  The fodder for Defendant's arguments is a fundamentally unreliable expert report that, when corrected, itself demonstrates the absence of any conflicts or impediments to class certification.  Mischaracterizing Plaintiffs' claims and baselessly accusing Class Counsel of unduly influencing the litigation cannot carry the day.

Worse yet, Defendant's counsel has run this play before and been stopped short.  In *Munro v. Univ of S. California*, the defendant fiduciaries—represented by Genworth's counsel—made the exact same arguments about supposed intra-class conflicts, which the court roundly rejected in certifying an analogous class.  *See* 2019 WL 7842551, at *6–7 (C.D. Cal. Dec. 20, 2019).  These arguments are so contrary to bedrock principles of ERISA remedies in the context of defined contribution plans that the court in *Munro* explained their central premise "flies in the fac[e] of clearly established law."  *Id.* at *5.  But Defendant seeks an even more extreme result.  While the claims in *Munro* concerned multiple plan investments and service arrangements, Defendant suggests conflicts between investors in a *single investment suite*.  *Id.* at *2.[2]

---

[1] All undefined terms shall have the same meaning as in the Motion.

[2] It would be no answer to suggest Defendant's standing challenge distinguishes *Munro*.  As discussed below, this argument is based on a facial mischaracterization of Plaintiffs' theory of recovery and disregards the nature of Plaintiffs' Plan-wide claims under ERISA § 502(a)(2).

At bottom, Defendant's arguments suggest virtually no class could ever be certified in a case challenging investments in a defined contribution plan.  For good and clear reasons, this result is at odds with the dozens of analogous classes certified in authorities Defendant simply brushes aside.  Despite Defendant's unfortunate efforts to mislead, the Motion should be granted.

## II.    <u>BACKGROUND</u>

Plaintiffs claim Defendant breached its fiduciary duty in violation of Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), by failing to appropriately monitor the Plan's investments and consequently retaining the BlackRock TDFs instead of suitable alternative investments.  *See* Compl. ¶¶ 27–63.  Target date funds ("TDF(s)"), like the BlackRock TDFs, are offered to plan sponsors as suites of investments—plan sponsors cannot and do not choose individual vintages from different providers.  Consistent with this structure, Defendant selected and monitored the BlackRock TDFs as a single investments suite.  ████████████████████████████████████████████████████████████████████████████████████████████████.[3]  These Plan-wide claims are ideally suited for certification.

Defendant offers Dr. Wermers' opinions in an attempt to establish that certain individual class members would be "worse off" if Plaintiffs' theory of recovery is successful, but Dr. Wermers blatantly *ignores* Plaintiffs' actual theories of recovery and instead proffers opinions on an entirely distinct, Defendant-made theory.  ████████████████████████████████████████████████████████████████████████████████████████, which is a transparent selectiveness that renders Dr. Wermers' opinions meaningless as to the sufficiency of

---

[3] *See* Roberts Decl., Ex. 2, Deposition of Valerie Gober, at 144:5–146:7; Roberts Decl., Ex. 3, Deposition of Paul Haley, at 89:20–91:14.

Plaintiffs' theory of recovery at this stage. In addition, Dr. Wermers' opinions rely on an incorrect time period and inappropriately parse vintages of the single investment suite.

In response, Plaintiffs offer the opinion of Richard A. Marin, a financial services expert with decades of experience in the retirement investment industry, who explains the significant flaws in Dr. Wermers' opinions. *See* Roberts Decl. Ex. 1, Expert Rebuttal Report of Richard A. Marin ("Marin Report"). Mr. Marin's opinions show step-by-step that the Plan's losses may be measured on a Class-wide basis, *see* Marin Report, at IV.A, there are no economic conflicts among Class members when Dr. Wermers' erroneous assumptions are corrected, *see id.*, at IV.B, and Plaintiffs' each suffered losses in connection with Defendant's imprudent retention of the BlackRock TDFs. *See id.*, at IV.C. Perhaps most critically, Dr. Wermers attempts to justify his refusal to consider two of the four potential suitable alternative investments identified in the Complaint (and, therefore, Plaintiffs' actual theory of recovery) with a manufactured distinction between TDF series populated with passive and active underlying investments. *See id.*, at IV.B.1. These comparisons, however, are consistent with nature and structure of these investment vehicles, the monitoring criteria established by the Plan's own investment policy statement ("IPS"), and the appropriate metrics and time period for review purposes. *See id.* When these assumptions are corrected, however, Dr. Wermers' analysis itself demonstrates loss to Plaintiffs and investors in *every* vintage of the BlackRock TDFs. *See id.*, at IV.A–C.

The record strongly supports findings that each of Rule 23's prerequisites are met.

## III.    ARGUMENT

### A.  The Proposed Class Has Article III Standing

Defendants' argument that certain putative class members lack standing is belied by its own evidence, ignores the nature of actions under Section 502(a)(2) of ERISA and the structure

of the Plan and the investments at issue, and is contrary to the law.  As an initial matter, Plaintiffs

each have standing because they maintained investments in the BlackRock TDFs during the

Class Period and suffered losses.  ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████  With respect to Plaintiff Trauernicht, Defendant's argument, based upon Dr.

