IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PETER TRAUERNICHT, et al.,

    Plaintiffs,

v.                                    Civil Action No. 3:22-cv-532

GENWORTH FINANCIAL, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF No. 143) ("the Motion") and the supporting, opposing, and reply memoranda (ECF Nos. 144, 157, 164). For the following reasons, the Motion will be granted with modifications to the class definition.

## BACKGROUND

### I. Factual Background

Class Representatives Peter Trauernicht and Zachary Wright ("Plaintiffs"), on behalf of themselves, the Genworth Financial Inc. Retirement and Savings Plan (the "Plan"), and all other similarly situated individuals (referred to collectively as the "class members"), filed suit against Genworth Financial, Inc. ("Genworth" or "Defendant") alleging that Genworth breached its fiduciary duties under the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001 et seq. ECF No. 103 ("Second Amended Class Action Complaint" or "SAC") ¶ 1.

Plaintiffs are former employees of Genworth and participated in Genworth's Retirement and Savings Plan, which is a defined contribution plan. SAC ¶¶ 9-10, 18. In a defined contribution plan, each participant has an individual account and can direct contributions into one or more investment options preselected by the Plan's administrators. 29 U.S.C. § 1002(34); SAC ¶ 18. If participants did not make an investment election, their contributions would be automatically invested in the Plan's Qualified Default Investment Alternative ("QDIA")—in this case, the BlackRock LifePath Index Funds ("BlackRock TDFs"). SAC ¶ 32. Approximately ninety-five percent of Plan participants had assets invested in the BlackRock TDFs. SAC ¶ 33.

The Plan is governed by ERISA, which, among other things, imposes fiduciary duties "on those responsible for the administration of employee benefit plans and the investment and disposal of plan assets." Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 355 (4th Cir. 2014). According to Plaintiffs, Genworth violated those fiduciary duties because it failed to appropriately monitor, and as a result, imprudently retained the BlackRock TDFs in the Plan despite their significant underperformance. SAC ¶¶ 1, 6, 57-63. Plaintiffs say that Genworth's failure to jettison the BlackRock TDFs and replace them with a suitable alternative caused

2

significant losses to the Plan. SAC ¶ 63. Plaintiffs seek to recover those losses and obtain any appropriate equitable relief on behalf of the Plan and on behalf of a class of plan participants and beneficiaries pursuant to 29 U.S.C. § 1109(a) and § 1132(a)(2). ECF No. 144 at 6.

> Plaintiffs propose the following class:

> All participants and beneficiaries in the Genworth Financial Inc. Retirement and Savings Plan at any time on or after August 1, 2016 and continuing to the date of judgment, or such earlier date that the Court determines is appropriate and just, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

SAC ¶ 69.[1] Plaintiffs move the Court for an Order certifying the proposed class under Federal Rule of Civil Procedure 23(b)(1), appointing Plaintiffs as the class representatives, and appointing Plaintiffs' counsel as counsel for the class. ECF No. 143 at 1.

Genworth opposes class certification. Genworth says that Trauernicht lacks Article III standing, Plaintiffs have not met their burden on the Rule 23(a) requirements, and that the class is not appropriate for certification under Rule 23(b)(1). ECF No. 157.

## II. Procedural Background

On April 17, 2023, Plaintiffs filed their SECOND AMENDED CLASS ACTION COMPLAINT (ECF No. 103). The Court granted DEFENDANT'S

---

[1] Plaintiffs stated at the hearing that the Class Period should start on August 1, 2016 rather than on July 29, 2016 as was stated in the SAC. ECF No. 194 at 56:2-8.

3

PARTIAL MOTION TO DISMISS UNDER RULE 12(b)(1) (ECF No. 106), dismissing Plaintiffs' request for prospective injunctive relief, and denied DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6) (ECF No. 104). ECF No. 139. On May 29, 2024, the Court denied DEFENDANT'S MOTION TO EXCLUDE THE EXPERT OPINIONS AND TESTIMONY OF RICHARD MARIN (ECF No. 195) and DEFENDANT'S MOTION TO EXCLUDE THE EXPERT OPINIONS AND TESTIMONY OF ADAM WERNER (ECF No. 201). ECF No. 310.

Also pending before the Court are Plaintiffs' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF LORIE L. LATHAM AND RUSSELL R. WERMERS, PH.D. (ECF No. 207) and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 213).

DISCUSSION

## I. Legal Standard

### A. ERISA § 502(a)(2) Actions

ERISA imposes fiduciary duties "on those responsible for the administration of employee benefit plans and the investment and disposal of plan assets." Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 355 (4th Cir. 2014). A fiduciary must act "solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an

4

enterprise of a like character and with like aims." 29 U.S.C. §
1104(a)(1)(B). Any plan fiduciary who breaches those duties:

> shall be personally liable to make good to such plan any
> losses to the plan resulting from each such breach, and
> to restore to such plan any profits of such fiduciary
> which have been made through use of assets of the plan
> by the fiduciary, and shall be subject to such other
> equitable or remedial relief as the court may deem
> appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), creates a cause of
action for the Secretary, plan participants, beneficiaries, and
fiduciaries to pursue the relief provided for in 29 U.S.C. §
1109(a), but only in a representative capacity on behalf of the
plan (i.e., as a derivative action). Peters v. Aetna Inc., 2 F.4th
199, 215-16 (4th Cir. 2021); Mass. Mut. Life Ins. Co. v. Russell,
473 U.S. 134, 142 n.9 (1985). As a result, "[a]ny recovery under
§ 502(a)(2) [goes directly] to the Plan, as 'a plan participant
may not sue under ERISA § 502(a)(2) unless [s]he seeks recovery on
behalf of the plan.'" Peters, 2 F.4th at 216 (quoting Wilmington
Shipping Co. v. New Engl. Life Ins. Co., 496 F.3d 326, 334 (4th
Cir. 2007)).

## B. Requirements of Rule 23 for Class Certification

Federal Rule of Civil Procedure 23 governs class
certification. The party moving for class certification must
satisfy all four requirements of Rule 23(a) and at least one of
the three subsections of Rule 23(b). Comcast Corp. v. Behrend, 569

5

U.S. 27, 33 (2013). Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition, the Fourth Circuit has also recognized an implicit requirement that the class be defined in a "readily identifiable" or "ascertainable" way. EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014). "A class cannot be certified unless a court can readily identify the class members in reference to objective criteria." Id.

As for Rule 23(b), Plaintiffs move for certification under subsection (b)(1). ECF No. 144 at 2. That provision permits class certification if "prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1).

While "[i]t is the plaintiffs' burden to demonstrate compliance with" those requirements of Rule 23, the District Court "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." EQT Prod., 764 F.3d at 358. To that end, "Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Each prerequisite must be affirmatively demonstrated and proved in fact. Id. That frequently will "entail some overlap with the merits of the plaintiff's underlying claim." Id. at 351. However, "free-ranging merits inquiries" are not permitted at the class certification stage. Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent-but only to the extent-that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Id.

