**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

PETER TRAUERNICHT, et al.,

    Plaintiffs,

v.                                          Civil Action No. 3:22-cv-532

GENWORTH FINANCIAL, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 213)(the "Motion"), and the supporting, opposing, and reply memoranda (ECF Nos. 217, 246, 266). For the following reasons, the Motion will be denied.

## BACKGROUND

### I. Factual Background

Class Representatives Peter Trauernicht and Zachary Wright ("Plaintiffs"), on behalf of themselves, the Genworth Financial Inc. Retirement and Savings Plan (the "Plan"), and all other similarly situated individuals, filed suit against Genworth Financial, Inc. ("Genworth" or "Defendant") alleging that Genworth breached its fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. ECF No. 103 ("Second Amended Class Action Complaint" or "SAC") ¶ 1.

According to Plaintiffs, Genworth violated those fiduciary duties because it failed to appropriately monitor, and as a result, imprudently retained, the BlackRock LifePath Target Date Funds ("BlackRock TDFs") in the Plan despite their significant underperformance. SAC ¶¶ 1, 6, 57-63, 84-86. Plaintiffs say that had Genworth appropriately monitored the BlackRock TDFs' performance, the BlackRock TDFs would have been removed from the Plan and would have been replaced with a suitable alternative no later than the first quarter of 2017. SAC ¶¶ 63, 84-86; ECF No. 217-3 ("Marin Rpt.") ¶ 25. Plaintiffs seek to recover any resulting losses to the Plan and to obtain any appropriate equitable relief on behalf of the Plan and on behalf of a class of Plan participants and beneficiaries pursuant to 29 U.S.C. § 1109(a) and § 1132(a)(2). SAC ¶¶ 91, 100; ECF No. 144 at 6.

COUNT ONE alleges Breach of Fiduciary Duty under §§ 404(a)(1)(A), (B), and (D) of ERISA, codified at 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D). SAC ¶¶ 82-91. Additionally, to the extent that Genworth did not directly breach its duties, COUNT ONE alleges that Genworth is liable under 29 U.S.C. § 1105(a) as a co-fiduciary which "knowingly failed to cure a breach of fiduciary duty by the [Fiduciary & Investment Committee of Genworth Financial, Inc. (the "Committee")] and failed to take reasonable efforts to remedy the breach." SAC ¶ 88.

COUNT TWO alleges that Genworth failed to monitor and evaluate the performance of the Committee and its members that were overseeing and managing the Plan. SAC ¶¶ 92-101.

## II. Procedural Background

On April 17, 2023, Plaintiffs filed their SECOND AMENDED CLASS ACTION COMPLAINT (ECF No. 103). The Court granted DEFENDANT'S PARTIAL MOTION TO DISMISS UNDER RULE 12(b)(1) (ECF No. 106), dismissing Plaintiffs' request for prospective injunctive relief, and denied DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6) (ECF No. 104). ECF No. 139.

On May 29, 2024, the Court denied DEFENDANT'S MOTION TO EXCLUDE THE EXPERT OPINIONS AND TESTIMONY OF RICHARD MARIN (ECF No. 195) and DEFENDANT'S MOTION TO EXCLUDE THE EXPERT OPINIONS AND TESTIMONY OF ADAM WERNER (ECF No. 201). ECF No. 310. On August 15, 2024, the Court granted PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF No. 143). ECF No. 312. On August 29, 2024, the Court denied Plaintiffs' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF LORIE L. LATHAM AND RUSSELL R. WERMERS, PH.D. (ECF No. 207). ECF No. 314.

## DISCUSSION

### I. Legal Standard

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict

for the nonmoving party.'" <u>Libertarian Party of Virginia v. Judd</u>, 718 F.3d 308, 313 (4th Cir. 2013)(quoting <u>Dulaney v. Packaging Corp. of Am.</u>, 673 F.3d 323, 330 (4th Cir. 2012)).