Wermers' unreliable analysis, inappropriately restricts analysis to only two of the *four* potential

suitable alternative investments identified in the Complaint, reflects an inappropriate time period,

and is out of sync with the type of loss evidence that courts in the Fourth Circuit and around the

country find proper.[4]  When corrected, this analysis confirms that Plaintiff Trauernicht suffered

losses as a result of Defendant's retention of the BlackRock TDFs.  *See* Marin Report, at 18.

These same flaws imperil Defendant's argument with respect to participants in certain

vintages of the BlackRock TDFs they allege outperformed two of the four comparators pled in

the Complaint.  An honest analysis of the evidence shows that the Plan as a whole suffered losses

and all Plan participants would benefit from recovery.  In fact, ██████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████.  *See* Wermers Report

¶ 44 (Table 6).  This alone satisfies the standing inquiry.[5]

---

[4] Indeed, courts routinely accept evidence that includes comparisons to suitable alternatives identified during litigation by expert analysis and otherwise.  *See Reed v. MedStar Health, Inc.*, 2023 WL 5154507, at *9–*10 (D. Md. Aug. 10, 2023) (accepting expert testimony including comparison to most favorable alternative investments derived during discovery because "[a]t this juncture, the Court is neither determining which methodology to apply in determining losses, nor it is actually awarding damages."); *see also In re Omnicom Group Inc. ERISA Litig.*, 2022 WL 18674830, at *7 (denying summary judgment and *Daubert* motions and finding loss calculations relying on comparators identified by expert admissible in analogous ERISA action).

[5] It also bears noting that *all* Plan participants suffered financial harm as a result of the Plan's imprudent investment options and were deprived of the opportunity to invest in prudent options. These Plan-wide and individual injuries are more than sufficient to establish Article III standing.

To give any credence to Dr. Wermers' report, the Court would need to ignore the comparators identified by Plaintiffs and follow a doctored theory of recovery premised on Defendant's misrepresentations. This effectively asks the Court to find as a matter of law that passive and active funds cannot be compared and preclude possibility that expert finds another plausible alternative, all of which courts routinely decline to do. The Fourth Circuit has rejected this sort of *per se* rule regarding investment selection and monitoring in the context of retirement plans. *Tatum v. RJR Pen. Inv. Comm.*, 761 F.3d 346, 360 (4th Cir. 2014) (rejecting per se rules concerning asset class, investment strategies, and risk levels). Equally, there are no bright line rules concerning the comparison of certain types of investments to determine a plan's losses.

While couched as a challenge to the standing of absent class members, Defendant is really asking the Court to require Plaintiffs to *prove loss*, which they need not do at this stage. "At the class certification stage, [] plaintiffs need only present a workable method for calculating damages on a classwide basis that is consistent with their theory of liability." *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 446 (D. Ariz. 2019); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (finding that a damages model at the class certification stage must be consistent with its liability case).[6] Critically, courts have found that "uncertain damages calculations do not alone defeat certification." *Huu Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019). These principles hold especially firm in the context of ERISA claims, as the Fourth Circuit has adopted a burden shifting framework pursuant to which, once a plaintiff

---

[6] As the Fourth Circuit has recognized, "[a] plaintiff's standing to bring a case does not depend upon his ultimate success on the merits underlying his case." *Peters v. Aetna Inc.*, 2 F.4th 199, 218 (4th Cir. 2021) (citing *Green v. City of Raleigh*, 523 F.3d 293, 299 (4th Cir. 2008)). For this reason, and because of the derivative Plan-wide nature of Plaintiffs' claims and the structure of the investments at issue (as discussed below), Defendants' suggestion that the class should be narrowed to less than all plan participants is nonsensical.

identifies a loss related to a challenged decision, the burden shift to defendant fiduciaries to

disprove that a loss resulted from their challenged conduct.  *See Tatum*, 761 F.3d at 361–63.

Defendant's argument also ignores the structure of ERISA plans and the statute's

remedial scheme, under which individual participants may seek relief on behalf of an entire plan:

> "Courts have recognized that a plaintiff with Article III standing may proceed under § [502](a)(2) on behalf of the plan or other participants." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009). And "[s]ince [Peters] has standing under Article III, we conclude that § [502](a)(2) provides h[er] a cause of action to seek relief for the entire Plan." . . . In other words, Peters "has a personal stake in the litigation" because her requested relief "will stand or fall with that of the Plan." *Id.*; *see Wilmington Shipping Co.* [*v. New Engl. Life Ins. Co.*, 496 F.3d 326, 334 (4th Cir. 2007)] ("[The plaintiff's] injury is no less concrete because the benefit to him from a favorable outcome in this litigation would derive from the restored financial health of the Plan.").