## II. Analysis

### A. Whether Plaintiffs Have Demonstrated Article III Standing

Article III standing is a constitutional requirement that must be satisfied for a federal court to have jurisdiction over a party's claims. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). Article III standing requires (i) "an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TranUnion

LLC v. Ramirez, 594 U.S. 413, 423 (2021). Plaintiffs must demonstrate standing "for each claim that they press and for each form of relief that they seek." Id. at 431. Finally, standing must be proved "with the [same] manner and degree of evidence [as] required" at the current stage of the litigation. Lujan, 504 U.S. at 561.

Genworth argues that the class cannot be certified because Plaintiffs have failed to adduce evidence that each class member has suffered an injury-in-fact.[2] ECF No. 157 at 11. At the class certification stage, however, the standing inquiry focuses on the

---

[2]     Genworth argues that TransUnion requires Plaintiffs to establish standing for every putative class member prior to class certification. ECF No. 157 at 11-12. That is incorrect. TransUnion states that "[e]very class member must have Article III standing in order *to recover* individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" 594 U.S. at 431 (emphasis added)(quoting Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 466 (2016)). The Court, however, noted that it did not "address the distinct question whether every class member must demonstrate standing *before* a court certifies a class." Id. at 431 n.4. The Court only held that a court cannot order relief to uninjured class members—a stage of litigation which this case has not yet reached.
        Subsequently, in Alig v. Rocket Mortg., LLC, the Fourth Circuit reiterated what was said in TransUnion without resolving the issue. 52 F.4th 167, 168 (4th Cir. 2022) ("to recover damages . . . '[e]very class member must have Article III standing' 'for each claim that they press,' requiring proof that they 'suffered concrete harm' from the challenged conduct."). But in Carolina Youth, the Fourth Circuit squarely held that, for purposes of class certification, only the class representatives must demonstrate standing. 60 F.4th at 779.
        To the extent that Genworth argues that the class definition sweeps too broadly and encapsulates uninjured individuals, that is best addressed under the Rule 23(a) factors assessing whether Plaintiffs' claims are typical of the class. See 1 Newberg and Rubenstein on Class Actions § 2:3 (6th ed. 2022); Urakhchin v. Allianz Asset Management of America, L.P., No. 8:15-cv-1614, 2017 WL 2655678, at *3 (C.D. Cal. June 15, 2017). Additionally, if some members of the class are later determined to have suffered no losses to their individual accounts, those accounts can be excluded from the recovery, alleviating Genworth's Article III and Rules Enabling Act concerns for absent class members. See Cordoba v. DIRECT TV, LLC, 942 F.3d 1259, 1277 (11th Cir. 2019)("a court might reasonably certify a class that includes some putative members who might not have satisfied the requirements of Lujan and decide to deal with the problem later on in the proceeding, but before it awarded any relief.").

standing of the class representatives. <u>Carolina Youth Action Project; D.S. by and through Ford v. Wilson</u>, 60 F.4th 770, 779 (4th Cir. 2023). "Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court [and] there is no further, separate 'class action standing' requirement." <u>Id.</u> (quoting 1 <u>Newberg and Rubenstein on Class Actions</u> § 2:1 (6th ed. 2022)). Therefore, "the proponent of the class suit need not demonstrate that each member has standing" to obtain class certification. <u>Id.</u> (quoting 1 <u>Newberg and Rubenstein on Class Actions</u> § 2.3 & n.15 (6th ed. 2022)). Additionally, the fact that Plaintiffs are suing in a representative capacity on behalf of the Plan does not change the standing analysis. "A plaintiff with Article III standing may [also] proceed under § [502](a)(2) on behalf of the plan or other participants." <u>Peters</u>, 2 F.4th at 221 (quoting <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 593 (8th Cir. 2009)).

The Court finds that Plaintiffs Trauernicht and Wright possess standing for each claim pressed and for each form of relief sought. The SAC currently presents only claims for declaratory relief and monetary damages pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), because the claims for prospective relief were previously dismissed. SAC ¶ 91; ECF No. 139; ECF No. 194 at 22:19-23:3. Each remaining claim is addressed in turn.

The injury-in-fact requirement is satisfied for a declaratory relief claim under ERISA if the plaintiff plausibly alleges a violation of a fiduciary duty owed to him/her. Peters, 2 F.4th at 220-21; Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 610 (6th Cir. 2007). Allegations of individualized financial injuries are not necessary for this type of relief. Peters, 2 F.4th at 220 ("identifying a financial injury is unnecessary to establish standing for surcharge and declaratory and injunctive relief."). Here, Plaintiffs have alleged fiduciary duties owed to them and the Plan and that Genworth violated those duties by failing to monitor and remove imprudent investment options from the Plan. SAC ¶ 6. Furthermore, that conduct is alleged to have caused injuries, and declaratory relief would redress the alleged injuries. Thus, Plaintiffs have satisfied the Article III standing requirement to pursue declaratory relief under ERISA § 502(a)(2) on the merits.

For monetary damages or restitution claims, however, Plaintiffs must also demonstrate individualized financial harm resulting from the breach of the alleged fiduciary duty. See Peters, 2 F.4th at 221 ("[W]e are satisfied that, at a minimum, Peters demonstrates a financial injury sufficient to establish standing so as to proceed with her restitution claim."); Harley v. Minn. Min. and Mfg. Co., 284 F.3d 901, 906-08 (8th Cir. 2002) (holding that plaintiffs lacked standing to recover losses to the plan because such losses "did not cause actual injury to

plaintiffs' interests in the Plan."). Genworth argues that Trauernicht has not suffered any financial losses to his individual account from the retention of the BlackRock TDFs and therefore lacks standing to pursue relief as a class representative. ECF No. 157 at 13.

Genworth's argument ultimately reflects a disagreement over the proper measurement of damages. The damages model involves (i) identifying a suitable alternative investment for the BlackRock TDFs, (ii) modeling the Plan's return on investment assuming that the BlackRock TDFs would be replaced with that suitable alternative investment on a specified date, and (iii) calculating the difference between the Plan's actual aggregate account balances with the BlackRock TDFs and the hypothetical aggregate account balances under the suitable alternative. EXPERT REBUTTAL REPORT OF RICHARD A. MARIN TO THE REPORT OF RUSSELL R. WERMERS, PH.D AND IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF No. 163-1) ¶ 28; See also Pizarro v. Home Depot, Inc., No. 1:18-cv-01566, 634 F. Supp. 3d 1260, 1286 (N.D. Ga. Sept. 30, 2022) ("Determining whether a loss occurred as a result of the fiduciaries' breach of duty requires a comparison between the challenged plan's actual performance and performance that would have otherwise occurred . . . ."). The SAC proposes four suitable alternatives to the BlackRock TDFs: the Vanguard Target Retirement Funds, the Fidelity Freedom Index Funds, the T. Rowe Price

Retirement Funds, and the American Funds Target Date Retirement Funds. SAC ¶ 42. The parties' experts disagree over which of those funds could be considered suitable replacements for the BlackRock TDFs, and depending on which is chosen for the damages model, Trauernicht may or may not have suffered losses to his individual account.