The court must construe the facts and draw all reasonable inferences "in the light most favorable to the nonmoving party." <u>Id.</u> at 312-13. However, the non-movant must provide more than "a scintilla of evidence" to overcome a summary judgment motion. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

## II. Analysis

Genworth moves for summary judgment on two issues: loss causation and the statute of limitations. ECF No. 217 at 1-2.

### A. Loss Causation

A fiduciary who breaches the duties imposed by ERISA is "personally liable" for "any losses to the plan resulting from [the] breach." 29 U.S.C. § 1109(a). In the Fourth Circuit, once the plaintiff proves a breach of fiduciary duty and a loss, the burden of proof shifts to the fiduciary to show that the loss did not result from the breach (<u>i.e.</u>, loss causation). <u>Tatum v. RJR Pension Inv. Comm.</u>, 761 F.3d 346, 363 (4th Cir. 2014). "Under this standard, a plaintiff who has proved the defendant-fiduciary's procedural imprudence and a prima facie loss prevails *unless* the defendant-fiduciary can show, by a preponderance of the evidence," that its conduct did not cause the loss. <u>Id.</u> at 364.

4

When a fiduciary engages in an imprudent decision-making process, the fiduciary carries its burden on loss causation by showing that "its ultimate investment decision was 'objectively prudent.'" Id. at 363. "[A] decision is 'objectively prudent' if 'a hypothetical prudent fiduciary would have made the same decision anyway.'" Id. (emphasis in original)(quoting Plasterers' Local Union No. 96 Pension Plan v. Pepper, 663 F.3d 210, 218 (4th Cir. 2011)).

To determine what a hypothetical prudent fiduciary would have done, courts consider what others "in a like capacity" would do "under the circumstances then prevailing." Hughes v. Northwestern Univ., 595 U.S. 170, 172 (2022)(quoting 29 U.S.C. § 1104(a)(1)(B)). "[T]he appropriate inquiry will necessarily be context specific." Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425 (2014). Therefore, all relevant evidence should be considered "as part of a totality-of-the-circumstances inquiry." Tatum, 761 F.3d at 368. Relevant evidence may include "[p]lan documents, public disclosures, analysts' reports[,] and associated research" regarding a challenged investment. See Tatum v. RJR Pension Inv. Comm., 855 F.3d 553, 559 (4th Cir. 2017). It may also include "the decision[s] of other expert professionals both to invest and not to divest" a challenged fund during the same time period. Pfeil v. State St. Bank & Tr. Co., 806 F.3d 377, 388 (6th Cir. 2015); Ramos v. Banner Health, 461 F. Supp. 3d 1067, 1129 (D. Colo. 2020),

aff'd, 1 F.4th 769 (10th Cir. 2021)(finding it "persuasive that other mega plans also offered the [challenged investment] at the same time that [plaintiff's expert] claimed no prudent fiduciary . . . would have retained such investments in [the] plan"). Finally, the court must take into account compliance with the Plan's own governing documents, including its Investment Policy Statement ("IPS"), in determining how a prudent fiduciary would act under the circumstances. Tatum, 761 F.3d at 367 ("courts have found a breaching fiduciary's failure to follow plan documents to be highly relevant in assessing loss causation.").

Genworth claims that there is no genuine dispute as to any material fact on the issue of loss causation. ECF No. 217 at 1. To determine what Genworth would have done had it prudently monitored the BlackRock TDFs,[1] Genworth says that the Court should consider the views of the broader retirement investment community. Id. at 8. If an investment was truly imprudent, the evidence would show investors shedding the fund. Id. at 10. But, at the time Plaintiffs say Genworth should have removed the BlackRock TDFs from the Plan, market analysts and sophisticated plan fiduciaries considered them to be sound investments. Id. at 11. Genworth therefore says that, under the circumstances then prevailing, there is no dispute that the BlackRock TDFs were objectively prudent—a hypothetical prudent

---

[1] Genworth reserves for trial the issue of whether its investment monitoring process was adequate. ECF No. 266 at 4.

fiduciary would have made the same decision to retain the BlackRock TDFs in the Plan. Id.