*Peters*, 2 F.4th at 221.  As in *Peters*, Plaintiffs have "adequately demonstrated that [they] and the

Plan suffered a financial injury, she has satisfied the injury-in-fact requirement for Article III

standing."  *Peters*, 2 F.4th at 219; *see also Boley v. Universal Health Servs., Inc.*, 36 F.4th 124,

132 (3d Cir. 2022) ("Article III does not prevent the Named Plaintiffs from representing parties

who invested in funds that were allegedly imprudent due to the same decisions or [conduct.]").

Finally, Defendants press heavily on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190

(2021), but omit the context.  *TransUnion* involved claims that a credit reporting agency violated

the Fair Credit Reporting Act ("FCRA") when it allegedly provided misleading credit reports to

third-party businesses indicating the associated consumers were terrorists, drug traffickers, and

other serious criminals.  141 S. Ct. at 2200.  The Court recognized that those consumers, suing

on a defamation theory, whose inaccurate reports were actually disseminated suffered a concrete

harm.  As for consumers whose inaccurate reports were not disseminated by the agency or who

received mailings with a formatting defect, the Court found such consumers suffered no concrete

harm.  *See id.* at 2213.  In other words, *TransUnion* did not involve a question concerning the

measure of damages associated with the violation alleged (which is, at most, what Defendant's argument raises), but whether the *type of harm alleged* is sufficient to establish concrete harm under Article III.[7]  There is no legitimate question that Plaintiffs allege all class members suffered the type of harm sufficient to establish standing Article III—and the evidence confirms that, if Plaintiffs establish that Defendants imprudently retained the BlackRock TDFs, loss can be shown with respect to all class members.

### B.  Each of the Rule 23(a) Prerequisites are Satisfied

While the Motion establishes each of the Rule 23(a) elements, Defendant ignores fact and law in favor of a contrived conflict of interest and groundlessly implies that Plaintiffs are under Class Counsel's "control."  *See* Memo., at 20.  Despite this transparent attempt to distract from Plaintiffs' well-established grounds for certification, Plaintiffs have clearly met their burden.[8]

#### 1.  Commonality

Rather than try to refute the common questions that Plaintiffs raise, Defendant ignores important context and twist clear precedent to support its conflict argument.  Commonality requires that purported class members "have suffered the same injury," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011), but Defendant over-reads *Dukes* to impose a higher

---

[7] Defendants' other authorities neither extended *TransUnion* nor dealt with ERISA claims or the type of harm alleged in this case.  *See Alig v. Rocket Mortg., LLC*, 52 F.4th 167, 168 (4th Cir. 2022); *Davis v. Cap. One, N.A.*, 2023 WL 6964051, at *3 (E.D. Va. Oct. 20, 2023).  In *Alig*, the Fourth Circuit simply vacated a pre-*TransUnion* order and remanded to the district court for further proceedings applying *TransUnion*, after the Supreme Court instructed the Fourth Circuit to do so.  *See Alig*, 52 F.4th at 168.  *Davis* involved alleged violations of the Telephone Consumer Protection Act ("TCPA") and, there, the Court simply cited *TransUnion* as confirmation that it must conduct a standing analysis—not that the analysis was altered in any way.  2023 WL 6964051, at *3.  In any event, TCPA establishes a statutory violation for unwanted marketing telephone calls.  Like FCRA, conduct that might be a statutory violation of TCPA often raises questions of the type (not degree) of associated harm.  *Id.* at *1.

[8] Defendant does not contest that the numerosity requirement of Rule 23(a)(1) is met.

standard on Plaintiffs than is supportable. The issue that defeated commonality in *Dukes* was that while all the proposed class members suffered a "violation of the same provision of law," the nature of that provision—Title VII—allows it to be "violated in many ways" and the plaintiffs in that case did not plead the *same* violation for all members. *Id.* at 350. Their claims did not depend upon a "common contention" that was "capable of classwide resolution"—one that the "determination of its truth or falsity [would] resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* In contrast, Plaintiffs allege the *same* ERISA violation across all class members: Defendant breached its fiduciary duties owed to the Plan *specifically* by failing to appropriately monitor the Plan's investments and consequently retaining the BlackRock TDFs. *See* Motion, at 1. Courts have acknowledged that important distinction:

> In *Dukes* the conduct in question was the hiring and promotion practices of many managers in many different Wal–Mart Stores. Here, each Plaintiff[s] allege[] the same conduct constituted the same breach of fiduciary duty by the same individuals. Whether or not a breach did indeed occur is a question ripe for classwide resolution.

*Knight v. Lavine*, 2013 WL 427880, at *3 (E.D. Va. Feb. 4, 2013).[9]

"Minor factual variances do not prevent a plaintiff from showing commonality as long as the claims arise from the same set of facts and the putative class members rely on the same legal theory." *Branch v. Gov't Emps. Ins. Co.*, 323 F.R.D. 539, 546 (E.D. Va. 2018) (quoting *Brown*

---

[9] Defendant asserts that *Knight* is irrelevant because the Court did not "address intra-class conflicts as to injury." Memo., at 15. This apparent "lapse" is easily explained by the *non-existence* of such a conflict where, as is the case here,

> [t]he focus will be on the Defendant['s] conduct—conduct which was identical as to each class member. Similarly, the injury alleged is classwide; it does not affect only [Plaintiffs'] individual 401(k) account[s]. Issues of individual losses, and specific damages amounts, will only become relevant if the fact-finder determines that the Defendant[] did indeed breach [its] fiduciary duty, at which point the allocation of damages ought to be quite straightforward.