In EXPERT REPORT OF RUSSELL R. WERMERS, PH.D. IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, Wermers, speaking for Genworth, notes that the Vanguard Target Retirement Funds and the Fidelity Freedom Index Funds (the "Passive Comparators") are TDFs which invest only in passively managed underlying funds, similar to the BlackRock TDFs. ECF No. 157-1 ¶¶ 37-38. However, the T. Rowe Price Retirement Funds and American Funds are TDFs which invest in actively managed underlying funds. Id. Wermers concludes that those two "Active Comparators" should not be considered comparators (or suitable alternatives) to the BlackRock TDFs because they employ a fundamentally different investment strategy by investing in actively managed funds. Id. ¶¶ 20-23, 38. Actively managed funds attempt to outperform the broader market (e.g., the S&P 500) whereas passively managed funds (or index funds) seek to track a market index and generally do not outperform that index. Id. ¶¶ 22-23.

12

Wermers then analyzes both Trauernicht's and Wright's individual account performance had they been invested in either of the two "Passive Comparators" rather than the BlackRock TDFs, assuming that each Plaintiff would have made the same contributions and withdrawals. Id. ¶¶ 61, 63. Wermers found that Wright's individual account would have fared better if invested in either one of the Passive Comparators.[3] Id. ¶ 63. However, Trauernicht's individual account performed worse when invested in the Passive Comparators compared to the BlackRock TDFs. Id. ¶ 63. In other words, according to Genworth, Trauernicht was better off with the status quo, and he, therefore, has suffered no financial harm.

Plaintiffs' expert, Richard Marin, disagrees with Wermers' opinion that the BlackRock TDFs could not be replaced with one of the two "Active Comparators" for purposes of calculating losses and says that Wermers should not have limited his analysis to only the two Passive Comparators. ECF No. 163-1 ¶¶ 31-42. Marin says that whether a TDF invests in "active" or "passive" underlying fund strategies is something for a plan fiduciary to consider in selecting and maintaining an investment option, but it is not a reasonable basis to exclude either strategy from consideration

---

[3] Wermers notes that Wright elected to transfer his assets from Genworth's Plan into an IRA on March 31, 2020. ECF No. 157-1 ¶ 63. Had Wright retained his retirement savings in the Plan through September 30, 2023, he would have been better off invested in the BlackRock TDFs than in either of the Passive Comparators. Id.

altogether. Id. ¶¶ 32, 38, 41. Marin points out that both Active Comparators outperformed the BlackRock TDFs in every vintage over the class period, and excluding those two funds from consideration as suitable alternatives ignores Plaintiffs' theories of harm stated in the Complaint. Id. ¶¶ 39-40.

Marin then analyzed how Wright's and Trauernicht's accounts would have fared had they been invested in either of the Active Comparators and found that both named Plaintiffs would have had higher balances than they did invested in the BlackRock TDFs (i.e., they suffered losses in a scenario in which the BlackRock TDFs are replaced with one of the actively managed funds). Id. ¶¶ 52-53.

Marin subsequently filed a report in which he used a ranked scoring analysis to determine that the American Funds TDF R6 suite (one of the Active Comparators) would be the most suitable replacement for the BlackRock TDFs. EXPERT REPORT OF RICHARD A. MARIN (ECF No. 217-3). Plaintiff's other expert, Adam Werner, then calculated losses to the Plan based on the assumption that the BlackRock TDFs would have been replaced with the American Funds TDF R6 suite by the first quarter of 2017. SUPPLEMENTAL EXPERT REPORT OF DR. ADAM WERNER (ECF No. 205-3). According to Werner, the Plan suffered $34,617,032 million in total losses under that scenario. Id. at 9. The Court previously held that both experts' testimony is admissible. ECF No. 310.

At bottom, the parties' experts disagree over which funds could serve as suitable replacements for the BlackRock TDFs. According to Wermers, the BlackRock TDFs could only be replaced by one of the Passive Comparators, and under that scenario, many putative class members, including Trauernicht, would have been worse off and therefore lack standing. According to Marin, however, the BlackRock TDFs would have been replaced with the American Funds TDF R6 suite—an actively managed fund—and under that scenario, both Plaintiffs and nearly all, if not all, class members would have fared better, and thus, suffered an injury caused by the retention of the BlackRock TDFs.

That dispute is one that eventually must be resolved, but not at this juncture. Demonstrating financial injury in the context of standing is different than in the context of the merits. Plaintiffs do not have to prove that they have suffered financial injury to establish standing. Green v. City of Raleigh, 523 F.3d 293, 299 (4th Cir. 2008)("standing to bring a case does not depend upon [plaintiff's] ultimate success on the merits underlying his case[.]"); Peters, 2 F.4th at 217-18 (distinguishing between financial injury in the context of standing as opposed to on the merits). Rather, standing is a threshold inquiry to determine whether the court may proceed to the merits. Peters, 2 F.4th at 217. Standing need only be proved "with the [same] manner and degree of evidence [as] required" at the current stage of

litigation. Lujan, 504 U.S. at 561. Thus, the question becomes whether the burden of proof at class certification would require the Court to resolve the dispute over a proper suitable replacement for the BlackRock TDFs in order for Trauernicht to establish his constitutional standing to proceed past class certification.

At the class certification stage, the Court must perform a rigorous analysis to determine whether Plaintiffs have satisfied the Rule 23 requirements, but the Court has no license to engage in merits inquiries beyond that scope. Amgen, 568 U.S. at 465-66. In the context of damages, Rule 23 simply requires that losses be capable of measurement on a class-wide basis. See Comcast Corp. v. Behrend, 569 U.S. 27, 35 (2013)("Calculations need not be exact, . . ., but at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case . . .)(internal citations omitted); see also In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 325 (3d Cir. 2008)("the question at class certification stage is whether, if such impact is plausible in theory, it is also susceptible to proof at trial through available evidence common to the class); Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC, 31 F.4th 651, 680-82 (9th Cir. 2022)("the district court determined that Dr. Mangum's pooled regression model was capable of showing that the DPP class members suffered antitrust impact on a class-wide basis, notwithstanding Dr. Johnson's

16

critique. This was all that was necessary at the certification stage.").