First, Genworth says that leading market analysts viewed the BlackRock TDFs favorably. ECF No. 217 at 11. Morningstar ranked the BlackRock TDFs as "Gold," the highest rating available, for every year of the class period. Id. at 11. Aon Hewitt Investment Consulting ("AHIC"), a well-respected investment consultant in the retirement investment space and Genworth's own investment consultant, also gave the BlackRock TDFs a "Buy" rating in 2016 and described them as "among the best target date solutions for plan sponsors looking for a low cost, well-constructed, passively managed target date fund." Id. at 12 (quoting GENWORTH-0024952 at 25000). Genworth says that Plaintiffs have offered no evidence of any market analyst contemporaneously offering an alternative view. Id. at 13.

Second, Genworth says that numerous large, sophisticated 401(k) plans retained the BlackRock TDFs during the same period when Plaintiffs say that Genworth should have dropped them. Id. at 6, 14. Genworth says that 939 plans continued offering the BlackRock TDFs, and 819 plans added the funds to their investment menus. Id. at 6. Additionally, the BlackRock TDFs experienced an inflow of money during the class period; the assets held by similarly sized 401(k) plans in the BlackRock TDFs nearly tripled over this time. Id. at 6, 14. From 2016 to 2022, the BlackRock

7

TDFs' share of total TDF assets increased from nearly eight percent to nine percent. Id. at 6. Genworth also notes that Plaintiffs' own expert, Marcia Wagner, never cautioned any of the plans she or her company advised to remove the BlackRock TDFs during the Class Period. Id. at 7, 12. (citing ECF No. 217-1 ("Wagner Depo. Tr.") 200:12-19).

Plaintiffs first dispute the significance of the industry data on which Genworth relies. ECF No. 246 at 26. Plaintiffs say that a "Buy" rating from AHIC or a "Gold" rating from Morningstar does not insulate an investment from removal under the Plan's IPS. Id. at 26. And, there is evidence that the Committee previously had removed from the Plan for underperformance an investment that had also received those ratings. Id. Additionally, Plaintiffs offer evidence that not all 401(k) retirement plans viewed the BlackRock TDFs favorably as Genworth suggests, pointing to evidence that 147 plans did drop the BlackRock TDFs in 2017, comprising fourteen percent of all plans that held the BlackRock TDFs at that time.[2] Id. at 19, 24.

Second, Plaintiffs say that the loss causation inquiry is context specific. Id. at 21. The relevant inquiry is not what other unspecified plan fiduciaries decided to do, but whether this Plan's fiduciaries would have retained the BlackRock TDFs within the

---

[2] The parties dispute whether these plans dropped the BlackRock TDFs for performance reasons or for other non-performance reasons such as a plan going out of existence. ECF No. 266 at 10-11.

context of this Plan's governing documents and the then applicable circumstances. Id. at 22 (citing Tatum, 761 F.3d at 367). The decisions of other unspecified fiduciaries to retain the BlackRock TDFs is only of limited relevance to what a hypothetical prudent fiduciary in Genworth's position would do in the context of this Plan. Id. at 21-22.

The Plan's IPS provided specific criteria to consider when evaluating the BlackRock TDFs for removal. Id. at 24. Plaintiffs' expert, Richard Marin, established an investment removal and replacement framework grounded in those specific policies and standards of the IPS. Id. at 24-25 (citing ECF No. 246-3 ("Marin Rpt.") ¶¶ 26-44). Under that framework, Marin found that the BlackRock TDFs' performance fell below the objectives set forth in the Plan's IPS, and therefore, opined that Genworth would have dropped the BlackRock TDFs for a better-performing investment product had the Committee been adequately monitoring the Plan's investments. Id. at 25-26. Plaintiffs say that Genworth's focus on the retirement plan industry as a whole overlooks the performance criteria explicitly identified in the IPS. Id.