*Knight*, 2013 WL 427880, at *2.

*v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016)) (internal quotation marks

omitted).  In *DiFelice v. U.S. Airways, Inc.*, this Court also reiterated that "[m]inor differences in

the underlying facts of individual class members' cases do not defeat a showing of commonality

where there are common questions of law."  235 F.R.D. 70, 78 (E.D. Va. 2006) (citation

omitted).  Defendant insists that this Court's ruling in *DiFelice* is inapposite because of a

purportedly greater divergence in interests between Plaintiffs and other Plan participants here.

*See* Memo., at 15–16.  However, this Court found a "clear" case of commonality in *DiFelice*

based on circumstances that mirror those found in this matter:

> This follows from the fact that the central question at issue in this litigation is
> whether [the defendant] breached its fiduciary duty to select and monitor
> investment options prudently. The resolution of this question does not depend on
> which participant brings the action on behalf of the Plan, and therefore the primary
> issue in the case is common to all members of the proposed class. *See, e.g.*, *In re
> Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 465 (E.D. Pa. 2000) ("[T]he appropriate
> focus in a breach of fiduciary duty claim is the conduct of the defendants, not the
> plaintiffs."). Moreover, should this question be answered in the affirmative, the
> following subsidiary issues that must be addressed are similarly common to all class
> members: (1) the point in time at which retention of the [fund] was so imprudent as
> to breach [the defendant's] fiduciary duty; and (2) the losses, if any, suffered by the
> Plan as a result of [the defendant's] breach.

235 F.R.D. at 78 (internal citation omitted).

It follows that the *absence* of any factual distinctions—such as is the case here, where

Defendant's conduct affected the Plan uniformly—further counsels in favor of certification

under Rule 23(a).  Despite Defendant's urging, the Court cannot meaningfully apply *Bond v.

Marriott Int'l, Inc.*, 296 F.R.D. 403 (D. Md. 2014), in this Action, because there is clearly no

"conflict of interest" between the class members when all are subject to Plan-wide misconduct,

and all have been harmed by that misconduct.  *See* Marin Report, at IV.B.  Nor does Defendant's

reliance on *Spano* wash.  This Court has also considered *Spano* in the context of fiduciary duty

claims, accepting the distinction "between an injury to one person's retirement account that

9

affects only that person, and an injury to one account that qualifies as a plan injury." *Knight*, 2013 WL 427880, at *3. This Court determined that the question of "whether the Defendant[] breached [its] fiduciary duty to the plan and the Plaintiffs" falls into the latter category, because Plaintiffs and the purported class members "all claim harm to the plan." *Id.* at *2–3.

Defendant also disregards that the *Spano* court found commonality to be satisfied. *See* Memo., at 15; *Spano*, 633 F.3d at 586. In *Spano*, the Seventh Circuit found "the assertion that [the defendant] has failed to satisfy its fiduciary duties in its selections of investment options" and "whether the package [of investment options offered by each plan] was prudent" constitute problems that "operate across the plan rather than the individual level." *Id.* at 586, 588. The Seventh Circuit acknowledged with approval common questions mirroring those at issue here:

> [W]hether the defendants were fiduciaries; whether they breached their duties to the plan by failing to conduct an appropriate investigation into the soundness of [the] stock; whether they breached their duties by continuing to invest in [the] stock too long; whether they failed adequately to monitor the plan's investment committee defendants; whether they erred by failing to hire independent fiduciaries; and whether their breaches caused plan losses.

*Spano*, 633 F.3d at 584 (citing *In re Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009)). The Fourth Circuit has, likewise, found "common issues of law and fact" to "includ[e], for instance, whether [the defendant] was a fiduciary . . . and whether its breach amounted to a harm as to the particular plan and participants." *Aetna*, 2 F.4th at 243.[10]

---

[10] The court in *Munro* similarly rejected Defendant's reading of *Spano*:

> Not only have courts in this circuit declined to follow *Spano* (*see Northrop*, 2011 WL 3505264, at *11 n.72 ("[T]he court agrees with plaintiffs that Spano reflects a heightened sensitivity to speculative conflicts among class members that is contrary to the law of this Circuit." (quotation marks omitted)), but the Seventh Circuit itself has clarified that *Spano* is limited to proposed classes with "breathtaking[ly] broad definitions" and "vague" allegations, *see Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013) (quoting *Spano*, 633 F.3d at 586). In *Abbott*, the same judge who authored *Spano* dismissed the possibility of disgorgement, finding "no

2.  Typicality

Typicality does *not* require that members of the class have "*identical* factual or legal claims in all respects." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998) (emphasis added).  Rather, the typicality requirement may be met where a class representative is "part of the class and possess[es] the same interest and suffer[s] the same inquiry as the class members." *DiFelice*, 235 F.R.D. at 78–79 (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)); *see Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) ("Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members.").  And because ERISA § 502(a)(2) claims are inherently representative claims, any participant's claim is "necessarily typical" of the claims of the rest of the class because they focus on impact to a plan.  *Id.* at 79 (collecting cases).