Here, Plaintiffs easily satisfy that requirement because their model is consistent with their liability case and is capable of calculating Plan-wide losses systematically across the entire Plan. Further inquiry into whether Plaintiffs have actually proved the Plan's losses, and Trauernicht's injury-in-fact, through the identification of a suitable alternative is inappropriate at this stage. The important consideration is that, under Plaintiff's theory of damages, Genworth would have adequately monitored the BlackRock TDFs, removed them from the Plan's offerings by a certain date, and replaced them with a more prudent fund resulting in better returns for the Plan—a plan-wide decision that would have affected all class members similarly for purposes of Rule 23. The actual likelihood of Genworth swapping out the BlackRock TDFs specifically for the American Funds TDF R6 Suite is a merits issue reserved for trial, not class certification.

In any event, the Court finds it plausible that the BlackRock TDFs could have been replaced with an actively managed TDF such as the American Funds TDF R6 Suite. Although Genworth articulates how actively managed TDFs differ from passively managed TDFs, Genworth does not explain why a prudent fiduciary should be limited to only one type of strategy in considering possible alternatives to the

BlackRock TDFs.[4] ECF No. 163-1 ¶¶ 32, 41. In fact, the cases on which Genworth relies for its position suggest that plans should offer actively managed funds as an option to investors. See, e.g., Davis v. Wash. Univ. in St. Louis, 960 F.3d 478, 485 (8th Cir. 2020)(acknowledging that passively managed and actively managed funds are "apples and oranges" but that it is "not imprudent for a fiduciary to provide both investment options" because the "different aims, different risks, and different rewards" of these types of funds can "cater to different investors."); Smith v. CommonSpirit Health, 37 F.4th 1160, 1166 (6th Cir. 2022)(Actively managed funds "represent a common fixture of retirement plans, and there is nothing wrong with permitting employees to choose them in hopes of realizing above-average returns over the course of the long lifespan of a retirement account . . . It is possible indeed that denying employees the option of actively managed funds, especially for those eager to undertake more or less risk, would itself be imprudent."). And, Wermers, Genworth's expert, even acknowledges an "industry-wide flow of assets from active to passively managed funds" which indicates that plan managers and participants substitute between these two types of funds even if

---

[4] Genworth says that the performance of an actively managed fund should not be used to judge the performance of a passively managed fund due to their differences in investment strategies. ECF No. 157-1 at n.1. This point is relevant for evaluating the performance of the BlackRock TDFs and whether they were an imprudent investment. However, for purposes of selecting a suitable alternative fund, the question is not whether the funds' performance can be meaningfully compared ex-post, but whether the alternative fund could serve the needs of the Plan according to its IPS.

they employ fundamentally different strategies. ECF No. 157-1 ¶ 21. Thus, it is not implausible to accept that Genworth could have switched from the BlackRock TDFs to an actively managed fund like the American Funds TDF R6 suite. The Court, however, reserves for trial the question of whether that scenario would have been appropriate in the context of this Plan and its participants.

With that understanding, Plaintiffs Wright and Trauernicht have sufficiently demonstrated Article III standing under their proposed model of damages to pursue their claims on the merits.

**B. Whether the Rule 23(a) Requirements Have Been Satisfied**

**1. Whether the Class is Ascertainable**

In addition to the enumerated Rule 23(a) factors, the Fourth Circuit has recognized an implicit requirement that the class be defined in a "readily identifiable" or "ascertainable" way. EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014). "A class cannot be certified unless a court can readily identify the class members in reference to objective criteria." Id. "The goal is not to 'identify every class member at the time of certification,' [] but to define a class in such a way as to ensure that there will be some 'administratively feasible [way] for the court to determine whether a particular individual is a member' at some point." Krakauer v. Dish Network, LLC, 925 F.3d 643, 658 (4th Cir. 2019)(internal citations omitted).

Plaintiffs say that the putative class is ascertainable because it is defined based on participation in the Plan. ECF No. 144 at 7. Therefore, the class members can be identified in an administratively feasible way from a review of the Plan's own records. ECF No. 144 at 7. Genworth does not dispute that assertion.

As discussed below, the Court will modify the class definition to Plan participants and beneficiaries whose accounts were invested in the BlackRock TDFs during the Class Period. Nevertheless, the Court still finds the ascertainability requirement satisfied because it is clear that the Plan participants and beneficiaries who were invested in the BlackRock TDFs within a given time period should be easily identifiable from the Plan's own records.

### 2. Whether the Numerosity Requirement is Satisfied

The numerosity prong of Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Plan had more than 4,000 participants and beneficiaries during the Class Period, and at least ninety-five percent of those plan participants were invested to some degree in the BlackRock TDFs. See DECLARATION OF JOHN C. ROBERTS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF No. 144-1); June 10, 2021 Minutes at 2 (ECF No. 157-4). Thus, the putative class includes thousands of individuals.

20

The parties agree that the class is sufficiently numerous to make joinder impracticable. ECF No. 144 at 8; ECF No. 157 at 14. The Court therefore finds that the class, as modified, is sufficiently numerous. See In re Zetia (Ezetimibe) Antitrust Litigation, 7 F.4th 227, 234 (4th Cir. 2021)(finding that a class of 40 or more members raises a presumption of impracticability of joinder).

### 3. Whether the Commonality Requirement is Satisfied

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To prevail on commonality, Plaintiffs must show that the putative class has "suffered the same injury." Dukes, 564 U.S. at 350. In other words, that their claims "depend upon a common contention" whose determination will "resolve an issue that is central to the validity of each one of the claims in one stroke." Id. What matters is whether the common questions will "generate common answers apt to drive the resolution of the litigation." Id. So long as "a single issue common to the class" exists, commonality will be satisfied. Soutter v. Equifax Info. Servs. LLC, 307 F.R.D. 183, 199 (E.D. Va. 2015); Dukes, 564 U.S. at 359.

ERISA § 502(a)(2) actions inherently present issues common to the class because liability arises out of the defendant's conduct with respect to the plan which does not vary depending on which participant brings the action. See DiFelice v. U.S. Airways, Inc.,

21

235 F.R.D. 70, 78 (E.D. Va. 2006). Here, the common contention is that Genworth breached its fiduciary duty to the Plan by failing to monitor, and as a result, imprudently retaining the BlackRock TDFs. Plaintiffs correctly state, that based on that contention, the following common subsidiary issues exist for all class members: (1) whether the defendant was a fiduciary; (2) whether defendant breached its duties to the Plan by failing to conduct an appropriate investigation into the continued investment in the BlackRock TDFs; (3) whether it failed to adequately monitor the plan's investment committee; (4) whether it failed to hire independent fiduciaries; and (5) whether the breaches caused plan losses. ECF No. 144 at 9-10 (quoting Peters v. Aetna Inc., 2 F.4th 199, 243 (4th Cir. 2021)). Those questions are central to the validity of each of the class members' claims and will undoubtedly "generate common answers apt to drive the resolution of the litigation." Dukes, 564 U.S. at 350.