Genworth responds that Marin's post hoc opinions stand against the collective wisdom of the retirement community at the time in question. ECF No. 266 at 7. Furthermore, Genworth says that the IPS included industry-standard investment monitoring criteria analogous to other plans, which Plaintiffs' own expert

9

acknowledged. Id. at 9-10. Thus, Genworth would not have been expected to act differently, under its own IPS, than other fiduciaries who were using similar monitoring criteria and data as Genworth. Id. The same performance metrics were publicly available and reviewed by prudent fiduciaries across the industry, and still, those other fiduciaries did not interpret those metrics as a reason to drop the BlackRock TDFs from their investment offerings. Id.

On this record, the Court cannot say, as a matter of law, that a hypothetical prudent fiduciary in Genworth's position would have made the same decision to retain the BlackRock TDFs under the circumstances. Genworth's evidence regarding the broader retirement investment community is relevant to, but not dispositive of, the issue of loss causation. It must be weighed against Plaintiffs' evidence and expert testimony applying this Plan's IPS to the facts of the case. That weighing of evidence is not appropriate at the summary judgment stage. See Pizarro v. Home Depot, Inc., 634 F. Supp. 3d 1260, 1297 (N.D. Ga. 2022)("an evaluation of their argument requires a weighing of evidence that is inappropriate at summary judgment.") Drawing all reasonable inferences in favor of Plaintiffs, the Court finds that a reasonable juror could find in favor of Plaintiffs.

Furthermore, the Court does not find Genworth's reliance on Hall v. Capital One Fin. Corp., No. 22-CV-857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023) or Tullgren v. Booz Allen Hamilton, Inc.,

10

No. 22-CV-856, 2023 WL 2307615 (E.D. Va. Mar. 1., 2023) to be persuasive. In those cases, the court found that the plaintiffs had not plausibly alleged a claim for fiduciary breach based solely on the underperformance of the BlackRock TDFs relative to the S&P Index and four Comparator TDFs. <u>Hall</u>, 2023 WL 2333304, at *5-6; <u>Tullgren</u>, 2023 WL 2307615, at *5-6. In those cases, the court held that the BlackRock TDFs underperformance relative to "some other TDFs at some points during a three- or five-year window, without more, does not suggest that offering the BlackRock TDFs fell outside the 'range of reasonable judgments' that fiduciaries may make.'". <u>Hall</u>, 2023 WL 2333304, at *6; <u>Tullgren</u>, 2023 WL 2307615, at *6.

In this case, the facts are different. The Plan's IPS explicitly stated that the performance of the BlackRock TDFs is expected to "compare favorably" to the S&P TDF Index and its peer group of target date funds. ECF No. 246 at 27; ECF No. 217-11 at 10. So, Plaintiffs are not "'simply pointing to a fund with better performance'" as in <u>Hall</u> and <u>Tullgren</u>, they are alleging that the BlackRock TDFs violated the stated criteria in the Plan's own IPS. <u>Hall</u>, 2023 WL 2333304, at *5; <u>Tullgren</u>, 2023 WL 2307615, at *5. And as discussed, compliance with a plan's IPS is "highly relevant" to loss causation. <u>Tatum</u>, 761 F.3d at 367. Whether the BlackRock TDFs' performance fell below the IPS's stated criteria is a factual

11

question which the parties' experts dispute and is not appropriate for summary judgment.

*Pizarro v. Home Depot, Inc.*, 634 F. Supp. 3d 1260 (N.D. Ga. 2022) is similarly inapposite. In that case, the court granted summary judgment to the defendant on loss causation because the plaintiffs lacked "material evidence that no prudent fiduciary would have concluded that the BlackRock TDFs' performance would improve in the future." *Id.* at 1298. The record showed that "the BlackRock TDFs tracked their custom benchmark throughout the Class Period, were popular among other large 401(k) plans, charged low fees, and were endorsed by AHIC." *Id.*

*Pizarro* is distinguishable because it applies a different burden of proof on loss causation—the plaintiff had to prove "that no prudent fiduciary would have" made the same decision. *Id.* at 1298. In the Fourth Circuit, however, the defendant carries the burden of proof on loss causation and must demonstrate that a hypothetical prudent fiduciary would have made the same decision anyway to retain the challenged investment. *Tatum*, 761 F.3d at 363. Applying that burden of proof, the Court finds that Genworth's (similar) evidence falls short of the threshold for summary judgment.