Defendant disputes this principle by alleging that Plaintiffs' claims are not typical of the class because Plaintiffs (supposedly) rely on distinct theories of liability, and by asserting that intra-class conflicts defeat those theories.  *See* Memo., at 16.  However, manufactured claims of intra-class conflict are nothing more than speculative concerns—and speculation is not enough to defeat the "low threshold" of the typicality requirement.  *See Boley*, 36 F.4th at 136.  Unlike the cases Defendant cites, there are no present concerns of intra-class conflict in this case.  *See id.* at 135 (distinguishing *Spano* and finding no intra-class conflicts on these facts).

Courts recognize that a "plaintiff's claim and the claims of the class members [need not] be perfectly identical or perfectly aligned, as long as the variation in claims [does not] strike[ ] at the heart of the respective causes of actions." *Branch v. Gov't Emps. Ins. Co.*, 323 F.R.D. 539,

---

risk" that an "investor who benefitted from Lockheed's imprudent management would have her Plan assets reduced as a result of this lawsuit."

2019 WL 7842551, at *6–7.

547 (E.D. Va. 2018) (quoting *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466–67 (4th Cir.

2006)).[11]  "So long as the alleged cause of the injury remains the same across all funds, even

relatively pronounced factual differences will generally not preclude a finding of typicality."

*Boley* at 134 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d

283, 311 (3d Cir. 1998)).[12]  This is particularly true where, as here, there are *no* substantive

factual differences among class members.

 Nor do the "unique defenses" that Defendant invents defeat the typicality of Plaintiffs'

claims.  Whether or not Plaintiffs, or any of the Plan participants, may have made some

independent choices with their investments in the Plan is irrelevant to questions of Defendant's

prudence in managing the Plan.  The *Spano* court rejected a similar argument:

> For example, [the defendant] takes the position that the individual nature of each
> participant's investment decisions, and also the individual response each person
> might have had to the alleged misrepresentations, preclude a finding that common
> questions of law or fact exist. But this assumes that every question must be
> common, and, as we have discussed, that is not what Rule 23(a)(2) demands.

---

[11] This Court in *Branch* explained a key distinction that Defendant fails to heed in this matter.
There, the Court distinguished circumstances where defendants' processes were applied
identically to plaintiffs and class members (meeting the typicality requirement) from the
circumstances found in *Branch*, where the violation "stemmed not from the [challenged process]
itself, but rather from the individualized application of the [process] to [plaintiff]" (failing the
typicality requirement).  *See Branch*, 323 F.R.D. at 548.

[12] Defendant cites authorities without providing necessary context.  *See* Memo., at 16–17.  For
instance, in *Boley v. Brown*, 10 F.3d 218 (4th Cir. 1993), the Fourth Circuit affirmed the denial
of class certification where application of due process standards could result in potentially
different questions.  *See Boley v. Principi*, 144 F.R.D. 305, 308 (E.D.N.C. 1992) ("The
sufficiency of notice under due process standards is necessarily a fact-bound inquiry and the
broad variation possible in notice received . . . .") (internal citation omitted), *aff'd sub nom.
Boley v. Brown*.  As in *Dukes*, the possibility of many *different* ways to violate the standards in
question defeated typicality in *Principi*.  *See id.*  That is not an issue here, where Plaintiffs allege
the same manner of breach of fiduciary duty for the entire Plan.

*Spano*, 633 F.3d at 588.  "Each participant's potential recovery, regardless of the fund in which he or she invested, is under the same legal theory—[Genworth]'s breach of its fiduciary duty under ERISA in managing the Plan's investment options."  *Boley*, 36 F.4th at 134.

Defendant's proposed "participant-by-participant" analysis, *see* Memo., at 18, is inappropriate in the ERISA context for this very reason.  "Because [Plaintiffs'] claims are based on the effect the acts or omissions of [Defendant] had on the value of the Plan, they are essentially identical to the claims of any other participant or beneficiary suing pursuant to ERISA 502(a)(2)."  *DiFelice*, 235 F.R.D. at 79 (citations omitted).  As in *Plotnick*:

> [Defendant's] analogy to *Wiseman* [*v. First Citizens Bank & Trust Co.*, 212 F.R.D. 482 (W.D.B.C. 2003)] fails because the legal issues are entirely different.  In *Wisemen*, determining whether the fiduciary incurred liability with respect to any given participant would have required a participant-by-participant analysis as to whether that participant's losses were traceable to the participant's exercise of control over his or her account.

*Plotnick v. Computer Scis. Corp. Deferred Comp. Plan. for Key Execs.*, 182 F. Supp. 3d 573, 582–83 (E.D. Va. 2016), *aff'd*, 875 F.3d 160 (4th Cir. 2017).  Determining whether Defendant breached its fiduciary duty to monitor investment options prudently concerns ***Defendant's*** conduct.  *See DiFelice*, 235 F.R.D. at 78 (citing *Ikon*, 191 F.R.D. at 465; *see also DiFelice*, 235 F.R.D. at 79 (ERISA claim is "necessarily typical of those of the rest of the class.").