Genworth, however, argues that commonality is not satisfied because the class members have not suffered the same injury, or in some cases, any injury. ECF No. 157 at 14 (citing Dukes, 564 U.S. at 349-50). Genworth's argument essentially focuses on whether the relief Plaintiffs seek would benefit all Plan participants, but that is an issue better addressed under the typicality and adequacy requirements. For purposes of commonality, Plaintiffs need only

demonstrate a single contention common to the class, and they have gone well beyond that.

**4. Whether Plaintiffs' Claims and Defenses Are Typical of the Class**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality facet of the analysis ensures that the representative party's claims are sufficiently aligned with those of the absent class members such that the interests of the absent class members will be fairly and adequately protected. Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). Thus, the representatives must "'possess the same interest and suffer the same injury as the class members.'" Id. (quoting Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982)). The claims need not be perfectly identical, but "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." Id. at 466-67.

"[G]iven the representative nature of a suit filed pursuant to ERISA [§] 502(a)(2)," the class representatives' claims are inherently typical of those of the rest of the class. DiFelice, 235 F.R.D. at 79. Each § 502(a)(2) claim is essentially identical for each participant and arises out of the same alleged course of conduct—the breach of fiduciary duty to the plan. Id.; Munro v.

Univ. of S. California, No. 2:16-CV-06191, 2019 WL 7842551, at *5 (C.D. Cal. Dec. 20, 2019); 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1764 (4th ed.)(Typicality will usually be satisfied if the claims "stem from a single event or a unitary course of conduct.").

Genworth, however, contends that typicality is not satisfied for a few reasons. ECF No. 157 at 16. First, Genworth says that the class definition sweeps too broadly. Id. Plaintiffs' claim arises out of the alleged imprudent monitoring and retention of the BlackRock TDFs. ECF No. 144 at 5. However, the proposed class includes all Plan participants and beneficiaries during the Class Period, some of whom did not invest in the BlackRock TDFs at all. See June 10, 2021 Minutes at 2 (ECF No. 157-4). The Court agrees that the Plan participants who did not invest in the BlackRock TDFs have not suffered the same injury (if any injury) or do not possess the same interests as Plaintiffs. Accordingly, the Class will be limited to those Plan participants and beneficiaries who were invested in the BlackRock TDFs during the Class Period.[5] Such a limitation is consistent with other class definitions which have been certified in similar cases. See Tatum v. R.J. Reynolds Tobacco Co., 254 F.R.D. 59, 64 (M.D.N.C. 2008); DiFelice, 235 F.R.D. at

---

[5] Plaintiffs stated at the hearing that they agree to this modification of the class. ECF No. 194 at 5:1-19.

73; <u>Stegemann v. Gannett Co., Inc.</u>, No. 1:18-CV-325, 2022 WL 17067496, at *13 (E.D. Va. Nov. 17, 2022).

Second, Genworth claims that, even for the class members whose accounts held the BlackRock TDFs, typicality is not satisfied because those class members invested at different times, in different vintages, and with different results. ECF No. 157 at 16. On this point, Genworth overlooks the representative nature of Plaintiffs' § 502(a)(2) claims. Plaintiffs' and the class members are suing on behalf of the Plan and seeking recovery for the Plan rather than for individual relief. <u>DiFelice</u>, 235 F.R.D. at 78. Thus, Plaintiffs' claims and the absent class members' claims are essentially identical—each is on behalf of the Plan, alleging the same breach of fiduciary duty to the Plan, and seeking the same recovery to the Plan as a whole. <u>Id.</u> at 79. Thus, by advancing their derivative claims, Plaintiffs will inherently advance the absent class members' derivative claims as well. The individual variation in the timing and investment choices of Plan participants is not relevant unless and until it becomes necessary to allocate Plan losses to specific accounts. <u>Id.</u> at 78. Minor differences in outcomes for Plan participants do not defeat typicality.

Still, Genworth says that intra-class conflicts exist among class members because some participants who invested in the BlackRock TDFs would fare worse under Plaintiff's proposed theory of recovery. ECF No. 157 at 18. In other words, some Plan

participants may have profited from the allegedly imprudent investments and therefore do not share the same interests as Plaintiffs. This argument likewise fails. As discussed under the standing analysis, Plaintiffs have selected the American Funds TDF R6 suite as the BlackRock TDFs' replacement. ECF No. 217-3 ¶ 45. And Genworth's own expert acknowledges that every BlackRock TDF vintage performed worse over the Class Period relative to that fund. ECF No. 157-1 at Table 6. So, it would appear that most Plan participants who invested in the BlackRock TDFs did fare worse under Plaintiffs' proposed damages model, assuming that the BlackRock TDFs would have been replaced with the American Funds TDF R6 suite.

That a small portion of unnamed class members who invested in the BlackRock TDFs did not suffer losses in their individual accounts due to the timing of their investments or for other reasons does not create intra-class conflicts.[6] See ECF No. 157-1 ¶ 48. Any participants or beneficiaries who profited from the retention of the BlackRock TDFs would not have to pay back their gains, and thus, would not be harmed if Plaintiffs were to prevail.[7]

---

[6] Additionally, certifying a class that may encapsulate some uninjured class members does not necessarily violate Article III or the Rules Enabling Act because those class members can later be identified and excluded from any recovery if necessary. See Cordoba, 942 F.3d at 1277.

[7] Genworth also cites to some cases finding class conflicts where the plaintiffs seek some form of equitable relief that would stand to harm some class members prospectively, but those cases are distinguishable. See Plotnick v. Computer Scis. Corp. Deferred Comp. Plan for Key Executives, 182 F. Supp. 3d 573, 584-85 (E.D. Va. 2016)(seeking to invalidate a plan amendment which could stand to harm some class members who continued to

See <u>Clark v. Duke University</u>, No. 16-CV-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018)("Even if the defendants could identify class members that profited from the alleged imprudent investments, no conflict would exist. The defendants have cited no case for the proposition that a class member who profited from investing in a particular fund would be forced to pay money back to the Plan if the Plan's inclusion of that fund violated the Plan's fiduciary duties."); <u>Sims v. BB & T Corp.</u>, No. 15-CV-732, 2017 WL 3730552, at *3 (M.D.N.C. Aug. 28, 2017)("There is no requirement that Plan participants forfeit investment gains acquired as a result of a breach of fiduciary duty, . . . ."); <u>Munro</u>, 2019 WL 7842551, at *7 ("Participants who profited from allegedly imprudent investment options will not have to pay back their gains."). "Moreover, no class member is entitled to participate in a plan that is run in a way that breaches the fiduciary duties owed to participants as a whole, even if those breaches may have provided an individual benefit to a particular investor." <u>Clark</u>, 2018 WL 1801946, at *8. Thus, if the retention of the BlackRock TDFs is found to be imprudent for the Plan, no class member would have any legal interest in maintaining that fund in the Plan. Consequently, class members who profited from

---

benefit from the amendment). Here, the only remaining claims are for declaratory relief and monetary damages which do not present any harm to any participants who profited from the BlackRock TDFs and will not have to disgorge their gains.

the retention of the BlackRock TDFs do not present any fundamental conflicts with the rest of the class because every Plan participant has a legal interest in prudent management of the Plan by its fiduciaries. Id.