In sum, the Court finds that a genuine dispute of material fact exists on the issue of loss causation.

## B. Statute of Limitations

Genworth also contends that Plaintiffs' claims are time-barred because the BlackRock TDFs allegedly became imprudent outside of the six-year limitations period. ECF No. 217 at 17-19.

"A breach of fiduciary duty complaint is timely if filed no more than six years after 'the date of the last action which constituted a part of the breach or violation' or 'in the case of an omission the latest date on which the fiduciary could have cured the breach or violation.'" Tibble v. Edison Int'l, 575 U.S. 523, 525 (2015)(quoting 29 U.S.C. § 1113). In Tibble, the plaintiffs sued on behalf of the Edison 401(k) Savings Plan alleging that the defendants acted imprudently by adding mutual funds to the plan with higher fees than materially identical mutual funds which could have been included instead. Id. at 525-26.

The district court and the Ninth Circuit held that, because three of these funds were initially selected for the plan more than six years prior to the filing of the complaint, those claims were time-barred under the statute of limitations. Id. at 526-27. The Supreme Court overruled their decisions because a breach of fiduciary duty can occur not only at the time of investment selection, but also during the period in which the fiduciary had a continuing duty to monitor the investments. Id. at 528-29. Thus, "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove

13

imprudent ones." <u>Id.</u> at 530. "[S]o long as the alleged breach of the continuing duty occurred within six years of the suit, the claim is timely." <u>Id.</u>

Plaintiffs' claims fall within the statute of limitations because at least part of the alleged failure to monitor occurred within the limitations period. ECF No. 246 at 28, n.14. Plaintiffs claim that, as part of its continuing duty to monitor, Genworth should have met to review the BlackRock TDFs' alleged underperformance in late 2016 and should have decided to remove the funds by the first quarter of 2017. ECF No. 246 at 28, n.14; Marin Rpt. ¶ 25. Those dates fall within the limitations period which begins on August 1, 2016, six years before the date the Complaint was filed.

<u>David v. Alphin</u>, on which Genworth relies, is not directly applicable to this case. 704 F.3d 327 (4th Cir. 2013). In <u>David</u>, the defendant, Bank of America, allegedly offered its own affiliated mutual funds in its retirement plan when better options were available. <u>Id.</u> at 331. The initial selection of the Bank of America-affiliated mutual funds occurred prior to the limitations period, so the plaintiffs alleged that Bank of America breached its fiduciary duty of prudence and loyalty by later failing to remove or replace those funds for better alternatives. <u>Id.</u> at 341.

The Fourth Circuit held that the claim is not "truly one of a failure to remove an imprudent investment" because the "alleged

14

poor performance and high fees" existed at the time of initial selection. Id.   At its core, the claim was "simply another challenge to the initial selection of the funds to begin with," which was time-barred. Id. The Fourth Circuit, therefore, did "not decide whether ERISA fiduciaries have an ongoing duty to remove imprudent investment options in the absence of a material change in circumstances." Id.

This case raises that question that David declined to answer, and which was later addressed in Tibble. It does not involve a challenge to an initial imprudent selection of a fund, but rather, a failure to monitor a material change in circumstances in an existing fund and respond to it. Genworth's argument that the statute of limitations runs from the time the challenged investment accrues problematic attributes is not supported by David's holding. ECF No. 266 at 15-16. Tibble has since made clear that the statute of limitations runs from the last act or omission constituting the breach. Tibble, 575 U.S. at 530. In this case, that act is the failure to properly monitor the BlackRock TDFs, which allegedly occurred, to some degree, within six years of the initial suit.

## CONCLUSION

For the foregoing reasons, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 213) will be denied.

It is so ORDERED.

_____ /s/   *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 29, 2024

16