3.  Adequacy

Defendants reload their manufactured conflict argument—this time suggesting Plaintiffs do not have sufficient incentives to litigate on behalf of the Class or are somehow bowing to the control of Class Counsel.  *See* Memo., at 20.  This intimation is dishonest.  As with the other elements of Rule 23(a), "[f]or a defendant to meet its burden in showing inadequacy of representation, a conflict 'must be more than merely speculative or hypothetical."  *Branch*, 323

F.R.D. at 549 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003)). But Defendant offers nothing more than fanciful conspiracy theories.

A class representative needs only a basic understanding of the claims and a willingness to participate in the case. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 367 (1966). This is especially relevant here, as "[t]he complex nature of ERISA fiduciary breach claims requires investors to rely on their attorneys and hired experts, and such reliance does not make" plaintiffs inadequate. *Sims v. BB & T Corp.*, 2017 WL 3730552, at *5 (M.D.N.C. Aug. 28, 2017) (citation omitted). Defendant urges the Court to follow *Shiring v. Tier Technologies, Inc.*, 244 F.R.D. 307 (E.D. Va. 2007), and the more "searching inquiry" employed there. *See City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 683 (D. Md. 2018) (declining to follow *Shiring* and applying "the more lenient standard articulated by the Fourth Circuit in its binding decision in *Gunnells*"). However, *Shiring* is distinguishable:

> In *Shiring*, the court found that the plaintiff was an inadequate class representative because the record showed that he pursued litigation only after being prompted by counsel, took no significant steps to supervise the action, did not participate in drafting the complaint, [] demonstrated a lack of knowledge regarding the allegations, including the positions held by the named defendants and why they were selected as defendants in the first place[.]

*Id*. (internal citation omitted). The same cannot be said of Plaintiffs, who have been engaged in every step of the litigation. *See* Declaration of Peter Trauernicht ("Trauernicht Decl," ECF No. 144-2), ¶¶ 7, 9; Declaration of Zachary Wright ("Wright Decl," ECF No. 144-3), ¶¶ 7, 9. Plaintiffs are committed to seeing this litigation through to the end and take their responsibilities seriously as class representatives. *See* Trauernicht Decl., ¶¶ 10–11; Wright Decl., ¶¶ 10–11.

The *Shiring* court's concern with the named plaintiff's "lack of knowledge" in that case is inapplicable. *See* Memo., at 21. Defendant misstates Plaintiffs' testimony, turning confusion with a questions or avoidance of absolutes into disavowals of claims. *See* Memo., at 20–21. For

14

example, Plaintiff Trauernicht's testimony about the BlackRock TDFs was *not* that they shouldn't have been removed, full-stop, but that he felt that the *theory of the case* was one of "monitoring and oversight that was inadequate, not of, you know, black listing any particular fund." Casey Decl. Ex. 2, Trauernicht Tr. 63:17–22. When asked whether there was anything that made the BlackRock TDFs unsuitable, Plaintiff Trauernicht's *full* testimony was:

> I believe that there is but I will admit ignorance in not understanding the details. I believe it has to do with the volatility of the investments or maybe just the nature in which they performed, but my core understanding is that the root issue was that they weren't being monitored properly by Genworth with regards to the best interests of the Plan.

Casey Decl. Ex. 2, Trauernicht Tr. 63:23–64:10.[13] Similarly, Plaintiff Wright testified that the BlackRock TDFs *could* potentially be retained "*[i]f* Genworth has a more managed approach to it"—emphasizing again that the primary issue is Defendant's failure to prudently select and monitor the investments in the Plan. Casey Decl. Ex. 3. Wright Tr. 129:6–12. Without the fog of Defendant's misrepresentations, Plaintiffs clearly have demonstrated the "basic understanding" of the claims and commitment necessary to be adequate representatives, which makes this case more comparable to this Court's decision in *Morris v. Wachovia Sec., Inc.*, than to its decision in *Shiring*. *See* 223 F.R.D. 284, 296 (E.D. Va. 2004). Plaintiffs' shared interests with other participants and involvement are "certainly sufficient" to establish their adequacy. *Id.*

Defendant also reiterates its flawed quasi-damages analysis in an attempt to defeat adequacy, but this argument fails for the same reason as already discussed: there is no "bona fide conflict of interest" because, contrary to Defendant's repeated assertions, *all* Plan participants

---

[13] Defendant also improperly suggests that Plaintiff Trauernicht disagreed with the proposed class definition. *See* Memo., at 21 n.7. Plaintiff Trauernicht only indicated that he was "not certain whether" specific injuries would have been limited to participants in specific BlackRock funds or if there would be "implications for the whole plan." Trauernicht Tr. 71:8–17.

were harmed by Defendant's imprudence.  *See* Memo., at 22; *see supra* III.A.  All class members

share the same interest in establishing Defendant's liability. *See Knight*, 2013 WL 427880, at *4.