Genworth bases its position on Spano v. The Boeing Co., 633 F.3d 574 (7th Cir. 2011) wherein the Seventh Circuit held that "[i]t is not enough to say that the named plaintiffs want relief for the plan as a whole, if the class is defined so broadly that some members would actually be harmed by that relief." 633 F.3d at 587. However, in Abbott v. Lockheed Martin Corp., 725 F.3d 803, 813-14 (7th Cir. 2013), the same court clarified that Spano's holding was predicated on "exceedingly broad class definitions" and recognized that plan participants who benefit from imprudent management do not risk disgorgement of any resulting profits. Here, the class definition is much more tailored than it was in Spano (with the aforementioned modification), and the same concerns about harm to absent class members are not present in this case. Accordingly, Genworth's argument based on Spano fails.

Finally, Genworth argues that typicality is not satisfied because class members would be subject to unique defenses. ECF No. 157 at 17. It argues that, when a class representative "is subject to unique defenses that could become the focus of the litigation, then class certification is inappropriate." Wiseman v. First Citizens Bank & Trust Co., 212 F.R.D. 482, 488 (W.D.N.C. 2003).

Specifically, if the determination of damages requires a participant-by-participant analysis as to whether a particular defense applies, then typicality will not be satisfied. Plotnick v. Computer Scis. Corp. Deferred Comp. Plan for Key Executives, 182 F. Supp. 3d 573, 582 (E.D. Va. 2016). Genworth claims that it has a unique defense against Plaintiff Wright because rather than remain in the Plan, Wright chose to withdraw his assets in 2020 causing him to fare worse than had he stayed in the Plan.[8] ECF No. 157 at 17 (citing Wermers Report (ECF No. 157-1) ¶ 63 & fig. 2).

Under 29 U.S.C. § 1104(c)(1)(A)(ii), ERISA provides an affirmative defense to fiduciaries when a participant's losses are attributable to the participant's exercise of control over his or her account. However, the common question at issue is whether Genworth breached its fiduciary duty by retaining an imprudent fund in the Plan and whether that decision caused losses to the Plan. The decision by Genworth to retain the BlackRock TDFs in the Plan precedes any participant's subsequent investment decisions, so Wright's post-investment decisions are unlikely to become the focus of the litigation. See Plotnick, 182 F. Supp. 3d at 582 ("Here, in contrast, the common legal question is whether the 2012 Amendment is valid, a question on which Plan participants' post-

---

[8] In a footnote, Genworth also states that Trauernicht's investment decisions were not typical of the class because he chose to invest in three separate BlackRock TDF vintages, but Genworth does not explain how this would result in any unique defenses that would become the focus of the litigation. ECF No. 157 at 17 n.4.

investment decisions have no bearing."); <u>Tibble v. Edison Int'l</u>, 729 F.3d 1110, 1123-25 (9th Cir. 2013), <u>vacated in part on other grounds</u>, 135 S. Ct. 1823 (2015); <u>Munro</u>, 2019 WL 7842551, at *5. Additionally, "the concern of Rule 23(a)(3) is with defenses unique to class representatives." <u>Munro</u>, 2019 WL 7842551, at *5. The timing of Wright's investment decisions is unlikely to be a defense unique to him since all plan participants had the choice of when to contribute and withdrawal from their accounts.

In sum, the Court finds the typicality requirement satisfied.

### 5. Whether the Plaintiffs Are Adequate Representatives

Federal Rule of Civil Procedure 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." <u>Amchem Prod., Inc. v. Windsor</u>, 521 U.S. 591, 625 (1997).

The Court finds no issue with Plaintiffs' or counsel's commitment to vigorously prosecuting the case. The Plaintiffs have demonstrated a willingness to assist in the case by providing information to counsel, reviewing pleadings, providing documents, and continuing to communicate with counsel. ECF No. 144 at 15 (citing DECLARATION OF PETER TRAUERNICHT IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF No. 144-2) and DECLARATION OF ZACHARY WRIGHT IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS

CERTIFICATION (ECF No. 144-3)). Moreover, Genworth does not dispute the qualifications or adequacy of class counsel. Miller Shah and Tycko & Zavareei are experienced in class action litigation, including ERISA actions, and have the resources to adequately represent the interests of the class pursuant to Fed. R. Civ. P. 23(g). ECF No. 144 at 17. Therefore, the Court will appoint them as class counsel.

Genworth raises two adequacy arguments. First, Genworth reiterates that intra-class conflicts exist between Plaintiffs and absent class members. ECF No. 157 at 22. That argument was addressed under the typicality analysis and similarly fails here for the same reasons. See Amchem, 521 U.S. at 626, n.20 (noting that the adequacy and typicality requirements tend to merge).

Second, Genworth says that Plaintiffs are not adequate representatives because they have disavowed their own counsel's theory of the case. ECF No. 157 at 20. Plaintiffs respond that Genworth misconstrues the Plaintiffs' testimony. ECF No. 164 at 14.

When asked in his deposition whether "Genworth should have removed the BlackRock funds from [the] plan," Trauernicht answered "No" in contradiction of his counsel's position. ECF No. 157-2 63:17-22. But ultimately, Trauernicht understood the basic nature of his claim. He stated that Genworth "should have maintained a more thorough oversight of the investments in the plan, how the

31

plan was being managed and run, and then taken better steps to proactively attempt to mitigate losses due to market fluctuations for members of the plan." Id. 63:2-9. He further stated that "it was a case of monitoring and oversight that was inadequate, not of, you know, black listing any particular fund." Id. at 63:18-22.

Likewise, when Plaintiff Wright was asked "Do you have any objection to the BlackRock target date funds staying in the plan if other participants want to invest in them," Wright answered, "If Genworth has a more managed approach to it, then yeah, it could, in my opinion, then yes." ECF No. 157-3 at 129:6-12.

Based on that testimony, neither Plaintiff "disavows" their counsel's legal claims as Genworth suggests. At best, the testimony indicates some confusion or uncertainty over the legal and factual issues, which is not surprising in a case as complicated as this. See Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 430 (4th Cir. 2003)("It is hornbook law . . . that in a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.")(internal citations omitted). Specifically, "[t]he complex nature of ERISA fiduciary breach claims often requires investors to rely on their attorneys and

hired experts and such reliance does not make the plaintiffs inadequate representatives." Clark, 2018 WL 1801946, at *9. Shiring v. Tier Technologies, Inc., on which Genworth relies, is distinguishable because that case involved a securities fraud lawsuit where the analysis into plaintiff's knowledge and control of the litigation required a "particularly searching" inquiry. 244 F.R.D. 307, 315 (E.D. Va. 2007). But that standard is not broadly applicable and has not been widely adopted. See City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ, 322 F. Supp. 3d 676, 683-84 (D. Md. 2018)(declining to follow Shiring).