Defendant's counsel attempted this in *Munro*, but the court declined their misdirection:

> Defendants' analysis of the injuries that could befall putative class members under
> a class-wide proceeding appears to rely, to a degree, on a ***misreading of the SAC
> or deponents' statements*** . . . Defendants' opposition brief cites several statements
> by named plaintiffs who testified they are not unhappy with their returns or with
> the recordkeepers. This is beside the point: some participants' satisfaction with the
> performance of their portfolios or desire to retain a particular recordkeeper does not
> create intra-class conflicts. The duty of a fiduciary is to prudently manage a plan in
> the best interests of the plan.

*Munro*, 2019 WL 7842551, at *6–7 (emphasis added).[14]

## C.  The Class may be Certified Under Rule 23(b)(1)

Defendant's Rule 23(b)(1) arguments are factually and legally incorrect.  Far from being

most suited to Rule 23(b)(3) certifications, "the derivative nature of suits brought pursuant to §

502(a)(2) on behalf of the Plan, ERISA litigation of this nature presents a paradigmatic example

of a (b)(1) class." *Knight*, 2013 WL 427880, at *4 (quoting *DiFelice*, 235 F.R.D. at 80).  In

*Knight*, this District clearly summarized the aptness of Rule 23(b)(1) in ERISA actions:

> Suppose two Plaintiffs from the proposed class were to litigate their claims
> individually, and the first Plaintiff prevailed on his claim that the Defendants
> breached their fiduciary duty. The second Plaintiff would argue that the first result
> is preclusive in her case. If the court agreed with her, then Rule 23(b)(1)(B)'s
> requirement would be met because the first Plaintiff's result was dispositive of hers.
> If the court did not find the first result preclusive and the second Plaintiff proceeded
> to trial and lost, then incompatible standards of conduct for the Defendants resulted
> because the exact same actions would be deemed breaches of fiduciary duty (first
> Plaintiff) and also ratified as non-breaches (second Plaintiff).

2013 WL 427880, at *4.  Defendant attempts to avoid this with more manufactured conflicts of

interest and twisted interpretations of authority.

---

[14] Similarly, the *Munro* court recognized, "the harm alleged by Plaintiffs is not zero-sum. In
other words, Plan participants fortunate enough to prosper despite the alleged breaches did not
do so at the expense of those who suffered."  2019 WL 7842551, at *6–7

1.  Certification under Rule 23(b)(1)(A)

Rule 23(b)(1)(A) takes in "cases where the party is obliged by law to treat the members

of the class alike . . . or where the party must treat all alike as a matter of practical necessity[.]"

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (citation omitted).  ERISA breach of

fiduciary duty claims are appropriate for Rule 23(b)(1)(A) certification since "multiple

adjudications could result in incompatible standards of conduct for the Defendant[]."  *Stegemann*

*v. Gannett Co., Inc.*, 2022 WL 17067496, at *11 (E.D. Va. Nov. 17, 2022) (quoting *Knight*, 2013

WL 427880, at *4).  Allowing thousands of individual participants to bring actions when they all

suffered the same injury and are entitled to the same forms of equitable relief (and to seek

recovery of the entire Plan's losses) would lead to varying adjudications with incompatible

standards of conduct.  *See*, *e.g.*, *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191,

198 (S.D. Ohio 2002) ("Simply stated, one court could determine that defendant's practice

violated ERISA, while another court could conclude that it did not.").

Defendant attempts to avoid these clear principles by focus on "monetary damages."  *See*

Memo., at 24–25.  However, this reading of the facts shifts the focus away from what is truly at

issue—whether Defendant breached its fiduciary duties owed to the Plan and Plan participants

by failing to prudently select and retain investments in the Plan.  A judgment for Plaintiffs,

however, *would* "fix the rights and duties owed by the defendants to others," *Green v. Occidental*

*Petro. Corp.*, 541 F.2d 1335, 1340 n. 10 (9th Cir. 1976), which makes Defendant's patchwork

authorities rehashing this point inapposite.[15]  As this District recognized in *Knight*, the risk of

---

[15] *See Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986) (citing *Green*'s footnote 10 as the
basis for its monetary damages holding); *Ross-Randolph v. Allstate Ins. Co.*, 2001 WL
36042162, at *8 (D. Md. May 11, 2001) (same); *Zinser v. Accufix Rsch., Inc.*, 253 F.3d 1180,
1193 (9th Cir. 2001) (same); *Bear v. Oglebay*, 142 F.R.D. 129, 131–32 (N.D.W. Va. 1992)
(citing *Zimmerman* for the same); *In re Sycor ERISA Litig.*, 227 F.R.D. 338, 346 (C.D. Cal.

incompatible standards is high in ERISA actions, where one court could find no breach of duty owed to a ***plan*** where another finds a breach for the same conduct. *See* 2013 WL 427880, at \*4.