Plaintiffs do not need to understand every facet of their case to be adequate representatives. Their testimony demonstrates a basic understanding of the facts and legal theories at issue, and Plaintiffs have been active participants in the litigation. For the foregoing reasons, the Court finds the adequacy requirement satisfied.

**C. Whether the Class May be Certified Under Rule 23(b)(1)**

In addition to satisfying the requirements of Rule 23(a), Plaintiffs must also satisfy at least one subsection of Rule 23(b). Amchem, 521 U.S. at 614. Plaintiffs move to certify the class under Rule 23(b)(1). ECF No. 144 at 17.

Rule 23(b)(1) permits class certification if "prosecuting separate actions by or against individual class members would

create a risk of" either (A) "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" or (B) "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Put simply, "subsection A attempts to avoid possible prejudice to the defendants, while subsection B is concerned with prejudice to the putative class members." DiFelice, 235 F.R.D. at 80.

The Court finds that certification under Rule 23(b)(1) is appropriate under both subsections (A) and (B). The derivative nature of § 502(a)(2) claims distinguish them from individual claims for monetary relief. Any relief granted "inure[s] to the benefit of the plan as a whole" rather than to the individual plaintiff. In re Marsh ERISA Litig., 265 F.R.D. 128, 144 (S.D.N.Y. 2010). For that reason, most courts, including those in this circuit, have certified § 502(a)(2) actions under Rule 23(b)(1) because adjudicating separate § 502(a)(2) actions would prejudice the party opposing the class and/or absent class members. See, e.g., Stegemann, 2022 WL 17067496, *11-12; Clark, 2018 WL 1801946, at *9-10; Knight v. Lavine, No. 1:12-CV-611, 2013 WL 427880, at *4 (E.D. Va. Feb. 4, 2013); Tatum v. R.J. Reynolds Tobacco Co., 254

F.R.D. 59, 67 (M.D.N.C. Sept. 29, 2008); DiFelice, 235 F.R.D. at 80.

Here, the Plaintiffs are suing under § 502(a)(2) in a representative capacity on behalf of the Plan for recovery to the entire Plan for losses allegedly caused by the inadequate monitoring and imprudent retention of the BlackRock TDFs. Allowing individual suits to proceed alongside this plan-wide action could easily lead to incompatible standards of conduct for Genworth thus satisfying Rule 23(b)(1)(A). For instance, if this Court determines the Plan's losses and allocates a portion of them to a specific individual account, it could lead to incompatible standards of conduct if another court reaches a different conclusion with respect to that same account. In that case, Genworth would be faced with two different compensation orders for the same account. See 2 Newberg and Rubenstein on Class Actions § 4.12 (6th ed.); Harris v. Koenig, 271 F.R.D. 383, 394 (D.D.C. 2010)("When raising a plan-wide claim, a plaintiff is pursuing a claim on behalf of the entire plan, which necessarily includes discrete accounts within the plan. Accordingly, if a court entertaining an individual account claim . . . were to reach a different conclusion from a court entertaining a plan-wide claim, the fiduciaries would be left with incompatible orders concerning the same account."). Importantly, this scenario is distinguishable from one in which a defendant must pay different amounts of damages

35

to different plaintiffs. In this situation, Genworth could be confronted with paying different damages amounts to the *same* entity, the Plan, which is the only entity entitled to recover in a § 502(a)(2) lawsuit. Peters, 2 F.4th at 216. Thus, the risk of incompatible standards of conduct for Genworth if separate adjudications were to proceed makes certification under Rule 23(b)(1)(A) appropriate.

Likewise, certification is appropriate under Rule 23(b)(1)(B). "Because 'adjudication of the claim[] involves the recovery and distribution of Plan assets on behalf of the Plan,'" the resolution of this lawsuit "would, as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan." Tatum, 254 F.R.D. at 67 (quoting Brieger v. Tellabs, Inc., 245 F.R.D. 345, 357 (N.D. Ill. 2007)). Furthermore, the Advisory Committee Notes to Rule 23(b)(1)(B) explicitly recognize that "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust" is a paradigmatic type of Rule 23(b)(1)(B) action. Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment; see also DiFelice, 235 F.R.D. at 80; Knight, 2013 WL 427880, at *4. Therefore, Rule 23(b)(1)(B) is satisfied as well.

Genworth makes four arguments for why Rule 23(b)(1) certification is not appropriate, but none are persuasive. First, Genworth interprets LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248 (2008), to permit plaintiffs to bring individual § 502(a)(2) lawsuits to recover losses to their individual Plan accounts regardless of whether the fiduciary breach is individualized or plan-wide. ECF No. 157 at 29. The argument is that, if each plan participant has an individual remedy, then certifying a mandatory class under Rule 23(b)(1) is inappropriate because individual participants should be allowed to opt out of the class and bring a § 502(a)(2) claim on their own behalf if they so choose. Although a few courts have interpreted LaRue this way, this Court does not find that interpretation persuasive in the context of a plan-wide breach of fiduciary duty. See, e.g., In re Computer Sciences Corp. ERISA Litigation, 2008 WL 7527874, at *2 (C.D. Cal. Sept. 2, 2008).

In LaRue, the petitioner alleged that he directed his plan administrator to make certain changes to the investments in his individual account, but the plan administrator never carried out those instructions causing losses to the petitioner's specific account in the plan. 552 U.S. at 251. The Court of Appeals said that the petitioner could not bring that type of personalized claim under § 502(a)(2) because, according to Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985), § 502(a)(2) actions were

intended to "protect the entire plan, rather than rights of an individual beneficiary." Id. at 252. The Supreme Court, however, overruled the Court of Appeals and held that the "entire plan" language of Russell, involving a defined benefit plan, was not applicable in the context of a defined contribution plan. Id. at 254-56. In a defined contribution plan, "[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409." Id. at 256. Therefore, the Court held that § 502(a)(2) not only authorizes recovery for fiduciary breaches that impair the value of plan assets across the entire plan, but also "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." Id. at 256.