This risk is pronounced here, as the Plan's governing documents provide for the uniform treatment of all participants under the Plan. *See* Motion, at 3. Adjudication of Plaintiffs' claims and those of other members of the proposed class in separate proceedings would result in a substantial risk of incompatible standards of conduct for Defendant. Likewise, because "[a]ny recovery of lost benefits will go the Plan" and be distributed "in accordance with the requirements of the Plan and ERISA" (contrary to Defendant's cry of "individual" monetary damages), inconsistent adjudications will clearly bear on Defendant's conduct as it relates to all participants. *See Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 66 (M.D.N.C. 2008).

      2.  <u>Certification under Rule 23(b)(1)(B)</u>

Rule 23(b)(1)(B) is suitable where "individual adjudications" would "be dispositive of the interests of the other members not parties to individual actions." *Stegemann*, 2022 WL 17067496, at \*11 (quoting Fed. R. Civ. P. 23(b)(1)). Far from an "adventurous application," *see* Memo., at 28, "the structure of ERISA favors the principles enumerated under Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants." *Id.* at \*11 n. 11 (quoting *Douglin v. GreatBanc Trust Co., Inc.*, 115 F. Supp. 3d 404, 412 (S.D.N.Y. 2015) (citation omitted).

---

2005) (denying a clear case of certification under *Amchem* because the court is constrained by the *Green*-induced precedent set by *Zinser*). Defendant otherwise relies on cases with incomparable facts. *See McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 477 (E.D.N.C. 2010) ("donning and doffing" claim); *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 524 n. 3 (D. Md. 2001) (finding inconsistent liability determinations in a personal injury protection insurance matter would not affect individual plaintiffs).

For this reason, courts have recognized an implied requirement that participants take steps to appropriately proceed on behalf of a plan and found class certification accomplishes this. "[A]lthough plan participants need not always comply with Rule 23 to act as a representative of other plan participants or beneficiaries, those who do will likely be proceeding in a 'representative capacity' properly for purposes of [ERISA] section 502(a)(2)." *Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006).[16]  Rather than face this reality, Defendant relies on an "expansive reading" of *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008) that has been "rejected by a substantial number of courts"—including this District.  *Stegemann*, 2022 WL 17067496, at *12 (collecting cases).[17]  *LaRue* clearly does not preclude certification:

> That unnamed class members can also seek relief on their own does not defeat certification under Rule 23(b)(1) because whether the Defendants breached their fiduciary duties reaches all potential claims by class members.  *See Kanawi [v. Bechtel Corp.]*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) ("Of course, a fiduciary's breaches can affect more than one defined contribution plan participant.  In that situation, though, the proper approach is joinder of the affected participants or the certification of a class." (quoting *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 266 (D. Mass. 2008))).  In sum, the Supreme Court in *LaRue* merely expanded the scope of section 502(a)(2) suits to "authorize recovery for fiduciary breaches that impair

---

[16] As the court in *Coan* recognized, "as early as 1970, four years before ERISA was enacted, a Senate version of the bill would have required participants and beneficiaries bringing suit for breach of fiduciary duty to bring class actions," and final versions of both House and Senate Bills contained class action requirements.  457 F.3d at 259–60 (citations omitted).  Although ERISA does not contain such a requirement, Congress clearly contemplated class actions as an appropriate, if not the preferred means, of bringing breach of fiduciary duty claims.

[17] Courts in this District have rejected this reasoning.  *See Stegemann*, 2022 WL 17067496, at *12.  Defendant's Ninth Circuit authority defending an over-reading of *LaRue* introduces no new considerations and is unpersuasive.  *See* Memo., at 29–30.  Many courts in the Ninth Circuit have similarly declined to apply that reasoning as it is in conflict with settled principles of law. *See Munro*, 2019 WL 7842551, at *10 ("This is a well-trod argument, and one that courts in the Ninth Circuit and throughout the country frequently reject."); *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 144 (S.D.N.Y.2010) ("In this case, any one participant's claim would, as a practical matter, be dispositive of the interests of fellow Plan members because § 502(a)(2) claims must be brought in a representative capacity on behalf of the entire plan, and the relief granted by the Court to remedy a breach of fiduciary duty would 'inure[ ] to the benefit of the plan as a whole,' not to the individual plaintiff . . . .").

the value of plan assets in a participant's individual account," *see [LaRue,]* 552 U.S. at 256.

*Id.*  Nor does *LaRue* prevent certification under *either* Rule 23(b)(1)(A) *or* Rule 23(b)(1)(B).

## IV.    **CONCLUSION**

The Court should grant the Motion.

DATED: December 18, 2023                                  Respectfully Submitted,

/s/ *Glenn E. Chappell*
Glenn E. Chappell (Bar No. 92153)
Lauren Kuhlik (Bar No. 92349)
TYCKO & ZAVAREEI, LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: gchappell@tzlegal.com
          lkuhlik@tzlegal.com

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
          lrubinow@millershah.com

James C. Shah
Alec J. Berin
John C. Roberts
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
          ajberin@millershah.com
          jcroberts@millershah.com

*Attorneys for Plaintiffs, the Plan
and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 18, 2023, the foregoing Motion was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.

*/s/ Glenn E. Chappell*
Glenn E. Chappell