But in so holding, the Court did not undermine the general principle in Russell that § 502(a)(2) claims are derivative lawsuits brought on behalf of the Plan with the relief structured in terms of the plan. Id. at 256 (confirming that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries."); see also id. at 260 (Thomas, J., concurring)("The majority accepts Russell's fundamental holding" that § 502(a)(2) "authorizes recovery only by 'the plan as an entity,' and does not permit individuals to bring suit when they do not seek relief on

behalf of the plan.")(internal citations omitted); <u>Cedeno v.</u>
<u>Sasson</u>, 100 F.4th 386, 404-05 (2d Cir. 2024)("we reiterate that
<u>LaRue</u> reinforced, rather than undermined, the Supreme Court's
holding in <u>Russell</u> that the remedies available under Section
502(a)(2) for fiduciary breaches that violate Section 409(a) inure
to the benefit of the plan, thereby providing only indirect relief
to individual plan participants and beneficiaries."). Instead,
<u>LaRue</u> merely reined in the Court's language in <u>Russell</u> that §
502(a)(2) suits "are meant to 'protect the entire plan,' rather
than the 'rights of an individual beneficiary.'" 552 U.S. at 260
(Thomas, J., concurring)(internal citations omitted).

Therefore, <u>LaRue</u> does not alter the Rule 23(b)(1) analysis
above. The facts in <u>LaRue</u> involved a plan participant suing under
§ 502(a)(2) for a fiduciary breach that affected only that
participant's individual account. Here, Plaintiffs allege a plan-
wide breach of fiduciary duty and seek monetary relief in a
representative capacity on behalf of the Plan as a whole.
Genworth's argument that a plan-wide derivative suit could be
carved up into individual claims for relief is simply inconsistent
with the nature of a representative § 502(a)(2) claim in which
recovery can only go directly to the Plan. "[N]othing in <u>LaRue</u>
suggests that an individual claimant . . . who is aggrieved by a
breach of fiduciary duty that has a plan-wide impact can seek a
remedy under Section 502(a)(2) that benefits solely that

39

individual's account." <u>Cedeno</u>, 100 F.4th at 404-05. Rather, a §
502(a)(2) claim alleging a plan-wide breach of fiduciary duty
should be litigated on a plan-level basis. That makes such claims
appropriate candidates for Rule 23(b)(1) mandatory certification
for the reasons discussed above.

Second, Genworth says that claims primarily requesting
monetary relief, as is the case here, are not suitable for Rule
23(b)(1) certification. ECF No. 157 at 25, 28-29 (citing <u>Zimmerman
v. Bell</u>, 800 F.2d 386, 389 (4th Cir. 1986)). While it is true that
many ERISA actions certified under Rule 23(b)(1) also include
claims for equitable relief, nothing about Rule 23(b)(1) precludes
certification for classes seeking primarily monetary damages so
long as the rule's requirements are satisfied. Genworth is correct
that *individualized* monetary damages claims will normally not
satisfy Rule 23(b)(1)'s requirements, but ERISA § 502(a)(2) claims
are distinguishable from those types of cases because "damages
flow to the class in bulk" rather than to individual claimants. 2
<u>Newberg and Rubenstein on Class Actions</u> § 4:14 (6th ed.).

Moreover, the cases that Genworth relies on in support of its
argument do not address the unique situation presented in ERISA or
other similar derivative actions where the recovery inures to a
single entity. <u>See, e.g.</u>, <u>Zimmerman v. Bell</u>, 800 F.2d 386, 389
(4th Cir. 1986)(involving a class action securities fraud
lawsuit). The only case Genworth cites which does involve an ERISA

claim did in fact certify the class under Rule 23(b)(1)(B) and explicitly acknowledged that a § 502(a)(2) action would "appear to be appropriately certified under Rule 23(b)(1)(A)." In re Syncor Erisa Litigation, 227 F.R.D. 338, 346 (C.D. Cal. 2005). However, that court had to deny certification under Rule 23(b)(1)(A) because it was constrained by Ninth Circuit precedent holding that Rule 23(b)(1)(A) certification is not appropriate where the relief sought is "primarily" for monetary damages. Id. (citing Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1193 (9th Cir. 2001)). In the Fourth Circuit, there is no such per se limitation. See Zimmerman, 800 F.2d at 389 ("[t]he danger of imposing 'incompatible standards of conduct' on the party opposing the class is [] not *normally* posed by a request for money damages.")(emphasis added). Therefore, the Court finds that Rule 23(b)(1) certification is still appropriate where, in a § 502(a)(2) action, the recovery (monetary damages) inures to the Plan as whole rather than to individual plaintiffs.

Third, Genworth says that certifying the class under Rule 23(b)(1)(A) would raise due process concerns because putative class members would not receive notice or opt-out rights. ECF No. 157 at 27 (citing Dukes, 564 U.S. at 362). This argument is similarly unpersuasive. Although Dukes stated that "individualized monetary claims belong in Rule 23(b)(3)" because of due process concerns, that holding is not applicable here because, as

41

discussed, this is not a case for individualized monetary damages. 564 U.S. at 361-63; see also Ortiz v. Fibreboard Corp., 527 U.S. 815, 845-46 (1999)(addressing due process concerns in the context of aggregated individual monetary damages claims). It is a derivative lawsuit on behalf of the Plan for recovery to the Plan as a whole. That makes mandatory certification under Rule 23(b)(1) appropriate because "individual adjudications would be impossible or unworkable." Id. at 361-62. And, when the class is mandatory, the lack of notice or opt-out rights presumptively does not violate the Due Process clause. Id. at 363.

Finally, Genworth counsels against "an adventurous application of Rule 23(b)(1)(B)." ECF No. 157 at 28 (quoting Ortiz, 527 U.S. at 845). Genworth notes that the classes certified in Ortiz and Difelice involved limited funds in which individual adjudications could prejudice absent parties because the fund would be insufficient to satisfy everyone's claims. Id. Limited fund cases are commonly certified under Rule 23(b)(1)(B), but the existence of a limited fund is not necessary for certification under that provision. See Ortiz, 527 U.S. at 834. Indeed, most ERISA § 502(a)(2) classes are certified under Rule 23(b)(1) without any reference to a limited fund. Therefore, it would not be an "adventurous application" to certify the class in this case under Rule 23(b)(1)(B).

For the foregoing reasons, the class will be certified under Rule 23(b)(1)(A), and alternatively, under Rule 23(b)(1)(B).

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have Article III standing; the Rule 23(a) requirements are satisfied; and the class can be certified under Rule 23(b)(1). The Court will therefore grant PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF No. 143) and certify the following class:

> All participants and beneficiaries in the Genworth Financial Inc. Retirement and Savings Plan whose Plan accounts included investments in the BlackRock LifePath Index Funds at any time on or after August 1, 2016 and continuing to the date of judgment, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

The Court will also appoint Peter Trauernicht and Zachary Wright as class representatives and Miller Shah LLP and Tycko & Zavareei LLP as class counsel.

It is so ORDERED.

        /s/   _REP_

        Robert E. Payne
        Senior United States District Judge

Richmond, Virginia
Date: August 15, 2024

43